UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

VIRGINIA STATE CONFERENCE
NAACP, *et al.*,

     Plaintiffs,

     v.

COUNTY SCHOOL BOARD OF
SHENANDOAH COUNTY,

     Defendant.

Case No. 5:24-cv-00040

## MEMORANDUM IN SUPPORT OF PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT ON FIRST AMENDMENT CLAIMS

# Contents

I.       INTRODUCTION ................................................................................................... 1

II.      STATEMENT OF FACTS ...................................................................................... 2

      A.      Plaintiffs Are Stonewall Jackson High School Students Who
Participate in School Activities ................................................................... 2

      B.      Stonewall Jackson High School Was Named to Commemorate a
Confederate Legacy ..................................................................................... 3

      C.      Confederate General Stonewall Jackson Is Inextricably Linked With
All Aspects of Student Life at Stonewall Jackson High School ...................... 6

      D.      Students at Stonewall Jackson High School Must Convey Confederate
Names and Symbols if They Want to Participate in School Sports and
Activities. ................................................................................................... 10

      E.      Plaintiffs Object to the Name .................................................................... 12

      F.      Sports and Extracurricular Activities Provide Important Benefits to
Students ..................................................................................................... 13

III.     PROCEDURAL HISTORY ................................................................................ 14

IV.     LEGAL STANDARD ........................................................................................ 15

V.      ARGUMENT ..................................................................................................... 16

      A.      Confederate Names Convey a Historical and Symbolic Message. ................ 17

      B.      Plaintiffs Engage in Speech and Symbolic and Expressive Conduct
When They Participate as Stonewall Jackson Generals. ................................ 18

      C.      Plaintiffs Object to the Message. ............................................................... 21

      D.      Plaintiffs Are Subject to Compulsion Because Defendant Requires
Them to Wear Uniforms Containing Confederate Names and Symbols
and Identify as Stonewall Jackson Generals. ............................................... 23

      E.      There Is No Compelling Governmental Purpose Behind the
Compelled Speech. .................................................................................... 27

VI.     Conclusion ........................................................................................................ 28

CERTIFICATE OF SERVICE ...................................................................................... 29

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis,*
    600 U.S. 570 (2023) ................................................................................................. 17, 24

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................................................ 17

*Axson-Flynn v. Johnson,*
    356 F.3d 1277 (10th Cir. 2004) .............................................................................. 24, 26

*Bouchat v. Baltimore Ravens Football Club, Inc.,*
    346 F.3d 514 (4th Cir. 2003) ......................................................................................... 16

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ........................................................................................................ 16

*Crosby by Crosby v. Holsinger,*
    816 F.2d 162 (4th Cir. 1987) ......................................................................................... 18

*E.E.O.C. v. Watergate at Landmark Condominium,*
    24 F.3d 635 (4th Cir. 1994) ........................................................................................... 19

*Emmett v. Johnson,*
    532 F.3d 291 (4th Cir. 2008) ......................................................................................... 17

*Felty v. Graves Humphreys Co.,*
    818 F.2d 1126 (4th Cir. 1987) ....................................................................................... 16

*Frudden v. Pilling,*
    742 F.3d 1199 (9th Cir. 2014) ................................................................................. 20, 27

*Glickman v. Wileman Bros. & Elliott,*
    521 U.S. 457 (1997) ........................................................................................................ 25

*Glover v. Oppleman,*
    178 F. Supp. 2d 622 (W.D. Va. 2001) ......................................................................... 16

*Hardwick v. Heyward,*
    711 F.3d 426 (4th Cir. 2013) .............................................................................. 17, 18, 20

*Hening v. Adair,*
    644 F. Supp. 3d 203 (W.D. Va. 2022) ......................................................................... 24

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
  515 U.S. 557 (1995) ............................................................ 19, 20, 22

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
  585 U.S. 878 (2018) ......................................................................... 17

*Kania v. Fordham*,
  702 F.2d 475 (4th Cir. 1983) ......................................................... 28

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ......................................................................... 16

*Nat'l Inst. Fam. & Life Advoc. v. Becerra*,
  585 U.S. 755 (2018) ......................................................................... 17

*Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Tr.*,
  235 F.3d 1243 (10th Cir. 2000) ............................................... 24, 26

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
  393 U.S. 503 (1969) ......................................................................... 17

*United States v. Blanding*,
  250 F.3d 858 (4th Cir. 2001) ......................................................... 18

*United States v. O'Brien*,
  391 U.S. 367 (1968) ......................................................................... 29

*United States v. Ramsey*,
  431 U.S. 606 (1977) ......................................................................... 24

*Virginia v. Black*,
  538 U.S. 343 (2003) ................................................................... 20, 21

*W. Va. State Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943) ........................................................ 17, 20, 22, 29

*Wooley v. Maynard*,
  430 U.S. 705 (1977) .................................................................. *passim*

**Statutes**

Civil Rights Act of 1964 Title VI .................................................. 16

Equal Educational Opportunities Act ........................................... 16

**Other Authorities**

Fed. R. Civ. P. 56(a) ........................................................................ 16

Federal Rule of Civil Procedure 56 ............................................... 16

United States Constitution First Amendment ...................................................................*passim*

United States Constitution Fourteenth Amendment ............................................................16

## I.    INTRODUCTION

In 2024, Defendant Shenandoah County School Board recommitted itself to the legacy of famed Confederate General Thomas "Stonewall" Jackson by renaming a high school for him. Only four years earlier, the same Defendant recognized that the Stonewall Jackson name has "racist implications," symbolizes "inequality and racism," and sends a "clear message to Black families that they were not welcomed." *See* Statement of Undisputed Material Facts ("SUMF") at ¶¶ 31, 33, 35. Not only did Defendant reinstitute the name Stonewall Jackson High School ("Stonewall Jackson HS"), it also brought back school uniforms, signage, a mascot, and other public acknowledgments—all of which pay homage to the "Rebel" leader by branding student athletes "Stonewall Jackson Generals" or displaying his image or initials. Plaintiffs D.D., A.J., and Virginia NAACP members are students at Stonewall Jackson HS who, by virtue of their participation in team sports and other extracurricular activities, are required to wear these uniforms and otherwise engage in public displays honoring Stonewall Jackson. Plaintiffs vehemently object to these requirements, which this Court has already indicated constitute compelled speech under the First Amendment. MTD Op. at 19. Because the record reveals no genuine dispute of material fact as to Plaintiffs' First Amendment claims, Plaintiffs are entitled to summary judgment.

The material facts as to these claims, most of which are jointly stipulated by the parties, are not in doubt. It is undisputed that the name Stonewall Jackson conveys a message—and this Court has already found that it does. MTD Op. at 15-16. There is no dispute that students participating in team sports or other activities participate as "Stonewall Jackson Generals," or that such participation is anything less than speech and expressive conduct. MTD Op. at 14-15 ("[S]coring points on behalf of a team named after Stonewall Jackson conveys a message likely to be understood by the assembled crowd."). There is no dispute that Plaintiffs object to the message "Stonewall Jackson" conveys and do not wish to be associated with it. Further, evidence demonstrates that team coaches and written

policies require Plaintiffs to wear Stonewall Jackson-branded uniforms as a condition of participation and that Plaintiffs cannot opt out of being identified in association with Stonewall Jackson if they participate in school activities. Plaintiffs have no option other than to acquiesce or face potential exclusion.

Plaintiffs do not wish to speak Defendant's message but to engage in sports and extracurricular activities at Stonewall Jackson HS, they must. The First Amendment unequivocally does not permit such a situation. The Stonewall Jackson name is an inescapable component of sports and extracurricular activities and, as a result, changing the school's name is the only way to effectuate relief. Plaintiffs should therefore prevail on their Motion, and the Court should enter an Order requiring Defendant to change the school name.

## II.     STATEMENT OF FACTS

### A.     Plaintiffs Are Stonewall Jackson High School Students Who Participate in School Activities

The children who bring this case are students at Stonewall Jackson HS who, by Defendant's actions, are forced to convey a message they vehemently disagree with whenever they participate in school and extracurricular activities. Plaintiffs D.D. and A.J. actively participate in various sports and extracurricular activities as Stonewall Jackson Generals, and object to the reinstatement of the Confederate names. D.D. is a rising 10th grade student at Stonewall Jackson HS for the 2025–2026 school year. SUMF ¶ 1. D.D. participates in basketball and soccer at Stonewall Jackson HS. *Id.* ¶ 2. A.J. is a rising 12th grade student at Stonewall Jackson HS. *Id.* ¶ 3. A.J. participates in marching band, scholastic bowl, track and field, Future Business Leaders of America, National Honor Society, and debate. *Id.* ¶ 4.

Other students are participating in this action as members of the Virginia State Conference of the NAACP (the "Virginia NAACP"), which brings this action on behalf of its members. The Virginia

NAACP is the state branch of the NAACP in Virginia. *Id.* ¶ 5. Its parent organization, the NAACP, is the nation's largest and one of the oldest civil rights grassroots organizations. *Id.* ¶ 6. Since the NAACP's founding in 1909, its mission has been to ensure the political, educational, social, and economic equality of all persons and to eliminate race-based discrimination. *Id.* ¶ 7. To advance its mission, the NAACP has brought landmark civil rights cases throughout its 115-year history and continues to do so. The members of the Virginia NAACP include Black and White families whose students attend Stonewall Jackson HS and who object to the Confederate names and symbols. *Id.* ¶ 8. In the 2024–2025 school year, Virginia NAACP members participated in various sports and extracurricular activities at Stonewall Jackson HS, including marching band, scholastic bowl, track and field, Future Business Leaders of America, chess club, debate, National Honor Society, soccer, basketball, cross country, wrestling, baseball, and orchestra. Virginia NAACP members plan to continue participating in their respective sports and extracurricular activities in the upcoming school year. *Id.* ¶ 9.

**B.      Stonewall Jackson High School Was Named to Commemorate a Confederate Legacy**

Stonewall Jackson was a Confederate general, and the Confederacy existed, in part, to preserve chattel slavery of Black people. SUMF ¶¶ 10–11. Stonewall Jackson was a slaveholder, and believed that God sanctioned the enslavement of Black people. *Id.* ¶ 12.

Throughout American history, periods of increased commemoration of Confederate war heroes have coincided with the expansion of legal rights for Black people. The largest number of Confederate commemorations occurred between 1890 and 1920 when monuments were erected after Reconstruction. *Id.* ¶ 14. A spike in schools named in honor of Confederates occurred during the Civil Rights Era, between 1955 and 1965. *Id.* ¶ 16. The post-Reconstruction period commemorations of the Confederacy coincided with White backlash to Black progress and signaled the beginning of the Jim Crow era. *Id.* ¶ 15. Confederate commemorations were part of the "Massive Resistance"

campaign, the movement that arose after *Brown v. Board of Education of Topeka* to protest federally mandated desegregation in Southern schools. *Id.* ¶ 17.

Stonewall Jackson HS was built and named with this historical backdrop. Stonewall Jackson HS was constructed between 1957 and 1959 and named in honor of Stonewall Jackson by the Shenandoah County School Board in 1959. *Id.* ¶ 18–19. The Confederate flag was flown at the school grounds during Stonewall Jackson HS's construction, and Black students were not permitted to attend the school when it opened in the fall of 1959. *Id.* ¶ 20–22. Until the fall of 1963, Black students in Shenandoah County Public Schools were required to attend separate schools for non-White students. *Id.* ¶ 23. Defendant members have acknowledged "surely, [the] Superintendent and School Board at the time had to know that naming a high school after a Confederate General would send a clear message to Black families that they were not welcomed in that brand new school," *id.* ¶ 31, and its current Chairman has affirmed "there were people using the school system" at the time the school was founded for a "last-ditch effort to save what they saw as their world." *Id.* ¶ 42.

State and local officials in Virginia have repeatedly acknowledged that commemoration of Confederate leaders and symbols conveys a meaningful (and regrettable) message. On June 6, 2020, Virginia Secretary of Education Atif Qarni told local elected officials—including Virginia city councils, board of supervisors, and school boards—to "change school names and mascots that are offensive or that memorialize confederate leaders or sympathizers," citing their harmful psychological impact on students, student families, teachers, and staff of color. *Id.* ¶ 24. Virginia Governor Ralph Northam echoed this sentiment in a letter dated July 6, 2020, which stated, in part: "[T]he names of public places, streets, and schools send messages to our children about what we value most as a society. When those names reflect our broken and racist past, they also perpetuate the hurt inextricably woven into this past. When our public schools are named after individuals who advanced slavery and systemic

racism, and we allow those names to remain on school property, we tacitly endorse their values as our own.  This is no longer acceptable." *Id.* ¶ 25.

It is within this context that, on June 25, 2020, the Shenandoah County School Board voted 6-0 in favor of a "[r]esolution condemning racism and affirming the division's commitment to an inclusive school environment for all." *Id.* ¶ 26.  Subsequently, on July 4, 2020, the Shenandoah County School Board published an agenda for the July 9, 2020 School Board meeting that included the action item, "Next Steps for Resolution condemning racism and affirming the division's commitment to an inclusive school environment for all." *Id.* ¶ 27.  At the July 9, 2020 School Board meeting, the "Recommended Action" for the resolution described in the agenda was "that the names of the Stonewall Jackson High School and Ashby Lee Elementary School be retired as well as the Rebel mascot at North Fork Middle School." *Id.* ¶ 28.  During the July 9, 2020 School Board meeting, the public comment portion of the meeting lasted approximately 80 minutes and drew approximately 25 speakers on the proposal to retire the names Stonewall Jackson HS and Ashby Lee Elementary School ("Ashby Lee ES").  *Id.* ¶ 29.  After public comments, the Shenandoah County School Board voted 5-1 to retire the names Stonewall Jackson HS and Ashby Lee ES.  *Id.* ¶ 30.

Following the vote, School Board member Cynthia Walsh stated: "[W]hether you think of Stonewall Jackson as a great man who did some bad things or a bad man who did some good things, the fact remains that he was a Confederate general and the Confederacy was all about states' rights.  But people keep forgetting to finish that sentence and to finish that sentence is: 'the Confederacy was all about states' rights to continue the practice of slavery in our country.'" *Id.* ¶ 32.  School Board member Andrew Keller stated: "There's no way to preserve the traditions and heritage of one group and ease [] the inequity that another group may have felt. You can't keep a name and remove racist implications from it. You can't claim to be inclusive, which we do[,] and have students who feel like they're excluded." *Id.* ¶ 33.  Keller also stated: "Which is more important: someone's heritage

regarding a school's name or someone's inclusion into that school, their right to feel welcome?" *Id.* ¶ 34. School Board Chairwoman Karen Whetzel stated: "As one high school student from Stonewall Jackson challenged me today 'if you vote to keep the name, you would be making a conscious decision to maintain a symbolic reference to a time of inequality and racism. School should be welcoming to all; a place of education, forward thinking, and bettering ourselves. How can we move forward if our school's name is only looking backwards[?]'" *Id.* ¶ 35.

Pursuant to the July 9, 2020 School Board resolution to retire the Confederate school names, the names Mountain View HS and Honey Run ES were used beginning on June 1, 2021. *Id.* ¶ 36.

On April 3, 2024, the School Board received a request from the Coalition for Better Schools to consider restoring the original names of Stonewall Jackson HS and Ashby Lee ES. *Id.* ¶ 37. At the May 9, 2024 School Board meeting, the School Board heard over three hours of comments by public speakers regarding a motion to restore the names Stonewall Jackson HS and Ashby Lee ES. *Id.* ¶ 38. The majority of the comments by public speakers at the May 9, 2024 meeting were in opposition to restoring the names, including multiple students of Mountain View HS (now named Stonewall Jackson HS) and the Massanutten Regional Governor's School, which is a competitive and specialized school housed within Mountain View HS/Stonewall Jackson HS. *Id.* ¶ 39. Current School Board Chairman Dennis Barlow stated: "If I were looking through the eyes of a black student or parent . . . I'd be unsettled about going back." *Id.* ¶ 40. "[Y]es, I did say I would feel unsettled if I were Black and going through this. Are you kidding me? Of course I would be." *Id.* ¶ 41.

Despite these objections, on May 10, 2024, the School Board affirmatively voted to reinstate the Confederate school names. *Id.* ¶ 43.

### C. Confederate General Stonewall Jackson Is Inextricably Linked With All Aspects of Student Life at Stonewall Jackson High School

As a result of the School Board's decision to reinstate the name Stonewall Jackson, the name and other symbols of the Confederacy are ubiquitous at Stonewall Jackson HS. For example:

- Students at Stonewall Jackson HS interact with signs, apparel, and school materials bearing the words "Stonewall Jackson," "SJ," "SJHS," or "Generals" daily. *Id.* ¶ 46.

- As of June 5, 2024, the sign at the main entrance to Stonewall Jackson HS includes the words "Stonewall Jackson High School." *Id.* ¶ 44.

- Stonewall Jackson HS is located on "Stonewall Lane." *Id.* ¶ 47.

- The Library within Stonewall Jackson HS is called "The Generals Library." *Id.* ¶ 48.

- The Mountain View High School Student Handbook from the 2023-2024 school year, which continues to be linked as the "Student Handbook" on the Stonewall Jackson HS website, refers to students as "Generals" and contains a cartoon picture of Stonewall Jackson in a Confederate uniform. The handbook also features the image of Stonewall Jackson next to the message: "The General Says: Students are not allowed to leave the building during the school day…" *Id.* ¶ 49.

- At times, students and teachers at Stonewall Jackson HS wear, during school hours, apparel including the words, "Stonewall Jackson," "SJ," "SJHS" and/or "Generals." *Id.* ¶ 45.

- The score table in the gym at Stonewall Jackson HS reads "Stonewall Jackson" and "Home of the Generals." *Id.* ¶ 50.

- The sidelines of the gym at Stonewall Jackson HS are lined with padded folding chairs that read "Stonewall Jackson Generals" and "SJ." *Id.* ¶ 51.

- The scoreboard in the gym at Stonewall Jackson HS has "SJ" displayed in the middle. *Id.* ¶ 52.

- Stonewall Jackson HS has a backdrop used at various events that reads: "Stonewall Jackson Generals" and "SJ." *Id.* ¶ 54.

- The 2025 graduation pamphlet reads "Stonewall Jackson High School Generals" and features the silhouette of a Confederate general on a horse. *Id.* ¶ 55.

- The 2020 and 2021 graduation pamphlets include an "Alma Mater" poem that reads: "To you our noble high school | Which proudly bears the name | Of Stonewall Jackson, fearless leader. | May you ere remain | To us an inspiration | To live our lives aright …" *Id.* ¶ 56.

- Stonewall Jackson HS sports teams and student groups are sometimes referred to as "Stonewall Jackson," "Stonewall Jackson High School," or "Generals" in official written communications and official announcements. *Id.* ¶¶ 57, 59.

- A "hype" section during Stonewall Jackson HS sporting events, where groups of students gather in school colors/paraphernalia and wave celebratory signs, is named after Stonewall Jackson and referred to as "The Wall." *Id.* ¶ 58.

Students attending Stonewall Jackson HS and especially those involved in sports or extracurriculars, cannot participate without being associated with Stonewall Jackson in some way. The official team name for Stonewall Jackson HS is the "Generals," and the Stonewall Jackson HS logo reads "SJ Generals," where "SJ" stands for Stonewall Jackson. *Id.* ¶ 59. In the 2024-2025 school year, Stonewall Jackson HS students who participate in sports and extracurricular activities are identified as "Stonewall Jackson" students, "Stonewall Jackson Generals," or "Generals." *Id.* ¶ 74.

Uniforms for the 2024-2025 school year for several sports and extracurricular activities at Stonewall Jackson HS display the word "Generals," including the basketball teams, soccer teams, track and field teams, cross-country teams, softball teams, volleyball teams, the wrestling team, the golf team, the Scholastic Bowl team, and the junior varsity baseball team. *Id.* ¶ 61. Additionally, several teams have more explicit references to Stonewall Jackson on their uniforms and as part of their participation in school-based activities:

- Cheerleaders at Stonewall Jackson HS have performed cheers that reference "Stonewall Jackson" and have held up signs that say "Stonewall" at official school sporting events. *Id.* ¶ 62.

- Students who are members of the Stonewall Jackson HS cheerleading team wear team uniforms that read "Generals" on the top, and some cheerleaders wore "SJ" on the hair bows. *Id.* ¶ 63.

- Students who are members of the Stonewall Jackson HS varsity baseball team wear team uniforms that read "Generals" on the jersey and "SJ" on the hat. *Id.* ¶ 64.

- Track hurdles at Stonewall Jackson HS include "SJ." *Id.* ¶ 65.

- Students who are members of the Stonewall Jackson HS varsity football team wore "throwback" team uniforms for the fall 2024 homecoming game that read "Stonewall." *Id.* ¶ 66.

- Students who are members of the swim team wore a swim jacket that read "Stonewall Jackson High School Generals," and "G" on their swim caps. *Id.* ¶ 67.

- The varsity letters presented to students in recognition of their performance on a sporting team at Stonewall Jackson HS includes "SJ." *Id.* ¶ 68.

Stonewall Jackson HS sports teams and student groups are sometimes referred to as "Stonewall Jackson," "Stonewall Jackson High School," or "Generals" in official written communications and announcements. *Id.* ¶ 57. For example, the Shenandoah County Public Schools Facebook page referred to the Stonewall Jackson High School Marching Band as the "Marching Generals." *Id.* ¶ 69.

Plaintiffs' experiences mirror this reality: they carry the message of Stonewall Jackson as they participate in school, sports, and extracurricular activities. At basketball and soccer games, D.D. is announced as a Stonewall Jackson General. *Id.* ¶ 75. The girls' soccer team D.D. plays on is referred to as "Generals Girls Soccer." *Id.* ¶ 76. D.D. is also pictured, in uniform, in a team photo for the girls' varsity basketball team where they sit on chairs that read "Stonewall Jackson Generals" and "SJ." *Id.* ¶ 77. As a successful student athlete, D.D. is frequently publicly recognized under the Stonewall Jackson name. ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ *Id.* ¶ 78. The newspaper also publishes statistics that identify her in association with Stonewall Jackson. *Id.* ¶ 79.

Even one of the greatest honors for D.D., becoming eligible to receive a varsity letter after just her first year on the basketball team, is directly tied to the messaging of Stonewall Jackson: all the varsity letters include the initials "SJ." *Id.* ¶¶ 68, 80/

A.J.'s certificate for the National Honor Society identifies him "as a member of the Stonewall Jackson High School Chapter of the National Honor Society." *Id.* ¶ 81. He was also required to wear a nametag for a Future Business Leaders of America conference that said "Stonewall Jackson High School" below his name. *Id.* ¶ 82. At the end of the 2024-2025 school year, A.J. received a student

leadership award in front of a backdrop that reads "Stonewall Jackson Generals." *Id.* ¶ 83. At scholastic bowl competitions, track meets, and when he places in the top three for a debate competition, A.J. is announced by his name and as a Stonewall Jackson General. *Id.* ¶ 84. His band is announced as the "Stonewall Jackson Marching Generals" when they march onto the field. *Id.* ¶¶ 86, 107.

Virginia NAACP members who participate in marching band are known as the "Marching Generals" and those who participate in High School District Orchestra are listed in programs and forms as "SJHS" or "Stonewall Jackson High School." *Id.* ¶ 86. Additionally, Virginia NAACP members who participate in wrestling are listed as "[name], (Stonewall Jackson High School)" in online platforms containing wrestling match scores and are required to sign a form that included, as an "Overall Expectation[]": "I will always represent Stonewall Jackson with respect and dignity, no matter the location." *Id.* ¶ 87.

### D. Students at Stonewall Jackson High School Must Convey Confederate Names and Symbols if They Want to Participate in School Sports and Activities.

When students participate in sports and activities at Stonewall Jackson HS, they must wear uniforms or otherwise represent Confederate names and symbols. For all the sports that D.D. plays (and has played at Stonewall Jackson HS), she is required to wear uniforms with "Generals" written on the front. *Id.* ¶ 88.. A.J. is required to wear uniforms for track and field and the scholastic bowl that say "Generals" on the front. *Id.* ¶ 90–92. A.J. was also required to wear a nametag for a Future Business Leaders of America conference that said "Stonewall Jackson High School" below his name. *Id.* ¶ 82. Virginia NAACP members are required to wear uniforms for their sports that say "Generals." *Id.* ¶¶ 61, 93.

In general, students must wear uniforms for most, if not all, sports and activities associated with Stonewall Jackson HS, including for football, golf, volleyball, cross country, marching band,

basketball, wrestling, swim, cheer, softball, baseball, soccer, tennis, track and field, winter guard, and scholastic bowl. *Id.* ¶ 94. Uniforms for several extracurricular activities at Stonewall Jackson HS directly display the word "Generals," including the basketball teams, soccer teams, track and field teams, cross-country teams, softball teams, volleyball teams, the wrestling team, the golf team, the Scholastic Bowl team, and the junior varsity baseball team. *Id.* ¶ 95. Uniforms are provided to students, who are required to return them at the end of the sports season. *Id.* ¶¶ 96, 97.

The joint Shenandoah County Public Schools/Virginia High School League ("VHSL") Student Athletics & Activities Participation Handbook states that uniforms "are the property of the school" and "specific to the sport" at the coach's discretion. *Id.* ¶ 97. Student-athletes at Stonewall Jackson HS are required and expected to wear their uniforms for sporting events. For example:

- The Generals Girls Basketball coach instructed the team to wear "Varsity Red uniforms" for their February 3 game, and "Varsity Black" uniforms for the February 7 game. Both uniforms display "Generals." *Id.* ¶¶ 88, 98.

- The Generals Cross Country Team Rules and Contract states: "Expectations: We dress for success as a team at home as well as away. You are expected to always have your team shirt, hoodie & warm-ups with you every meet day. If you are a repeat offender of this rule **YOU WILL NOT BE ALLOWED** TO TRAVEL with the team or participate at that day's home meet." *Id.* ¶ 99.

- The Generals girls soccer coach instructed the team to bring their uniforms for sports pictures, and for games. *Id.* ¶ 100.

- The VHSL Handbook requires that students participating in track and field must wear the assigned uniforms. *Id.* ¶ 101.

- The National Federation of State High School Associations Track & Field and Cross Country Uniform Rules states: "The competitor's uniform shall be school-issued or school approved, worn as intended by the manufacturer." *Id.* ¶ 102.

- The track and field coach instructed the team to bring their uniforms to the track meet. *Id.* ¶ 103.

- For another track meet, the track and field coach instructed the team to bring their uniform and wrote: "Team shirt is a must." *Id.* ¶ 104.

- D.D.'s varsity basketball and varsity soccer uniforms display "Generals." *Id.* ¶ 88.

- A.J.'s scholastic bowl and track and field uniforms display "Generals." *Id.* ¶ 92.

-  Virginia NAACP members on cross country, baseball, and wrestling wear uniforms that display "Generals." *Id.* ¶¶ 104–106, 61.

### E.      Plaintiffs Object to the Name

Both named Plaintiffs and the student members of Plaintiff Virginia NAACP object to having to convey and associate with the Stonewall Jackson name and the Confederate ideology associated with it, such as the Generals mascot, the images of soldiers, and the initials "SJ."  D.D. believes the name signifies wanting slavery of Black people to continue and it makes her feel uncomfortable and like she is not welcome at the school.  *Id.* ¶¶ 110–112.  A.J. believes that the Confederacy signifies and uplifts ideals like slavery of Black people, racism, and oppression.  *Id.* ¶¶ 115–117.

Indeed, both D.D. and A.J., and their families, have demonstrated their objections to the name since Defendant School Board began considering reinstating the Stonewall Jackson name.  D.D. spoke to the School Board at the May 9, 2024 meeting in opposition to restoring the names Stonewall Jackson and Ashby Lee.  *Id.* ¶ 113.



*Id.* ¶ 114.

A.J. also spoke to the School Board at the May 9, 2024, meeting in opposition to restoring the names Stonewall Jackson and Ashby Lee.  *Id.* ¶ 117.

*Id.* ¶ 118.  Additionally, Mary Johnson, on behalf of A.J., requested the ability to register A.J. for school

without selecting Stonewall Jackson, and was told by Superintendent Melody Sheppard that she was required to select Stonewall Jackson HS in order to register A.J. for school. *Id.* ¶ 119.

The Virginia NAACP has also spoken out on behalf of its members. In a press release expressing disagreement with the School Board's vote to reinstate the names, the Virginia NAACP stated that "[w]hen students walk through the halls of renamed Stonewall Jackson High School . . . they [] do so with inescapable reminders of Confederate legacies that enslaved and discriminated against African descended people." *Id.* ¶ 121. Virginia NAACP further stated that its members "who do not share the majority of the Shenandoah County School Board's pro-Confederate ideals are not valued and respected when forced to learn in, and pay taxes to support, Confederate memorials." *Id.*

### F. Sports and Extracurricular Activities Provide Important Benefits to Students

Sports and extracurricular activities are integral to students' high school experience, including that of A.J., D.D., and student members of the Virginia NAACP. Sports are a "big part" of D.D.'s social life. *Id.* ¶ 122. She does not wish to give up the opportunity to participate in sports with her peers. *Id.* Similarly, academic, sports, and extracurricular activities are central to A.J.'s high school experience, and he does not wish to give up the opportunity to participate in these activities with his peers. *Id.* ¶ 123. Virginia NAACP members similarly view sports and extracurriculars as a key part of their high school experience. *Id.* ¶ 124.

In addition to being central to D.D.'s and A.J.'s social development, academic, sports, and extracurricular activities play a significant role in strengthening D.D.'s and A.J.'s college applications. D.D. participates in sports at Stonewall Jackson HS in order to "be able to play sports in college *Id.* ¶ 125. She is currently building her résumé to strengthen her college applications, and abruptly withdrawing from her sports activities would disrupt that effort and weaken her college applications. *Id.* ¶ 126. Likewise, A.J. is a junior in high school and currently preparing to apply to college in the fall. *Id.* ¶ 127. Suddenly ceasing to participate in the academic, sports, and extracurricular activities

that he has participated in for years would disrupt his résumé and significantly undermine his candidacy. *Id.*

Understanding the importance of sports, the VHSL affirms that "sponsored activities educate youth to the need for trained minds and healthy bodies while also providing opportunities for personal growth." *Id.* ¶ 128. Sports participation can foster communication and leadership skills, promote reduced levels of anxiety, depression, and feelings of isolation, and give students a higher level of self-esteem and sense of belonging. *Id.* ¶ 129. Furthermore, the mission statement outlined in the VHSL handbook asserts its membership will provide an environment that respects every individual regardless of protected characteristics such as race. *Id.* ¶ 130.

Sports team names play a central role in school culture and help shape school identity and pride. *Id.* ¶ 131. A sports team name can provide for a shared sense of purpose, which is necessary for a team to be successful. *Id.* ¶ 132. Team uniforms similarly promote a sense of belonging that is fundamental to teamwork. *Id.* ¶ 131. Team uniforms are at the center of a team's messaging and serve as the key symbol of a team's shared calling to work together in pursuit of victory. *Id.* ¶ 132. Team uniforms also serve the dual practical purposes of allowing athletes to identify one another on the field as well as to enable fans to identify the side they are supporting. *Id.* ¶ 133. Identical team uniforms enable players to focus on the game rather than be distracted by individual clothing choices on the field and what they might mean. *Id.* ¶ 134. This also helps minimize peer pressure related to clothing choices and brand competition among student athletes. *Id.*

## III. PROCEDURAL HISTORY

Plaintiffs filed their Complaint with this Court on June 11, 2024. ECF No. 1. The Complaint asserts four causes of action against Defendant. Count I alleges violations of Plaintiffs' rights under the First Amendment of the United States Constitution. Specifically, Plaintiffs allege that Defendant, by compelling Plaintiffs to identify as members of the "Stonewall Jackson Generals," violates

Plaintiffs' rights under the First Amendment against government-forced speech. Counts II-IV assert violations of Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution, Title VI of the Civil Rights Act of 1964, and the Equal Educational Opportunities Act.

Defendant moved to dismiss the Complaint on July 17, 2024 (ECF No. 29), and the Court heard argument on September 27, 2024 (ECF No. 50). On January 22, 2025, the Court denied the motion in full, allowing all four of Plaintiffs' claims to proceed (ECF Nos. 61–62). At a subsequent Scheduling Conference on March 12, 2025, the Court directed the parties to first litigate Count I— the First Amendment claims—through summary judgment (ECF No. 79), setting a dispositive motion deadline of June 4, 2025 (ECF No. 97). In accordance with the Court's order, the parties completed fact and expert discovery on Count I, which revealed evidence that supports Plaintiffs' claims, and undermines Defendant's arguments and contradicts its factual assertions. Plaintiffs now move for summary judgment on Count I.

## IV.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires that the court "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant properly makes and supports a motion for summary judgment, the opposing party must show that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). However, the nonmoving party cannot defeat a properly supported motion with mere conjecture and speculation. *See Glover v. Oppleman,* 178 F. Supp. 2d 622, 631 (W.D. Va. 2001). On the contrary, the court has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (*quoting Celotex,* 477 U.S. at 323-324); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citations omitted). "[T]he mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

## V.    ARGUMENT

The First Amendment's guarantee of freedom of speech protects against the government requiring individuals to convey a particular message with which they disagree. *See Wooley v. Maynard*, 430 U.S. 705, 714 (1977). This includes the right to speak freely and to refrain from espousing a message that one finds objectionable. *See id.* This right extends to students in school who do not "shed their constitutional rights to freedom of speech and expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969); *see also Hardwick v. Heyward*, 711 F.3d 426, 434 (4th Cir. 2013) (quoting *Tinker*). Government-compelled speech is presumptively unconstitutional unless the government can demonstrate that the requirement is narrowly tailored to achieve a compelling state interest. *See Nat'l Inst. Fam. & Life Advoc. v. Becerra*, 585 U.S. 755, 766 (2018); *see also Wooley*, 430 U.S. at 716; *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.").

Speech is compelled in violation of the First Amendment when individuals demonstrate they are forced to convey a government message "by word or act." *See Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 892, (2018) (quoting *Barnette*, 319 U.S. at 642); *see also 303 Creative LLC v. Elenis*, 600 U.S. 570, 586-587 (2023) ("The First Amendment protects acts of expressive association" and "the government may not compel a person to speak its own preferred messages"). As discussed in more detail below, Plaintiffs' participation in school-sponsored sports and other

extracurricular activities in the name of "Stonewall Jackson Generals" forces them to convey the morally reprehensible ideals of the Confederacy, to which they vehemently object.

### A.    Confederate Names Convey a Historical and Symbolic Message.

Defendant's own admissions, as well as Fourth Circuit precedent, statements by Virginia officials, and the historical record all demonstrate that Confederate symbology conveys a message. *Accord* MTD Op. at 15 ("Although residents of Shenandoah County disagree as to the nature of the message conveyed by the name Stonewall Jackson, they agree that the name holds expressive import."). It is beyond dispute that the Confederacy existed, at least in part, to preserve slavery, SUMF ¶ 11; and, in Plaintiffs' view, Confederate symbols therefore represent a racially-divisive message. On more than one occasion, the Fourth Circuit has explicitly acknowledged "the sincerely held view of many Americans, of all races, that the confederate flag is a symbol of racial separation and oppression," and that "there are still those today who affirm allegiance to the confederate flag precisely because, for them, that flag is identified with racial separation." *United States v. Blanding*, 250 F.3d 858, 861 (4th Cir. 2001); *see also Hardwick ex rel. Hardwick*, 711 F.3d at 436 (citing *Blanding* regarding symbology of the Confederate flag).

Like the Confederate flag, sites honoring the name Thomas "Stonewall" Jackson are a form of Confederate symbology that sends a message of "racial separation." *See Blanding*, 250 F.3d at 861. Stonewall Jackson was a prominent Confederate leader who fought in the Civil War to preserve the institution of slavery, was a slaveholder himself, and believed that God sanctioned the enslavement of Black people. SUMF ¶ 12. Defendant School Board does not dispute these facts. *See id.* ¶¶ 11–12; *accord Crosby by Crosby v. Holsinger*, 816 F.2d 162, 163 (4th Cir. 1987) (acknowledging the undeniable "association between those symbols and the history of slavery in this country"). Naming sites for well-known Confederates has historically been used to convey to Black people that they are unequal and unwelcome. *Id.* ¶ 13. As Defendant's current and former members have acknowledged, in the

wake of Virginia's Massive Resistance campaign, this was the very message the School Board intended to send by naming Stonewall Jackson HS for a notable Confederate general and slaveholder, flying the Confederate flag during its construction, and explicitly excluding Black students from its halls. *Id.* ¶¶ 31, 42. Defendant has further recognized that the Stonewall Jackson name is a "symbolic reference to a time of inequality and racism," and that "the Confederacy was all about states' rights to continue the practice of slavery in our country." *Id.* ¶¶ 32, 35. Because of this, as Defendant has also acknowledged,[1] it is simply not possible "to remove racist implications from" the name Stonewall Jackson. *Id.* ¶ 33; *see also id.* ¶¶ 24–25 (Virginia government officials noting the "traumatizing impact on the psyche of our children, families, teachers and staff of color" and recognizing that naming schools after such individuals is to "tacitly endorse their values as our own.").

The Confederacy's purpose of defending slavery and the subjugation of Black people; the historical use of Confederate names and symbology in response to gains in Black political power; and the history of the naming of Stonewall Jackson HS in particular, means that here, "Stonewall Jackson Generals" conveys a message. Even if other people might view the history of the Confederacy differently, and thus take away a different message, there is no dispute that the name conveys *a* message. Therefore, the First Amendment applies. *See* MTD Op. at 15-16; *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995); s*ee also* Def.'s Mem. in Support of Motion to Dismiss, ECF No. 30 at 2 (the names "show a desire to honor Stonewall Jackson[:] who he was, what he stood for, his character, his loyalty, his leadership, how Godly a man he was and a desire to 'stop finding racism and prejudice in everything.'").

### B. Plaintiffs Engage in Speech and Symbolic and Expressive Conduct When They Participate as Stonewall Jackson Generals.

---

[1] *See E.E.O.C. v. Watergate at Landmark Condominium*, 24 F.3d 635, 640 (4th Cir. 1994) (statements from defendant's agents, such as committee members, are party admissions).

Because Confederate names and symbols convey a message, students' association or display of that message is speech subject to the First Amendment. "[T]he First Amendment applies, both to the speech (wearing Stonewall Jackson Generals apparel) and to the expressive conduct (representing Stonewall Jackson High School in school activities) at issue in this case." *Id.* MTD Op. at 16. As this Court has recognized, "[e]mblazoning the words Stonewall Jackson Generals on a uniform is speech in the same way that emblazoning the phrase Live Free or Die on a license plate is speech." MTD Op. at 14. And "[c]lothing, particularly clothing displaying words and symbols, is speech." *Id.* (citing *Hardwick ex rel. Hardwick*, 711 F.3d at 436-37 (treating the wearing of "Confederate flag apparel" as student speech)); *see also Wooley*, 430 U.S. at 715 (displaying a state motto on a license plate is speech); *Frudden v. Pilling*, 742 F.3d 1199, 1205 (9th Cir. 2014) (text and symbols on school uniforms that convey a message constitute speech, as it "compels [the] student 'to be an instrument'" for the message). It is well understood that "symbolic or expressive conduct as well as . . . speech" is protected by the First Amendment. *Virginia v. Black*, 538 U.S. 343, 358 (2003); *see also Barnette*, 319 U.S. 624, 642 (requiring students to salute and pledge allegiance to the flag is protected student speech); *Hurley*, 515 U.S. at 568-69 (holding that "the Constitution looks beyond written or spoken words as mediums of expression" such that participating in a parade or playing music constitutes expressive speech).

Here, Plaintiffs' participation in sports and extracurricular activities on behalf of the Stonewall Jackson HS Generals is both speech and symbolic and expressive conduct. Stonewall Jackson HS's mascot is a horse-mounted general, and the sports and other competitive teams are often referred to as "Stonewall Jackson Generals," "Stonewall Jackson," "SJ Generals," "SJ," or simply "Generals." SUMF ¶¶ 57–58, 60. Plaintiffs are required to wear uniforms reflecting these messages and images in effectively every activity they participate in, thus repeatedly associating themselves with and amplifying the Stonewall Jackson name and message. A.J., D.D., and Virginia NAACP members are required to wear uniforms that say "Generals" when competing in their sports and extracurricular activities. *See*

*supra* § II.D.  Every time D.D. puts on her basketball and soccer jersey to compete it says "Generals" across her chest.  SUMF ¶ 88.  Every time A.J participates in a debate competition, he must sit behind a placard that says "Stonewall Jackson."  *Id.* ¶ 109.  Every time A.J. attends a Future Business Leaders of America Conference, his nametag says "Stonewall Jackson."  *Id.* ¶ 82.  As in *Wooley*, wearing "Stonewall Jackson," the "SJ" initials, or "Generals" emblazoned across their uniforms makes the Plaintiffs "mobile billboard[s] for the State's ideological message."  430 U.S. at 715.  And any viewer of this Confederate name, repeated over and over, would reasonably understand that it conveys a message.  *See* Section IV.A, *supra*.

As this Court has recognized, even separate and apart from what the uniforms say, Plaintiffs are obliged to convey the messages associated with the Stonewall Jackson name because to participate in school activities, they must closely identify with the name in other ways.  "Competing on behalf of teams named in honor of Confederate generals [] intermingles speech with expressive conduct."  MTD Op. at 15 (citing *Virginia v. Black*, 538 U.S. 343, 358).  The fact that "Confederate imagery might be viewed by some as a symbolic acknowledgement of pride in Southern heritage and ideals of independence," MTD Op. at 16, or might be viewed as an endorsement of racial segregation, see SUMF ¶¶11–17, necessarily means that "scoring points on behalf of a team named after Stonewall Jackson" or "shooting a free throw on behalf of Stonewall Jackson High School is expressive, even if the same activity might not be expressive if done on behalf of Mountain View High School."  MTD Op. at 16.

The record is replete with this sort of compelled expressive conduct at Stonewall Jackson HS.  Plaintiffs routinely represent Stonewall Jackson HS in their various extracurriculars through such expression.  When Plaintiffs compete in games and activities, if cheerleaders are present, they perform cheers referring to Stonewall Jackson and hold up signs that say "Stonewall."  *Id.* ¶ 62.  When D.D. plays on the varsity basketball and soccer teams, she is announced as a Stonewall Jackson General.  *Id.*

¶ 75. When she earned the ability to wear a varsity letter after just her first year, that varsity letter conveyed a message: it is emblazoned with the initials "SJ." *Id.* ¶¶ 68, 80. A.J is announced by his name and as a Stonewall Jackson General during his scholastic bowl competitions, track meets, and when he places in the top three for a debate competition. *Id.* ¶ 84. His band is announced as the "Stonewall Jackson Marching Generals" when they march onto the field. *Id.* ¶ 107. And most perversely, when Plaintiffs achieve a victory or accolade, it is a victory in the name of a man only known today because he notoriously fought to preserve chattel slavery and the ideology of Black inferiority underpinning it. *Id.* ¶¶ 10–12. Being announced with, cheered with, and labeled with a specific message while participating in expressive conduct is speech that "falls well within the sphere of conduct protected by the First Amendment." *Hurley*, 515 U.S. at 568.

### C. Plaintiffs Object to the Message.

There is no genuine dispute that the Plaintiffs in this case object to the message they are forced to convey. Indeed, Defendant has already conceded as much. *See* Def.'s Mem. ISO Motion to Dismiss, ECF. No 30 at 2 ("the Board has no reason to doubt that Plaintiffs' beliefs regarding the school names are sincerely held").

The First Amendment prohibits the government from forcing an individual "to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable." *Wooley*, 430 U.S. at 715; *see also Barnette*, 319 U.S. at 634 (it is a violation of the freedom of speech to "compel [someone] to utter what is not in his mind."). In *Wooley*, the plaintiff objected to compelled speech—displaying the New Hampshire state slogan on his license plate—by affirming that he found it to be "morally, ethically, religiously and politically abhorrent." 430 U.S. at 713. The Supreme Court has been clear: "[t]he First Amendment protects the right of individuals to hold a point of view different from the majority." *Id.* at 715.

Here, Plaintiffs have consistently demonstrated their objection to the School Board's message glorifying the Confederacy. SUMF ¶¶ 110, 115. Plaintiffs also spoke against the reversion to the Confederate school names during the May 2024 School Board meeting on the topic. During the May 2024 School Board meeting, A.J. expressly objected to reverting to the Confederate school names. A.J. made similar statements in opposition to the Confederate school names at two earlier school board meetings. A.J. Declaration. Defendant cannot martial any evidence that Plaintiffs do, in fact, support the message conveyed by the Stonewall Jackson name. A.J. has outwardly expressed his objection to Stonewall Jackson's association with the "Confederate ideals of slavery." *Id.* ¶ 117–18. He has further expressed disagreement with the fact that Stonewall Jackson owned slaves and fought against the United States in the Civil War. *Id.* D.D. has also spoken to the School Board about her opposition to the Confederate school names, stating that she is forced to represent a man who fought for her ancestors to be slaves, and wanted slavery to continue. *Id.* ¶ 113. The Virginia NAACP expressed its opposition to the use of Confederate names and symbology. In 2020, the delegates of the national NAACP convention approved a policy resolution state and local endorsements of celebration to the former States of the Confederacy. The policy resolution acknowledged that the former States of Confederacy sought to enforce and defend the practice of forced enslavement, and the celebration of the former Confederacy causes distress to Americans of African ancestry. *Id.* ¶ 120. In response to the School Board's 2024 vote to reinstate the Confederate names, the Virginia NAACP issued a statement calling on the Shenandoah County School Board to reverse their decision. *Id.* ¶ 121. And, of course, A.J., D.D., and Virginia NAACP members have initiated the lawsuit at issue here in order to vindicate their right to refuse to convey the Confederate message.

Plaintiffs are also the relevant speakers, because, like the plaintiff in *Wooley*, they are required to be "mobile billboards" for the Defendant's pro-Confederate message when they participate in school-related sports and activities. *See Wooley,* 430 U.S. at 715; *accord* MTD Op. at 17.

**D. Plaintiffs Are Subject to Compulsion Because Defendant Requires Them to Wear Uniforms Containing Confederate Names and Symbols and Identify as Stonewall Jackson Generals.**

Compulsion exists where individuals are required to serve as instruments of the government message in order to participate in necessary activities. *Wooley*, 430 U.S. at 715. "In order to compel the exercise or suppression of speech, the governmental measure must punish, or threaten to punish, protected speech by governmental action that is 'regulatory, proscriptive, or compulsory in nature." *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Tr.*, 235 F.3d 1243, 1247 (10th Cir. 2000). But "[c]ompulsion need not take the form of a direct threat or a gun to the head," *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1290 (10th Cir. 2004), and may take the form of "indirect discouragement, rather than a direct punishment," so long as the discouragement is more than "minimal" and not "wholly subjective." *Phelan*, 235 F.3d at 1247. *See also United States v. Ramsey*, 431 U.S. 606, 624 (1977); *see also 303 Creative*, 600 U.S. at 589 (finding risk of mandatory training, filing compliance reports, and possibly paying administrative fines to constitute compulsion).

Participation in sports and extracurricular activities is a "virtual necessity" for high school students to have a complete high school experience, and, as this Court has already found, "[t]he risk of exclusion from extracurricular activities constitutes compulsion." MTD Op. at 19; *accord Hening v. Adair*, 644 F. Supp. 3d 203, 209 (W.D. Va. 2022) (finding that a coach benching a player based on failure to undertake compelled expressive act "would tend to chill a person of ordinary firmness's exercise of her First Amendment rights"). That risk of exclusion is present here. To participate in team sports and other activities, Plaintiffs must "wear Stonewall Jackson Generals uniforms or represent Stonewall Jackson High School." MTD Op. at 19. *See supra* § II.D (describing the myriad ways students represent Stonewall Jackson HS in order to participate in school activities). In other words, the students are required to be "publicly identified or associated with another's message," *Glickman v. Wileman Bros. & Elliott*, 521 U.S. 457, 471 (1997)—one with which they vehemently

disagree—or face potential consequences. Unless they withdraw from meaningful parts of student life, Plaintiffs must outwardly align themselves with a historical figure whose legacy they find deeply offensive.

First, Stonewall Jackson HS students who play team sports or participate in the marching band must wear uniforms branded with the name Stonewall Jackson. *See, e.g.*, SUMF ¶ 64 (varsity baseball hats say "SJ"); *id.* ¶ 66 (football throwback jerseys say "Stonewall"); *id.* ¶ 67 (swim team jackets say "Stonewall Jackson High School Generals"). By policy and practice, students must wear these uniforms or face the threat of exclusion. For example, Virginia NAACP members on the cross country team were required to sign a contract stating: "We dress for success and look the part at home as well as away. You are expected to always have your team shirt, hoodie & warm-ups with you every meet day. If you are a repeat offender of this rule **YOU WILL NOT BE ALLOWED** TO TRAVEL with the team or participate at that day's home meet." *Id.* ¶ 99. Consistent with that approach, coaches for other Stonewall Jackson HS teams routinely instruct that uniforms are required and frequently remind their players to wear their uniforms. D.D.'s basketball coach sends messages to the team instructing them to wear "Varsity Red" uniforms for certain games and "Varsity Black" uniforms for others. *Id.* ¶ 98. D.D.'s soccer coach similarly instructs the team to bring their uniform for sports pictures and games. *Id.* ¶ 100. A.J.'s track and field coach instructed the team to bring their uniforms to a track meet. *Id.* ¶ 103. His track and field coach again instructed the team to bring their uniform to another meet and wrote: "Team shirt is a must." *Id.* Plaintiffs' coaches across various sports have told them that uniforms are mandatory. *Id.* ¶¶ 89–90.

That uniforms are required is consistently reinforced in other guidance issued by Defendant and others in authority. Uniforms are school property—specific to the sport—that students receive at the beginning of the sports season and are required to be returned at the end of the season. *Id.* ¶ 97. The VHSL handbook emphasizes the reason for having uniforms, stating that its "uniform code"

works to "equalize to some degree the opportunities for success in competition, to encourage the participation of representative students and to ensure maintenance of minimum essential standards by all school representatives." *Id.* The National Federation of State High School Associations ("NFHS") Track & Field and Cross Country Uniform Rules, which are cross referenced throughout the VHSL handbook, require competitors to wear school-issued or school approved uniforms *Id.* ¶¶ 103–105. The NFHS wrestling rules similarly require competitors to wear school-issued singlets. *Id.* ¶ 104.

Plaintiffs are also "indirect[ly] discourage[ed]," *Phelan*, 235 F.3d at 1247, from refusing to convey the School Board's Confederate message on their uniforms. Plaintiffs who object to the historical and symbolic message associated with the Confederate names must choose between endorsing this speech, or forgoing participation in extracurricular activities at Stonewall Jackson HS. A student who chooses not to be a messenger of the Confederate speech they abhor loses the sense of belonging and shared calling with their team. A student who forgoes extracurriculars to avoid forced speech loses the many benefits that sport provides such as improved communication, self-esteem, and leadership skills, as well as reduced levels of anxiety, depression, and isolation. They may also lose opportunities to present compelling college applications. *Id.* ¶¶ 125–127. As in *Axson-Flynn*, even such indirect effects are impermissible punishment for not engaging in the speech Defendant seeks to compel. *Axson-Flynn*, 356 F.3d at 1290; *see also Frudden*, 742 F.3d at 1205 (concluding that the lack of actually imposed discipline was "irrelevant" where the relief sought was prospective, as it is here). See also MTD Op. at 21.

The names on the uniforms are not incidental—they communicate affiliation with a cause that sought to preserve slavery and White supremacy. For students who object, the uniform requirement forces an untenable choice: suppress their conscience or surrender access to the community, growth, and opportunity that extracurricular involvement provides. That coercion violates the First Amendment.

Second, even without the uniforms themselves, Plaintiffs' participation in sports and extracurricular activities under the banner of Stonewall Jackson conveys a pro-Confederate message that is impossible to avoid. "[S]coring points on behalf of a team named after Stonewall Jackson conveys a message likely to be understood by the assembled crowd." MTD Op. at 15. When D.D. steps onto the basketball court, she is announced as a member of the Stonewall Jackson Generals. SUMF ¶ 75. The scoreboard listing points she scores displays "SJ," as do the bleachers surrounding her. *Id.* ¶¶ 52–53. During a break, she sits with her team on folding chairs that say "Stonewall Jackson." *Id.* ¶¶ 51, 57. Her success is reported in the local newspaper, which lists her as a member of the "Stonewall Jackson" team. *Id.* ¶¶ 78–79. When A.J. jumps hurdles at a track meet, the hurdles depict "SJ." *Id.* ¶ 65. Track and field records are commemorated within the school on a board that states "Stonewall Jackson High School Track and Field Records" and "SJ." *Id.* ¶ 70. When A.J. attends Future Business Leaders of America conferences and participates in the debate and public speaking events, he must wear a nametag on his chest that shows his name and "Stonewall Jackson High School." *Id.* ¶ 82. As A.J. answers questions during Scholastic Bowl meets, he sits behind a name placard that says "Stonewall Jackson." *Id.* ¶ 108. As he walks onto the field to perform with the marching band or accepts awards in band competitions, they are announced as the "Stonewall Jackson Marching Generals." *Id.* ¶ 107. When Virginia NAACP members participate in chess club, National Honor Society, wrestling, baseball, and orchestra, they do so as "Stonewall Jackson Generals" and are affiliated with Stonewall Jackson. *Id.* ¶¶ 9, 86–87. They compete wearing uniforms with Confederate symbology on them such as "Generals" or "SJ." *Id.* ¶ 9, 61.

Short of quitting their sports and extracurriculars, D.D., A.J, and Virginia NAACP members will continue to be forced to closely associate with Stonewall Jackson and communicate a message they find abhorrent. Because the only way to avoid this forced expressive conduct is to forgo the opportunity to participate in these activities, Defendant violates Plaintiffs' First Amendment rights.

### E. There Is No Compelling Governmental Purpose Behind the Compelled Speech.

The state may only infringe on the freedom of speech in exceptional circumstances—a high bar that is only further heightened when the infringement is in the form of compelled speech. *See Kania v. Fordham*, 702 F.2d 475, 479 n.6 (4th Cir. 1983) (cases concerning "state compulsion-to-speak clearly implicate[] constitutional guarantees of freedom of thought and expression," thus courts examine "the proffered countervailing state interests").[2] Such exceptional circumstances could involve the need to "prevent grave and immediate danger to interests which the state may lawfully protect." *Barnette*, 319 U.S. at 639. Where the government seeks to compel speech, the bar for what will justify the state action is highest. *Id.* at 633 ("involuntary affirmation could be commanded only on even more immediate and urgent grounds than silence").

Here, there is nothing in the record to support any compelling interest that Defendant may have in compelling students to convey pro-Confederacy messages that are against their sincerely held beliefs. While Defendant alludes to its desire to honor Stonewall Jackson and what he stood for, *see* Def.'s Mem. in Support of Motion to Dismiss, ECF No. 30 at 2, and that reinstating the names "was motivated by nothing more than public will and its respect for the democratic process," *see* Def.'s Mem. in Support of Motion to Dismiss, ECF No. 30 at 2, these motivations do not permit Defendant

---

[2] Relatedly, the Supreme Court has held that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). This test is irrelevant here where the central issue is speech and the Defendant is not attempting to regulate any "nonspeech element." Even under that test, the reinstatement of the school names would fail to survive scrutiny because, among other reasons, the "incidental restriction on alleged First Amendment freedoms" can only be justified where it is "no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377. The imposition on Plaintiffs' First amendment freedoms here is not "incidental" and any interest in honoring the region's history and addressing alleged procedural defects could be addressed by measures that do not compel Plaintiffs to speak a message promoting the Confederacy.

to infringe on Plaintiff's First Amendment rights. As this Court has noted, "it bears emphasizing that whether the School Board followed public will is irrelevant. Constitutional rights 'withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities.'" Motion to Dismiss Op., ECF No. 61 at 35 (citing *Barnette*, 319 US at 638). There is no compelling governmental interest in communicating official views on history and state pride. *See Wooley*, 430 U.S. at 716–17 ("where the State's interest is to disseminate an ideology, no matter how acceptable to some, such interest cannot outweigh an individual's First Amendment right to avoid becoming the courier for such message."). Defendant has no compelling interest in honoring Confederate leaders that would outweigh Plaintiffs' right to refuse to be the courier of that message.

## VI. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Summary Judgment on their First Amendment claims, and enter an Order requiring Defendant to change the school name.

Dated: June 4, 2025                                          Respectfully submitted,

/s/ Kaitlin Banner
Kaitlin Banner (DC Bar #1000436)*
Marja K. Plater (DC Bar #90002586)*
Ryan Downer (DC Bar #1013470)*
Washington Lawyers' Committee
for Civil Rights and Urban Affairs
700 14th Street, NW, Suite 400
Washington, DC 20005
kaitlin_banner@washlaw.org

/s/ Ashley Joyner Chavous
Ashley Joyner Chavous (VSB #84028)
Jason C. Raofield (DC Bar #463877)*
Elizabeth Upton (DC Bar #1031985)*
Li Reed (DC Bar #90018796)*
Amber Lowery (DC Bar #1780982)*
Stephanie Nnadi (DC Bar #90007365)*
Cara E. Souto (DC Bar #90018434)*
Lauren Smith (DC Bar #90029733)*
Analese Bridges (DC Bar #90029992)*
Covington & Burling LLP
850 10th Street, NW
Washington, DC 20001
(202) 662-6000
achavous@cov.com

*Counsel for Plaintiffs*
* *Admitted pro hac vice*

## CERTIFICATE OF SERVICE

   I hereby certify that on June 4, 2025, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to:

Jim H. Guynn, Jr (VSB #22299)
Christopher S. Dadak (VSB #83789)
John R. Fitzgerald (VSB #989221)
GUYNN WADDELL, P.C.
415 S. College Ave.
Salem, Virginia 24153
Phone: (540) 387-2320
Fax: (540) 389-2350
Email: jimg@guynnwaddell.com
   chrisd@guynnwaddell.com
   johnf@guynnwaddell.com
*Counsel for Defendants*

s/ *Ashley Joyner Chavous*
Ashley Joyner Chavous
VA Bar #84028