CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED
06/05/2025
LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| VIRGINIA STATE CONFERENCE NAACP et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 5:24-cv-040<br>) |
| COUNTY SCHOOL BOARD OF SHENANDOAH COUNTY, | ) By:   Michael F. Urbanski<br>) Senior United States District Judge<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION

In this case, plaintiffs seek declaratory and injunctive relief from defendant County School Board of Shenandoah County's decision to rename schools in honor of Confederate leaders, a decision plaintiffs allege violates their rights under the First Amendment, Fourteenth Amendment, Title VI of the Civil Rights Act ("Title VI"), and the Equal Educational Opportunities Act ("EEOA"). Compl., ECF No. 1. On March 6, 2025, the School Board filed a demand for a trial by jury under Federal Rule of Civil Procedure ("Rule") 38(b)(2). ECF No. 74. On March 27, 2025, plaintiffs moved to strike the jury demand. ECF No. 86. The court must now determine whether there is a federal right to a jury trial in this case. In the absence of a statute conferring a right to a trial by jury, the Seventh Amendment jury trial right hinges on a suit being "at common law." U.S. Const. amend. VII. Because plaintiffs seek only equitable relief in the form of injunctive relief and corresponding declaratory relief and attorneys' fees and litigation costs, not damages or any other legal remedy, no jury trial right is triggered in this case. Accordingly, plaintiffs' motion to strike the jury demand is **GRANTED**.

1

I.

This matter arises out of the School Board's 2024 decision to reinstate the names Stonewall Jackson High School and Ashby Lee Elementary School. Compl., ECF No. 1. The School Board had previously decided in 2020-2021 to retire these names because they referred to leaders of the Confederacy, and for several years, the schools operated as Mountain View High School and Honey Run Elementary School. Id. ¶¶ 6-7. Plaintiffs are parents of children who attend or will attend Stonewall Jackson High School and Ashby Lee Elementary School; these individual plaintiffs are joined by the Virginia State Conference NAACP, an association whose membership also includes families with students attending these schools. Id. ¶¶ 18-27. Plaintiffs allege that certain students object to the message conveyed by these Confederate school names and that Black students disproportionately suffer dignitary and educational harms due to these Confederate school names. Id.

On June 11, 2024, plaintiffs filed their complaint challenging the School Board's 2024 decision under the First Amendment, Fourteenth Amendment, Title VI, and the EEOA. Id. ¶ 14. The complaint seeks the following forms of relief: (1) declaratory relief stating "that [the School Board] is violating the Fourteenth Amendment and First Amendment of the United States Constitution, Title VI of the Civil Rights Act of 1964, and the Equal Educational Opportunities Act by maintaining and reinstating the school names Stonewall Jackson [High School] and Ashby Lee [Elementary School], and the team name/mascot the 'Generals;'" (2) injunctive relief requiring the School Board to remove the Confederate names and mascots and preventing renaming these schools after Confederate leaders in the future; (3) injunctive relief requiring the School Board to remove all vestiges of the dual school system previously

operated in Shenandoah County; (4) attorneys' fees under 42 U.S.C. § 1988; (5) litigation costs pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988; and (6) any other relief the court deems appropriate. Id. at Conclusion and Relief Requested. Plaintiffs do not seek damages of any kind. Id.

Defendants moved to dismiss the complaint for failure to state a claim on July 17, 2024. ECF No. 29. In a memorandum opinion and order dated January 22, 2025, the court denied the motion to dismiss. ECF No. 62; ECF No. 63. The School Board filed its answer to the complaint on February 28, 2025, ECF No. 73, and its jury demand on March 6, 2025, ECF No. 74. A status conference was held on March 12, 2025. ECF No. 79. At that time, the parties and court discussed the possibility of setting a special timeline for the case to allow dispositive motions on plaintiffs' First Amendment claim to be briefed and argued in advance of discovery being completed on plaintiffs' Equal Protection, Title VI, and EEOA claims. The parties then submitted an agreed scheduling order, which the court entered. ECF No. 97. Accordingly, no trial date is currently set, but a hearing on dispositive motions as to the First Amendment claim is set for July 1, 2025, at 2:00 p.m. in Harrisonburg, ECF No. 112, and a status conference is scheduled for August 26, 2025, at 2:00 p.m. in Harrisonburg, ECF No. 108.

Plaintiffs filed the instant motion to strike the School Board's jury demand on March 27, 2025. ECF No. 86. Plaintiffs contend that any trial that may ultimately take place in this matter is not properly subject to the School Board's jury demand because this is a suit in equity seeking injunctive relief and declaratory relief coextensive with that injunctive relief, not a suit at common law seeking damages. ECF No. 87. On April 10, 2025, the School Board responded in opposition to the motion to strike. ECF No. 100. Although the School Board

3

agrees that "there is no right to a jury trial in cases involving purely equitable relief, and actions for injunctive relief are inherently equitable," the School Board argues that the claims here are legal in nature for three reasons: (1) because the declaratory relief at issue is analogous to a claim for damages under 42 U.S.C. § 1983 ("Section 1983"), (2) because plaintiffs' request for attorneys' fees and litigation costs makes this action akin to an action for damages, and (3) because compliance with the injunction plaintiffs seek would cost the School Board money. Id. at 1. Plaintiffs replied on April 17, 2025. ECF No. 101. The motion to strike is now ripe for the court's review.

## II.

Under Rule 38(b), "[o]n any issue triable of right by a jury, a party may demand a jury trial" by timely serving the other parties and filing a written demand. Fed. R. Civ. P. 38(b). When a jury trial has been demanded in compliance with Rule 38, the "trial on all issues so demanded must be by jury unless" the parties later stipulate to a nonjury trial or "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a). To determine whether there is a federal right to a jury trial, the court considers both the Seventh Amendment and the statutes at issue. See Israelitt v. Enter. Servs. LLC, 78 F.4th 647, 657 (4th Cir. 2023) ("The right to a jury trial can stem from a statute itself. . . . When the statute provides no such right, the Seventh Amendment might . . . .").

Here, plaintiffs are proceeding under three statutes: Title VI, the EEOA, and Section 1983. It is well-settled that Title VI does not independently create a jury trial right. See Jenkins v. Skinner, 771 F. Supp. 133, 135 (E.D. Va. 1991) ("Titles VI and VII[] are silent as to the

4

right to a jury trial."); Smith v. Barton, 914 F.2d 1330, 1336 (9th Cir. 1990) ("Title VI itself contains no grant of a jury trial. Furthermore, cases interpreting Title VI generally have found no such right."). The relevant provisions of the EEOA are also silent on the issue, see 20 U.S.C. § 1706, and, as the Fourth Circuit has explained, "[i]f the statute is silent on the issue of jury trial, then it is necessary to inquire whether a jury trial is constitutionally required under the Seventh Amendment." Pandazides v. Va. Bd. of Educ., 13 F.3d 823, 827 (4th Cir. 1994). Section 1983 is the statute providing plaintiffs with a cause of action by which to bring their constitutional First and Fourteenth Amendment claims. The Supreme Court has held that Section 1983 also "does not itself confer the jury right." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707-08 (1999). Rather, determining whether a Section 1983 claim entails a jury trial right requires applying the Seventh Amendment. Id. at 708.[1]

Thus, the only possible source of a jury trial right in this case is the Seventh Amendment itself. The Seventh Amendment states, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The Supreme Court has long interpreted "Suits at common law" to mean suits involving legal rights, as opposed to suits seeking equitable remedies. In 1830, Justice Story wrote:

> The phrase "common law," found in this clause, is used in contradistinction to equity, and admiralty, and maritime jurisprudence. . . . By common law, [the authors of the Seventh Amendment] meant . . . not merely suits, which the common law recognized among its old and settled proceedings, but suits in

---

[1] This is so because Section 1983 can be a vehicle for either a suit at law or a suit in equity; a Section 1983 suit seeking legal remedies will be embraced by the Seventh Amendment right, while a Section 1983 suit seeking equitable remedies will not be embraced by the Seventh Amendment right. City of Monterey, 526 U.S. at 707-09.

>which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.

Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 446-47 (1830) (Story, J.) (quoted in Curtis v. Loether, 415 U.S. 189, 193 (1974)).

The Supreme Court has since established a two-part test for determining whether a suit involves legal or equitable rights and remedies: "[f]irst, the nature of the issues involved and the statutory action are examined and compared to 18th-century actions prior to the merger of the courts of law and equity," and then, "[s]econd, and more importantly, the remedy available is examined to determine whether it is legal or equitable in nature." Pandazides, 13 F.3d at 829 (citing Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 565 (1990)). However, as the Seventh Circuit has noted, "the historical inquiry . . . [is] not about unsettling the principle that there is no right to a jury trial when the plaintiff is seeking only equitable relief; that principle is firm." Marseilles Hydro Power, LLC v. Marseilles Land & Water Co., 299 F.3d 643, 649 (7th Cir. 2002). "If the only relief sought is equitable, such as an injunction or specific performance (a type of affirmative injunction), neither the party seeking that relief nor the party opposing it is entitled to a jury trial." Id. at 648.

Here, plaintiffs principally seek injunctive and declaratory relief. There is no doubt that there is no right to a trial by jury on the injunctive relief plaintiffs seek. As to the first prong, actions for injunctions "were unknown to the common law courts of England or the United States until the merger of law and equity. Consequently, there is no constitutional right to a jury trial on an injunction claim." Charles Alan Wright & Arthur R. Miller, 9 Fed. Prac. & Proc. Civ. § 2308 (4th ed.). And as to the second prong, injunctions are the quintessential equitable

6

remedy. See City of Monterey, 526 U.S. at 719 (classifying "suits seeking only injunctive relief" among "contexts" in which "[i]t is settled law that the Seventh Amendment does not apply"); Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 374-75 (1979) (finding that "the courts have consistently held that neither party has a right to a jury trial" where a statute authorized only "injunctive relief," and not "general or punitive damages"). Thus, as the parties agree, the Seventh Amendment does not apply to plaintiffs' request for injunctive relief. Opp'n, ECF No. 100 at 1.

The declaratory relief plaintiffs seek is similar in that "the declaratory judgment procedure largely originated in equity and did not exist at common law." Charles Alan Wright & Arthur R. Miller, 9 Fed. Prac. & Proc. Civ. § 2313 (4th ed.). However, the Supreme Court has held that "actions for declaratory judgments are neither legal nor equitable," at least as the procedure exists today under the Declaratory Judgment Act and the Federal Rules of Civil Procedure. Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 284 (1988); see also Fed. R. Civ. P. 57 ("These rules govern the procedure for obtaining a declaratory judgment under [the Declaratory Judgment Act,] 28 U.S.C. § 2201. Rules 38 and 39 govern a demand for a jury trial [on a declaratory judgment]."). Nevertheless, "[a]dding a claim for a declaratory judgment to one's other claim or claims for relief[] does not create a right to a jury trial." Marseilles Hydro Power, LLC, 299 F.3d at 649; see also Manning v. United States, 146 F.3d 808, 812 (10th Cir. 1998) ("The fact that [plaintiff] requested a declaratory judgment, in connection with the injunctive relief, did not alter the basic equitable nature of his action.").

7

Rather, to determine whether a particular request for declaratory relief confers a jury trial right, the court must ascertain whether the declaratory relief sought is really equitable or legal in nature. The Third Circuit has phrased the test as follows:

> If the declaratory judgment action does not fit into one of the existing equitable patterns but is essentially an inverted law suit—an action brought by one who would have been a defendant at common law—then the parties have a right to a jury. But if the action is the counterpart of a suit in equity, there is no such right.

Owens-Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1189 (3d Cir. 1979).

Here, the declaratory and injunctive relief plaintiffs seek are two sides of the same equitable coin. What plaintiffs here are after is, on one side of the coin, prospective injunctive relief requiring that the Confederate school names and any other vestiges of a dual school system be removed permanently and, on the other side of the coin, prospective declaratory relief declaring the grounds for that injunctive relief—that reinstating the Confederate school names violates constitutional and statutory rights. Compl., ECF No. 1 at Conclusion and Relief Requested. Plaintiffs' request for declaratory relief is thus "the counterpart of a suit in equity" in that it amounts to a request to reiterate or expound upon the injunctive relief. Owens-Illinois, Inc., 610 F.2d at 1189. And indeed, courts consistently deem such declaratory relief asserting that government action violates the Constitution to be equitable in nature and not grounds for a jury trial right. See, e.g., Leary v. Daeschner, 349 F.3d 888, 910-11 (6th Cir. 2003) ("Because Plaintiffs requested only injunctive and declaratory relief for the violation of their First Amendment rights, we must consider these claims equitable in nature, and thus the remaining decisions in this case rest exclusively with the court rather than a jury.").

This is not a case in which plaintiffs' request for declaratory judgment "is essentially an inverted law suit—an action brought by one who would have been a defendant at common law." Owens-Illinois, Inc., 610 F.2d at 1189. The classic example of an "inverted law suit" is an insurance company seeking a declaratory judgment that an accident in which an insured was involved fell within an exception contained in the insurance policy. Charles Alan Wright & Arthur R. Miller, 9 Fed. Prac. & Proc. Civ. § 2313 (4th ed.) (citing Johnson v. Fidelity & Cas. Co. of N.Y., 238 F.2d 322 (8th Cir. 1956)). In the absence of a declaratory judgment, such a claim would likely be litigated in a suit for damages in which the insurer would be the defendant, either because the insured paid a judgment against him and sued the insurer for indemnification or because the insured did not pay a judgment against him and an injured party independently sued the insurer. Id. Courts have held that because an insurer seeking a declaratory judgment under these circumstances is essentially attempting to preempt a claim for damages, the declaratory relief is truly legal in nature and entails a right to a jury trial. See Johnson, 238 F.2d at 324 ("'[A]lthough . . . the defendant has become the plaintiff, and vice versa, the issues are ones which in the absence of the statute for declaratory relief would be tried at law by a court and jury.'" (quoting Pac. Indem. Co. v. McDonald, 107 F.2d 446, 448 (9th Cir. 1939))). As another example, in Beacon Theaters, Inc. v. Westover, the Supreme Court found that where a plaintiff sought a declaratory judgment that its conduct did not violate an antitrust law under which a violator would have been liable for treble damages, the defendant had a right to a jury trial because had the defendant sued first, it would have had a right to a jury trial. 359 U.S. 500, 504, 504 n. 4 (1959) (citing Johnson, 238 F.2d 322 to support

9

the proposition that the Declaratory Judgment Act "preserves the right to jury trial for both parties" where it allows "prospective defendants to sue to establish their nonliability").

By contrast, plaintiffs here are not simply seeking a declaratory judgment to ward off a future claim against them for damages. Because this is a suit against a government body for violations of federal constitutional and statutory rights, this suit could not possibly be inverted. Indeed, by law, the claims here run in only one direction. See, e.g., Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982) ("As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.") (quotation omitted); Manhattan Cmty. Access Corp. v. Halleck, 587 U.S. 802, 808 (2019) (explaining that the First Amendment "prohibits only governmental abridgement of speech"); 42 U.S.C. § 2000d (applying only to programs or activities "receiving Federal financial assistance"); 20 U.S.C. § 1703(b) (applying only to "educational agenc[ies]"). Thus, the declaratory relief sought here is purely equitable in nature and bears no resemblance to an inverted suit for damages at common law.

True, as defendants point out, Section 1983 can be a vehicle for recovery of damages, which are a legal remedy. Opp'n, ECF No. 100 at 3-4. But the test is not of what kind of relief plaintiffs could have sought. See Marseilles Hydro Power, LLC, 299 F.3d at 648 (rejecting as "not correct" the lower court's view that "if an issue could give rise to a claim for damages, either party can demand that it be tried to a jury"). The test is of what kind of relief plaintiffs did in fact seek. Id. (concluding that "[i]f the only relief sought is equitable, . . . neither the party seeking that relief nor the party opposing it is entitled to a jury trial"). When the relief

sought is a declaratory judgment, there is an additional step in which the test becomes whether that declaratory judgment is essentially equitable or essentially legal, a question which hinges on whether plaintiffs are preempting a suit for damages in which they themselves would be defendants, not on whether plaintiffs could have alternatively sought damages under the cause of action at issue. Owens-Illinois, Inc., 610 F.2d at 1189. Thus, "[S]ection 1983 injunctive and declaratory relief is not triable by jury," even though a Section 1983 damages claim would be triable by jury. Wilson v. Bailey, 934 F.2d 301, 305 n.4 (11th Cir. 1991).

Seeking attorneys' fees and litigation costs under 28 U.S.C. § 1920 and 42 U.S.C. § 1988 ("Section 1988") does not change this calculus. Opp'n, ECF No. 100 at 5. Section 1988 explicitly leaves to "the court, in its discretion" the questions of whether to award attorneys' fees and expert fees. 42 U.S.C. § 1988 (b), (c). Moreover, a claim for attorneys' fees is not an independent basis for a jury trial. See Finato v. Fink, 803 F. App'x 84, 89 (9th Cir. 2020) ("[T]he reasonable amount of attorneys' fees . . . is an equitable claim that does not carry a Seventh Amendment right to a jury trial."). This is so in part because "there is no common law right to recover attorneys fees." Resol. Tr. Corp. v. Marshall, 939 F.2d 274, 279 (5th Cir. 1991). Furthermore, bundling requests for attorneys' fees and litigation costs with claims for equitable relief does not transform the equitable nature of the suit. See, e.g., Hard Candy, LLC v. Anastasia Beverly Hills, Inc., 921 F.3d 1343, 1355 (11th Cir. 2019) ("[I]t is undisputed that a plaintiff seeking only injunctive relief, costs, and fees would not be entitled to a jury trial."); Hanraban v. Mohr, No. 2:13-cv-1212, 2017 WL 4221458, at *8 (S.D. Ohio Sept. 21, 2017) (granting a plaintiff's motion to strike a defendants' jury demand where the plaintiff sought declaratory and injunctive relief and Section 1988 fees). As one court put it, "any money

11

recovered pursuant to Section 1988 is more properly considered as costs incidental to obtaining the primary relief, rather than legal damages." Hugueley v. Parker, No. 3:19-cv-00598, 2021 WL 780724, at *3 (M.D. Tenn. Mar. 1, 2021). Here too, plaintiffs' pursuit of attorneys' fees and costs is incidental to their pursuit of equitable declaratory and injunctive relief, and because all of the forms of relief plaintiffs seek are equitable, there is no right to a jury trial in this case.

The School Board's final contention—that the injunction plaintiffs seek would cost money and therefore would effectively compensate plaintiffs—is equally unavailing. Opp'n, ECF No. 100 at 6. Injunctive relief frequently costs money, yet injunctive relief is the paradigmatic form of equitable relief. United States v. Price, 688 F.2d 204, 213 (3d Cir. 1982) ("It is not unusual for a defendant in equity to expend money in order to obey or perform the act mandated by an injunction."). The test for whether relief is equitable or legal cannot possibly turn on whether money may change hands, as equitable remedies include even remedies like disgorgement, whereby money must be taken from the defendant to restore the status quo, not to punish past wrongs. See Tull v. United States, 481 U.S. 412, 424 (1987). Accordingly, even in cases where "the specific injunction Plaintiffs seek would likely force Defendants to spend thousands, if not millions, of dollars," courts hold that injunctions are equitable and do not entail a jury trial right. Tellis v. LeBlanc, No. 18-cv-541, 2020 WL 211410, at *2 (W.D. La. Jan. 13, 2020).[2]

---

[2] The court in Tellis provided a helpful synthesis of Supreme Court precedents elucidating the difference between actions at law for damages and equitable actions for specific relief, concluding that "the key inquiry in distinguishing between equitable and legal remedies, then, is not the amount of money at issue or the cost of compliance with an injunction, but rather the purpose of the remedy." 2020 WL 211410, at *2. If plaintiffs "seek no damages for past harms" or "remedies intended to punish Defendants for their alleged past violations," but rather seek remedies to prospectively bring conditions into compliance with the Constitution

12

## III.

Because plaintiffs seek equitable declaratory and injunctive relief supported by attorneys' fees and litigation costs, not damages or any legal remedy, there is no right to a trial by jury in this case. Accordingly, plaintiffs' motion to strike the School Board's jury demand must be **GRANTED**. This case will proceed along the agreed upon schedule toward a bench trial.[3]

An appropriate order will be entered.

Entered: June 5, 2025

Michael F. Urbanski
Senior United States District Judge

---

and federal statutes, then the relief plaintiffs seek is equitable and does not create a right to a trial by jury, even if bringing conditions into conformity with federal law comes at a price to defendants. Id.

[3] When an action is "not triable of right by jury," a court "may," at its discretion, utilize an "advisory jury" or, with the parties' consent, "try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right, unless the action is against the United States and a federal statute provides for a nonjury trial." Fed. R. Civ. P. 39(c). The parties have not consented to a jury trial under Rule 39(c)(2), and the court has not yet determined in its discretion whether to empanel an advisory jury under Rule 39(c)(1). See Williams v. Centerra Grp., LLC, 579 F. Supp. 3d 778, 786 (D.S.C. 2022) (describing the district court's "discretion to empanel an advisory jury under Rule 39(c)(1)"). Pursuant to Rule 39(b), the default where there is no right to a trial by jury is that "[i]ssues . . . are to be tried by the court." Fed. R. Civ. P. 39(b).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

VIRGINIA STATE CONFERENCE )
NAACP et al., )
 )
 )
    Plaintiffs, )
 )
v. ) Case No. 5:24-cv-040
 )
COUNTY SCHOOL BOARD OF ) By:   Michael F. Urbanski
SHENANDOAH COUNTY, ) Senior United States District Judge
 )
    Defendant. )

## ORDER

For the reasons stated in the accompanying memorandum opinion, plaintiffs' motion to strike defendant's jury demand is **GRANTED**. ECF No. 86.

It is so **ORDERED**.

Entered: June 5, 2025

Michael F. Urbanski
Senior United States District Judge