CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA

September 05, 2025

LAURA A. AUSTIN, CLERK
BY  KRISTIN AYERSMAN
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| **VIRGINIA STATE CONFERENCE NAACP et al.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | **Case No. 5:24-cv-040** |
| **COUNTY SCHOOL BOARD OF SHENANDOAH COUNTY,** | ) ) ) | **By:  Michael F. Urbanski Senior United States District Judge** |
| **Defendant.** | ) ) | |

## MEMORANDUM OPINION

This matter concerns defendant County School Board of Shenandoah County's decision to reinstate the names "Stonewall Jackson High School" and "Ashby Lee Elementary School" in 2024, just four years after the School Board voted to retire those names in 2020 citing the harmful effect of those names on Black students. Discovery is ongoing in this matter concerning plaintiffs' Equal Protection, Title VI, and Equal Educational Opportunities Act claims, which are set for trial in December 2025. Pursuant to these claims, plaintiffs contend that the decision to reinstate the names "Stonewall Jackson High School" and "Ashby Lee Elementary School" was intended to harm Black students and has had the effect of harming Black students.

Defendant County School Board of Shenandoah County has moved for a protective order based on legislative privilege "barring discovery of certain testimony, communications, and documents." ECF No. 150. The School Board's memorandum in support of its motion identified several interrogatories to which the School Board had already objected based on

1

legislative privilege because the interrogatories asked about "factors considered by the School Board, including all individual members," related to the 2020 and 2024 decisions to remove and then reinstate the names "Stonewall Jackson High School" and "Ashby Lee Elementary School." ECF No. 151 at 3. The School Board also produced a privilege log to plaintiffs, which plaintiffs have submitted to the court, indicating documents the School Board has withheld citing legislative privilege—specifically, email exchanges involving one or more School Board members communicating about their rationales for the decision to change the names of the schools. ECF No. 155-2. The School Board also indicated that "School Board members intend to assert their legislative privilege in upcoming depositions," which are scheduled throughout the month of September, including next week. Mem. Supp. Mot. Protective Order, ECF No. 151 at 3. The School Board contends that legislative privilege broadly protects legislators, including members of local legislative bodies, like the School Board, from being compelled to testify and produce documents within the sphere of their "'legitimate legislative activity.'" Id. at 5 (citing Baker v. Mayor & City Council of Balt., 894 F.2d 679, 681 (4th Cir. 1990)).[1]

Although the School Board is correct that legislative privilege may shield some of the discovery in this case, the School Board is not entitled to the broad protective order it seeks because the School Board has not met the burden to show to which specific documents or communications the privilege applies and because the School Board cannot properly invoke the privilege because the privilege belongs to the School Board's members. Moreover, legislative privilege is qualified as to state and local legislators. At the state and local level,

---

[1] Baker v. Mayor and City Council of Baltimore, 894 F.2d 679 (4th Cir. 1990), on which the School Board relies, concerned absolute legislative immunity, not legislative privilege as it relates to discovery, and was overruled by Berkley v. Common Council of City of Charleston. 63 F.3d 295, 303 (4th Cir. 1995).

legislative privilege may yield to important federal interests, such as the need for evidence of discriminatory intent in cases seeking to vindicate certain federal constitutional and statutory rights. Accordingly, the court must **DENY** the School Board's motion at this time. Inasmuch as discovery is continuing and depositions of School Board members are scheduled for next week, this opinion also provides guidance as to the proper scope of legislative privilege in light of the specific issues involved in this case.

## I.

Legislative privilege derives from the Speech and Debate Clause of the United States Constitution. That Clause provides that "Senators and Representatives . . . shall not be questioned in any other Place" "for any Speech or Debate in either House." U.S. Const. art. I, § 6. Courts have interpreted this provision to provide federal Senators and Representatives with two forms of protection from civil actions based on their legislative activities: "(1) federal legislators benefit from 'legislative immunity' and are absolutely immune from suit for actions they engaged in as part of the legislative process and (2) federal legislators also benefit from a 'legislative privilege' that protects federal legislators from having to testify or supply other evidence in many instances." Doe v. Nebraska, 788 F. Supp. 2d 975, 983 (D. Neb. 2011). The Speech and Debate Clause speaks only of federal Senators and Representatives. Federal courts have nevertheless applied some measure of analogous protection to state and local legislators as a matter of federal common law. For example, state legislators have been deemed immune from suit in federal court under 42 U.S.C. § 1983, though this protection is not at issue in this case as only the School Board, not its members, is a defendant here. See Tenney v. Brandhove, 341 U.S. 367 (1951). Matters are more complicated where state and local legislators'

protections against being required to testify and produce documents are concerned. While the exact scope of the available protections is a matter of debate, courts recognize, "[I]n most cases the only evidentiary legislative privilege regarding the production of documents available to state legislators (and other local government officials) is a very narrow and qualified one." Doe v. Nebraska, 788 F. Supp. 2d at 984; see also Bethune-Hill v. Virginia State Bd. of Elections, 114 F. Supp. 3d 323, 335 (E.D. Va. 2015) (describing the scope of state and local legislative privilege as a "controversy bedeviling the federal courts" but concluding that the privilege is limited by certain federal interests).

Lesser protection for state and local legislators is justified because, while protections for federal legislators are rooted in the Constitution, federal common law protections for state and local legislators lack a firm basis in positive law. See United States v. Gillock, 445 U.S. 360, 372 n.10 (1980). And perhaps more importantly for this case, while the Speech and Debate Clause's protections for federal legislators guard against "interference of one branch of the Federal Government in the affairs of a coequal branch," "federal interference in the state legislative process is not on the same constitutional footing." Id. at 370. On the one hand, comity concerns, relating to the balance of power between the states and the federal government, justify some measure of protection for state and local legislators against intervention in their affairs by federal courts. However, on the other hand, such concerns must be overridden by the Supremacy Clause in "those areas where the Constitution grants the Federal Government the power to act" because "the Supremacy Clause dictates that federal enactments will prevail over competing state exercises of power." Id. at 370-73. Thus, courts recognize certain scenarios in which state and local legislators' legislative privilege is qualified

by federal interests. Importantly here, this includes "when a plaintiff proceeds against the [government body, rather than individual legislators,] and seeks evidence to vindicate important public rights guaranteed by federal law." Bethune-Hill, 114 F. Supp. 3d at 336 (enumerating additional qualifications of state and local legislative privilege, such as "when evidence of forbidden criminal behavior is sought").

Courts, including the Supreme Court, consistently recognize that evidence of legislators' discriminatory intent is needed to vindicate federal constitutional and statutory rights against certain forms of discrimination, such as the racial discrimination alleged under plaintiffs' Equal Protection and statutory claims in this case. In Village of Arlington Heights v. Metropolitan Housing Development Corp., the Supreme Court reasoned that although "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of the other branches of government," such inquiries are called for where "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." 429 U.S. 252, 265, 268 n.18 (1977). "When there is a proof that a discriminatory purpose has been a motivating factor in [a government] decision, [the] judicial deference [owed when reviewing the merits of legislative decisions] is no longer justified." Id. at 265-66. This departure from courts' typical deference to elected legislatures' policy judgments further justifies departure from typical limitations on discovery into legislative activities. The Village of Arlington Heights Court specifically noted that evaluating evidence of discriminatory intent necessitates examination of "contemporary statements by members of the decisionmaking body," and the Court went so far as to recognize that "[i]n some extraordinary instances the members might be called to the stand at trial to testify concerning

the purpose of the official action." Id. at 268. Lower courts have continued to permit discovery into legislators' discriminatory intent in discrimination cases arising under the Constitution and federal statutes. See, e.g., South Dakota Farm Bureau Inc. v. Hazeltine, 340 F.3d 583, 594-96 (8th Cir. 2003) (reviewing legislators' meeting notes and materials to determine whether discriminatory intent existed); Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections, No. 11-c-5065, 2011 WL 4837508, at *2, *11 (N.D. Ill. Oct. 12, 2011) (permitting some discovery as to documents showing whether race was among facts considered in drawing maps in a redistricting case where proof of discriminatory intent was required for plaintiffs to prevail on their Fourteenth and Fifteenth Amendment claims); Bethune-Hill, 114 F. Supp. 3d at 336 (collecting cases permitting discovery into discriminatory intent in redistricting cases).

Accordingly, in Bethune-Hill v. Virginia State Board of Elections, the Eastern District of Virginia held that where "judicial inquiry into legislative intent is specifically contemplated as part of the resolution of the core issue" of a federal constitutional claim, state and local legislators' legislative privilege is qualified. 114 F. Supp. 3d at 337; see also Citizens Union of New York v. Attorney Gen. of New York, 269 F. Supp. 3d 124, 145 (S.D.N.Y. 2017) (following Bethune-Hill in permitting discovery into legislative intent where such intent is central to the federal claim at issue). Bethune-Hill concerned allegations that several Virginia House of Delegates districts were the product of unlawful racial gerrymandering; these racial discrimination claims arose under the same constitutional provision at the core of plaintiffs' discrimination claim in this case—the Equal Protection Clause. Id. As this court's memorandum opinion denying the School Board's motion to dismiss explained, plaintiffs' discriminatory impact Equal Protection Clause claim and plaintiffs' essentially identical Title

6

VI claim require plaintiffs to prove that the government acted with discriminatory intent under
Village of Arlington Heights. See Mem. Op. Mot. Dismiss, ECF No. 61 at 28-29, 37
(discussing Vill. of Arlington Heights, 439 U.S. at 265-66). The Eastern District of Virginia's
decision in Bethune-Hill was correct to recognize that "[a]lthough the Court will not lightly
intrude upon the state legislative privilege, it must be a qualified privilege" where "rights
guaranteed by federal statutory law and the Constitution" are at issue. 114 F. Supp. 3d at 337.
Here too, the court concludes that state and local legislators' legislative privilege must "yield
in the face of an evidentiary need that lies at the core of the inquiry required by the Supreme
Court in [Equal Protection] cases." Id.

## II.

Once it is recognized that state and local legislators' legislative privilege is qualified
where inquiry into discriminatory intent is necessitated by the federal claims at issue, the next
question is how to evaluate whether a given piece of evidence should be either withheld under
legislative privilege or produced under the qualification thereof. The court in Bethune-Hill
applied a "five-factor balancing test imported from deliberative process privilege case law"
that examines the following: "(i) the relevance of the evidence sought to be protected; (ii) the
availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv)
the role of government in the litigation; and (v) the purposes of the privilege." Id. at 337-38
(quotation omitted). Courts beyond this circuit have followed the five-factor test described in
Bethune-Hill in cases concerning state and local legislators' legislative privilege. See League of
Women Voters of Fla., Inc. v. Lee, 340 F.R.D. 446, 456 (N.D. Fla. 2021) (applying the five-

factor test of <u>Bethune-Hill</u> "to determine whether the legislative privilege must give way to Plaintiffs' need for the evidence they seek").

Other courts have analogized the "narrow and qualified" privilege applied to state and local legislators to the deliberative process privilege and have applied similar, if not identical, multi-factor balancing tests drawn from the deliberative process privilege context. <u>Doe v. Nebraska</u>, 788 F. Supp. 2d at 984. For example, in <u>Doe v. Nebraska</u>, which also involved federal constitutional claims, a district court relied on deliberative process privilege principles to conclude that, as to state and local legislators, privilege ought to protect only "documents which are pre-decisional, deliberative and reflect the subjective intent of the legislators," meaning "documents . . . prepared before the law or policy was enacted," pertaining "directly to the decision making process," and containing "opinion or subjective material," rather than "[o]bjective facts," which "will not be shielded from production by the deliberative process privilege." <u>Id.</u> at 985 (relying on the following factors to determine whether individual documents were to be shielded from discovery: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions") (quotation omitted); <u>see also</u> <u>Cave v. Thurston</u>, No. 4:18-cv-00342, 2021 WL 4936185, at *6 (E.D. Ark. Oct. 22, 2021) (endorsing the "well-reasoned" test of <u>Doe v. Nebraska</u>).

The court concludes that the five-factor test of <u>Bethune-Hill</u> applies in this case, as <u>Bethune-Hill</u> involved Equal Protection racial discrimination claims quite similar to those at issue here and arose in this circuit. However, as in the deliberative process privilege context

and as explained in opinions like Doe v. Nebraska, application of such a multi-factor test is only required where legislative privilege could conceivably apply, and legislative privilege only applies to pre-decisional evidence of subjective deliberations during the legislative process. 788 F. Supp. 2d at 985. Here, this means that the five-factor test of Bethune-Hill only comes into play when considering the applicability of legislative privilege to discovery inquiries concerning the School Board's decisionmaking process preceding the School Board's vote on May 10, 2024, to reinstate the names "Stonewall Jackson High School" and "Ashby Lee Elementary School." 1st Joint Statement of Stipulated Facts, ECF No. 85, ¶ 42. This also means that the five-factor test is only needed when evaluating the applicability of legislative privilege to discovery inquiries concerning subjective material, not facts.

Although the five factors identified in Bethune-Hill are best weighed in relation to particular pieces of evidence, the court can now summarize in broad strokes how the five factors apply to the issues involved in this case. The central relevance of legislators' intent to evaluating discriminatory intent, the seriousness of the constitutional issues involved, and the role of the government as the sole defendant all weigh against permitting documents and testimony to be withheld based on legislative privilege. Discriminatory intent is an element of plaintiffs' Equal Protection and Title VI claims, so individual legislators' motivations and considerations are highly relevant. As to the seriousness of the issue, this case concerns the constitutional rights of elementary school students and high school students. Indeed, this case is not like those in which courts have found that the seriousness factor weighed in favor of legislative privilege because only "a private party's right to seek redress from the government for its private damages" was at stake. Pulte Home Corp. v. Montgomery Cnty., No. 14-3955,

9

2017 WL 2361167, at *8 (D. Md. May 31, 2017) (concluding that the public at large would not be affected by a plaintiff's Takings Clause claim that a land use regulation adversely impacted his land). Regarding the government's role, the School Board, not any of its members, is the sole defendant in this case, and as the court recognized in Bethune-Hill, "where the legislature—rather than the legislators—are the target of the remedy and legislative immunity is not under threat, application of the legislative privilege may be tempered." 114 F. Supp. 3d at 341.

However, the availability of other evidence and the purpose of the privilege to some extent weigh in favor of applying legislative privilege to shield some discovery in this case. Village of Arlington Heights recognizes that "circumstantial and direct evidence of intent" can come in several forms, including a challenged policy's historical background and departures from normal procedures in the legislative process. 429 U.S. at 266. The court also recognizes that plaintiffs here have access to the public record of School Board members' statements concerning the decision to reinstate the names "Stonewall Jackson High School" and "Ashby Lee Elementary School." See Comm. for a Fair & Balanced Map, 2011 WL 4837508, at *8 (recognizing as a factor weighing in favor of application of legislative privilege the fact that legislative privilege does not prevent plaintiffs from relying on "public hearing minutes" and "statements made by lawmakers during debate" to prove discriminatory intent). Thus, although direct evidence of legislators' motivations is highly probative as to the discriminatory intent element of plaintiffs' claims, plaintiffs are not without recourse to other means of proof. As to the purpose of legislative privilege, the court summarized in Bethune-Hill, "The state legislative privilege protects a 'distraction' interest—to guard legislators from the burdens of

compulsory process—and a 'legislative independence' interest—to encourage legislators to engage deeply in the legislative process and act boldly in the public interest without fear of personal consequence." 114 F. Supp. 3d at 341. Here, both interests are implicated to some extent.

Thus, because the five factors in Bethune-Hill cut in different directions, careful analysis of each assertedly privileged document or other discovery response is in order. However, the court cannot yet conduct that analysis and definitively rule on particular discovery requests in this case because the court must await proper assertion of the privilege by the proper parties.

### III.

For now, the School Board's motion for a broad protective order must be **DENIED**. "A party asserting privilege has the burden of demonstrating its applicability." NLRB v. Interbake Foods, LLC, 637 F.3d 492, 501 (4th Cir. 2011). "The privilege must be proved for each document withheld as privileged." Bethune-Hill, 114 F. Supp. 3d at 344. Here, the School Board has argued in favor of nearly absolute privilege and sought a correspondingly far-ranging protective order. Mem. Supp. Mot. Protective Order, ECF No. 151. Thus, the School Board has not supplied sufficient evidence or argument to inform the weighing of the five factors applied in Bethune-Hill and similar cases to each individual discovery request to which the School Board has objected and plans to object. Reply Supp. Mot. Protective Order, ECF No. 156 at 5-7 (addressing the five-factor test of Bethune-Hill without discussing its applicability to different pieces of evidence sought to be withheld). Because the School Board has not met its burden to demonstrate that legislative privilege applies and, if so, as to which

11

documents and other discovery requests, the School Board's motion for a protective order must be **DENIED**.

Moreover, the School Board's motion must be **DENIED** because the School Board is not the proper party to assert the privilege. "The privilege is a personal one and may be waived or asserted by each individual legislator." Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292, 298 (D. Md. 1992); see also Alexander v. Holden, 66 F.3d 62, 68 n.4 (4th Cir. 1995). "Because the privilege is a personal one and may be waived or asserted by each individual legislator, the legislator or an aide has the burden of proving the preliminary facts of the privilege." Bethune-Hill, 114 F. Supp. 3d at 344 (quotations omitted). Entities other than individual legislators do not have the authority to invoke legislative privilege. See Gilby v. Hughs, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020) ("The Secretary does not have standing to invoke legislative privilege."). Some courts have therefore compelled production of documents where an entity without authority to invoke legislative privilege has withheld documents based on legislative privilege. Id. (granting a motion to compel documents withheld on the grounds of legislative privilege because a party without "standing" to invoke the privilege had made the assertion).

Here, however, the School Board does not deny that it has no ability to assert legislative privilege on behalf of its members. Def.'s Opp'n Pls.' Mot. File Sur-reply, ECF No. 161 at 2 ("The School Board knows that the Court understands that the privilege belongs to the individual members and not the School Board."). Instead, the School Board indicates that it has sought a protective order in its own name because its members have not yet had an opportunity properly to assert legislative privilege for themselves and because the School

Board wished to comply with the court's order, issued on July 7, 2025, directing the School Board to assert any evidentiary privileges on which it intended to rely by July 30, 2025. Id. The court did indeed order that "Defendant . . . assert any discovery privilege it intends to claim by filing an objection or motion and brief in support thereof, as well as a complete privilege log, no later than July 30, 2025." ECF No. 143 at 1. The court thus recognizes that it may be responsible for this confusion, and, accordingly, the court will provide the School Board members further opportunity properly to invoke legislative privilege.[2]

## IV.

The court wishes to expedite this process, particularly because the parties have indicated that depositions of School Board members are scheduled for as soon as next week and because trial in this matter is only three months away. Accordingly, the court instructs as follows as to how assertions of legislative privilege should be evaluated going forward in this matter when such assertions are made properly pertaining to specific discovery requests and by the School Board members themselves:

---

[2] Other courts have similarly confronted confusion as to how, when, and by whom legislative privilege ought to be asserted, and other courts have similarly responded by providing the proper parties holding legislative privilege the opportunity to assert legislative privilege. In Bethune-Hill, the court reasoned that although "[o]rdinarily" an "inadequate showing [as to document-specific invocations of legislative privilege by the proper parties] . . . would warrant an order requiring production of the documents at issue," the court would not impose the "usual consequences" where "the individual legislators (who must prove the privilege) are not parties" and where the individual legislators had not been instructed as to "how the privilege, once asserted, must be proved." 114 F. Supp. 3d at 344 (directing the parties to "work with the legislators to demonstrate the existence of the privilege for each document if, indeed, that can be done"). Some courts have also responded to confusion over who ought to invoke legislative privilege by providing the appropriate parties time to reargue the issue. See Cave, 2021 WL 4936185, at *6 (declining to compel discovery where the Secretary of State of Arkansas, rather than members of the General Assembly, asserted legislative privilege and instead inviting additional briefing on legislative privilege "from the appropriate parties who hold and have standing to assert the privilege and wish to assert it as to specific documents in this case"). Here too, the court will not impede individual legislators' abilities to invoke legislative privilege simply because the legislative body itself has tried and failed to claim the privilege on their behalf.

13

1. First, because legislative privilege only applies to "'integral steps' in the legislative process," documents and communications created after the School Board reinstated the names "Stonewall Jackson High School" and "Ashby Lee Elementary School" by its vote on May 10, 2024, must be produced, and inquiry into School Board members' actions, statements, and opinions after that May 10, 2024 vote, including inquiry into School Board members' present opinions, will be permitted. See Bethune-Hill, 114 F. Supp. 3d at 343-45 ("The privilege only protects 'integral steps' in the legislative process and does not extend to commentary or analysis following the legislation's enactment."); Doe v. Nebraska, 788 F. Supp. 2d at 986 ("[T]he court finds only documents or communications that were created prior to the passage and implementation of [the subject legislation] . . . will be considered for protection under the deliberative process privilege.").

2. Second, also because legislative privilege applies only to "'integral steps' in the legislative process" and because legislative privilege applies only to legislators, documents or communications produced by current School Board members before they were elected to the School Board must be produced, and inquiry into opinions now-School Board members held and statements now-School Board members made before they were elected to the School Board will be permitted. See Bethune-Hill, 114 F. Supp. 3d at 343-45 (explaining that legislative privilege applies to the legislative process); Schaefer, 144 F.R.D. at 298 (explaining that legislative privilege belongs to individual legislators).

3. Third, because legislative privilege protects internal legislative deliberations, documents or communications shared with, or received from, individuals or organizations other than the School Board's members must be produced, and inquiry into School Board members' dealings with outside individuals or organizations will be permitted. This includes School Board members' contact with individuals and groups advocating for or against the decision to reinstate the names "Stonewall Jackson High School" and "Ashby Lee Elementary School," such as the Coalition for Better Schools.[3] See Bethune-Hill, 114 F. Supp. 3d at 343 (explaining that legislative privilege is "strongest as applied to conversations among legislators and between legislators and their immediate aides" and that the privilege also applies, though with less strength, to legislative staffers, but does not apply to outsiders, such as lobbyists); Favors v. Cuomo, 285 F.R.D. 187, 212 (E.D.N.Y. 2012) (noting that communications between legislators and experts retained by the legislators themselves to assist in their legislative function, such as a legislator's personal staff, are subject to qualified privilege, but that communications with outsiders, like lobbyists or the public, are not subject to qualified privilege); ACORN (New York Ass'n of Cmty. Orgs. for Reform Now) v. Cnty. of Nassau, No. cv-05-2301, 2007 WL 2815810, at *4 (E.D.N.Y. Sept. 25, 2007) ("As with many testimonial privileges, the legislative privilege may be waived as to communications made in the presence of third parties.").

---

[3] The parties have identified a letter sent by the Coalition for Better Schools as part of the impetus for the School Board's decision to revisit the removal of the names "Stonewall Jackson High School" and "Ashby Lee Elementary School." 3rd Joint Statement of Stipulated Facts, ECF No. 104, ¶ 86.

4. Fourth, evidence of purely factual information available to the School Board at the time it decided to reinstate the names "Stonewall Jackson High School" and "Ashby Lee Elementary School," including, for example, any factual information about the history or effect of Confederate school names on students, must be produced because "legislative privilege . . . does not protect facts or information available to lawmakers at the time of their decision." Comm. for a Fair & Balanced Map, 2011 WL 4837508, at *10; see also ACORN, 2007 WL 2815810, at *3 ("Although assertion of a legislative privilege may bar inquiry into deliberations, it would not bar inquiry regarding the materials and information available at the time a decision was made." (citing Vill. of Arlington Heights, 429 U.S. at 270 n. 20 (noting that plaintiffs "were allowed, both during the discovery phase and at trial, to question Board members fully about materials and information available to them at the time of decision")))).

5. Fifth, discovery is permitted concerning documents or communications involving one or more School Board members prior to the vote on May 10, 2024, to restore the names "Stonewall Jackson High School" and "Ashby Lee Elementary School" to the extent any such document or communication mentions race in any respect and/or reveals awareness of the impact of Confederate school names on Black students or the differential impact of Confederate school names on children of different racial backgrounds. Inquiry into School Board members' statements and opinions prior to the vote on May 10, 2024, is permitted to the extent any such inquiry concerns whether race was considered in connection with the School Board's decision and/or seeks to ascertain School Board members' awareness of the impact of Confederate school

names on Black students or the differential impact of Confederate school names on
children of different racial backgrounds.[4]

This instruction aims to strike an appropriate balance under the factors set forth
in Bethune-Hill between the relevance of evidence of discriminatory intent to the
federal rights plaintiffs assert and the core purpose of legislative privilege. On the one
hand, the relevance of discriminatory intent to plaintiffs' Equal Protection and Title VI
claims is such that, here, "the decisionmaking process . . . [itself] is the case." Comm.
for a Fair & Balanced Map, 2011 WL 4837508, at *8 (finding that the centrality of
discriminatory intent to redistricting claims under the Fourteenth Amendment weighed
against shielding material from discovery under legislative privilege). On the other
hand, courts have concluded that shielding legislators' opinions, motivations, and
recommendations from discovery is central to achieving legislative privilege's purpose
to permit legislators to deliberate deeply about competing interests without timidity. In
balancing these interests, the court in Bethune-Hill limited discovery of "documents or
communications produced by legislators or their immediate aides before the
redistricting legislation was enacted . . . , except to the extent any such document
pertains to, or 'reveals an awareness' of: racial considerations employed in the

---

[4] After the status conference held on September 2, 2025, the parties shared with the court a preliminary
transcript of the only deposition of a School Board member that has thus far taken place in this matter. The
court notes that the invocations of legislative privilege in that transcript were too broad. For example, the
School Board member refused on legislative privilege grounds to answer the following question: "Do you recall
any communications from Black students before the May 2024 vote saying that they were opposed to changing
the names back to the Confederate leaders?" This was improper. This question goes directly to awareness of
the impact of Confederate school names on Black students. The School Board member is required to answer
this question, and plaintiffs should be able to ask similar questions of other School Board members going
forward.

districting process, sorting of voters according to race, or the impact of redistricting upon the ability of minority voters to elect a candidate of choice. In such a situation the public interest in vindicating vital constitutional rights overcomes the presumption of common-law privilege and warrants production." <u>Bethune-Hill</u>, 114 F. Supp. 3d at 344-45. Here too, where targeted inquiries into School Board members' consideration of race in the decision to change the school names, School Board members' awareness of the impact of Confederate school names on Black students, or School Board members' awareness of the differential impact of Confederate school names on children of different racial backgrounds are concerned, the relevance of discriminatory intent to plaintiffs' constitutional claims overcomes legislative privilege's purpose to shield legislators from broad probing as to their motivations. Focusing discovery requests on School Board members' awareness of racially discriminatory impacts limits the risk of unnecessarily burdensome discovery requests and limits the risk of chilling legislative deliberation as to permissible legislative considerations not involving race.

6. Sixth, the court further instructs that legislative privilege may not be applied selectively within particular documents or communications. Documents and communications must either be produced in full or withheld in full. The court will also caution that if individual School Board members waive legislative privilege in order to introduce evidence of potential nondiscriminatory motivations, the court will closely evaluate whether "subject matter waiver" may apply to require those particular School Board members to provide withheld evidence, where doing so may be necessary for fairness and context. <u>Bethune-Hill</u>, 114 F. Supp. 3d at 345 n.8.

18

This instruction follows <u>League of United Latin American Citizens v. Abott</u>, in which a district court reasoned, "Just like we do not want litigants selectively to use the attorney-client privilege to make favorable disclosures, we do not want legislators to tip the scales of future or existing litigation by disclosing some favorable portions of a document publicly and keeping unfavorable portions behind closed doors." 708 F. Supp. 3d 870, 887 (W.D. Tex. 2023). The court further explained that expanding the "scope of waiver to include the whole document or communication when the legislative privilege has been waived as to a significant portion" does not frustrate the purpose of legislative privilege because whether the privilege extends to a portion of a document or to the whole document does not "meaningfully increase the burden on lawmakers." <u>Id.</u>

The court in <u>Bethune-Hill</u> went beyond individual documents to suggest that "[i]f individual legislators choose to introduce additional evidence of other motivations to dispel the notion that racial considerations predominated, they are welcome to waive their privilege with respect to other documents and communications with the understanding that some degree of subject matter waiver may apply to ensure that fair context is provided." 114 F. Supp. 3d at 345 n.8. In arguing that the School Board should not be permitted to use "legislative privilege as both a sword and shield," plaintiffs have pointed to the fact that the School Board has already relied on evidence of School Board members' potential nondiscriminatory motivations to counter plaintiffs' allegations of discriminatory intent, for example, in the School Board's summary judgment briefing. Pls.' Opp'n Def.'s Mot. Protective Order, ECF No. 155

at 13. However, the School Board's use in its briefing of its members' statements does not waive its members' privilege because the privilege cannot be waived by the School Board, or indeed by one member on behalf of another, because waiver, like invocation of the privilege, must come from the individual legislator. See Almonte v. City of Long Beach, No. cv 04-4192, 2005 WL 1796118, at *3 (E.D.N.Y. July 27, 2005) ("[I]t is not up to the Council to assert or waive the privilege; the councilors must do so for themselves."). Moreover, the School Board has largely relied on School Board members' public statements to this point. School Board members' public statements concerning their motivations for reinstating the names "Stonewall Jackson High School" and "Ashby Lee Elementary School" do not waive legislative privilege because finding waiver based on School Board members' public statements would punish transparency in the democratic process. See Johnson v. Metro. Gov't of Nashville & Davidson Cnty., No. 3:07-0979, 2009 WL 1952780, at *3 (M.D. Tenn. July 2, 2009) (rejecting as without merit an argument that legislators' comments to the press about their legislative intent waived legislative privilege because "finding waiver in such instances . . . could chill contact between legislators and the press"). Thus, the court specifically instructs that any waiver of legislative privilege must be evaluated at the level of the individual legislator and as to their production or withholding of evidence during discovery.[5]

---

[5] At the same time, it is worth noting that several School Board members mentioned racism at the May 9, 2024 School Board meeting and another acknowledged that "I would feel unsettled if I were Black and going through this." 1st Joint Statement of Stipulated Facts, ECF No. 85, ¶ 41. Because these issues go to the core of this case, legislative privilege does not shield questioning of these School Board members on these topics. The School Board members may be fully examined in depositions regarding these public statements, whether race affected their decision, and the impact of their decision on Black students.

20

7.  Seventh, the court instructs the School Board to review the documents withheld from discovery based on an assertion of legislative privilege in light of this opinion. Documents which have been withheld inconsistent with the instructions in this opinion must be produced to plaintiffs forthwith. As to documents which the School Board believes fall within the scope of legislative privilege as outlined in this opinion, the privilege log must be amended to provide details sufficient for plaintiffs to ascertain whether documents withheld based on legislative privilege are indeed properly subject to that privilege. See Bethune-Hill, 114 F. Supp. 3d at 345 ("In crafting their modified privilege logs, the Intervenors should remember that there must be sufficient detail to allow the Plaintiffs to discern whether or not the documents withheld are withheld in compliance with the rules set out above."). This should include the names of all parties with whom a communication was shared and a description of the content of the communication sufficient to indicate, for example, whether it contains factual information or opinions.

To the extent the parties continue to have questions or concerns regarding documents withheld on the basis of legislative privilege, those documents may be submitted to Magistrate Judge Joel C. Hoppe for in camera review.  Favors, 285 F.R.D. at 220-21 (collecting legislative privilege cases in which in camera review was relied upon and noting that "[i]t is only in this way that the Court can make the contextual investigation necessary to weigh the claim of privilege against the need for disclosure").

**V.**

The court trusts that the foregoing analysis of qualified legislative privilege and of the considerations particularly relevant to this case will help the parties smoothly to conduct depositions and complete discovery in the coming weeks and months. Although the School Board's motion for a protective order is **DENIED**, invocations of legislative privilege by School Board members themselves may be made in their depositions, subject, however, to the limitations reflected in this opinion. Magistrate Judge Joel C. Hoppe is available during next week's depositions should any questions arise concerning the proper scope of the qualified legislative privilege.

An appropriate order will be entered.

Entered: September 5, 2025

Michael F. Urbanski
U.S. District Judge
2025.09.05
10:53:13 -04'00'

Michael F. Urbanski
Senior United States District Judge