CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

SEP 0 9 2025

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| VIRGINIA STATE CONFERENCE NAACP et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 5:24-cv-040 |
| COUNTY SCHOOL BOARD OF SHENANDOAH COUNTY, | ) ) ) | By:    Michael F. Urbanski Senior United States District Judge |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

This matter concerns defendant County School Board of Shenandoah County's decision to reinstate the names "Stonewall Jackson High School" and "Ashby Lee Elementary School" in 2024, having previously removed those names in 2020, citing the need to condemn the racism associated with naming public schools after Confederate leaders. Plaintiffs, the Virginia State Conference NAACP and the parents of D.D. and A.J. on behalf of their minor children, are seeking injunctive relief from the name "Stonewall Jackson High School" and declaratory relief stating that the School Board's reinstatement of the name "Stonewall Jackson High School" violates their rights against compelled speech guaranteed by the First and Fourteenth Amendments. Compl., ECF No. 1. A partially overlapping but distinct set of plaintiffs, the Virginia State Conference NAACP and the parents of B.B., A.C., D.D., and J.D. on behalf of their minor children, are seeking injunctive relief from both the names "Stonewall Jackson High School" and "Ashby Lee Elementary School" and declaratory relief stating that the School Board's reinstatement of both names violates the Equal Protection Clause of the

Fourteenth Amendment, Title VI of the Civil Rights Act, and the Equal Educational Opportunities Act.[1] Id. Cross motions for summary judgment were filed solely as to the compelled speech claim. ECF No. 115; ECF No. 118. The court concluded that plaintiffs had demonstrated that there is no genuine dispute as to any material fact and that plaintiffs are entitled to judgment as a matter of law on their compelled speech claim. Accordingly, the court denied the School Board's motion for summary judgment and granted plaintiffs' motion for summary judgment. Plaintiffs' Equal Protection, Title VI, and Equal Educational Opportunities Act claims remain set for trial in December 2025. ECF No. 140.

In light of the court's grant of plaintiffs' motion for summary judgment, the matter is now before the court on plaintiffs' motion for entry of final judgment as to their compelled speech claim pursuant to Federal Rule of Civil Procedure ("Rule") 54(b). ECF No. 138. The court has concluded that D.D., A.J., and the other members of the Virginia State Conference NAACP who attend Stonewall Jackson High School are subject to ongoing violations of their constitutional rights, and the court recognizes the urgency of remedying those compelled speech violations as soon as possible. However, the court cannot enter final judgment at this time because the relationship between the adjudicated and unadjudicated claims, particularly the injunction component of the relief sought under all claims, calls for deferring entry of final judgment until the full scope of the injunctive relief required in this case can be conclusively established and implemented in a manner that ensures efficiency, certainty, and fairness for

---

[1] Additionally, pursuant to their Equal Educational Opportunities Act claim, plaintiffs are seeking an injunction "requiring Defendant to remove all remaining vestiges of the dual school system previously operated in Shenandoah County." Compl., ECF No. 1 at Relief Requested.

both the School Board and plaintiffs. Plaintiffs' Rule 54(b) motion must be **DENIED**. ECF No. 138.

## I.

Rule 54(b) provides, "When an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Entry of final judgment as to a claim under Rule 54(b) allows appeal of that claim to proceed. Braswell Shipyards, Inc. v. Beazer E., Inc., 2 F.3d 1331, 1335 (4th Cir. 1993). Rule 54(b) serves potentially conflicting interests: "The chief purpose of a Rule 54(b) certification is to prevent piecemeal appeals when multiple claims are resolved in the course of a single lawsuit. The Rule also allows the district court to provide relief to litigants that would suffer undue hardship if final judgment is not entered on the adjudicated claim prior to the resolution of the unadjudicated claims." Id. Importantly, "Rule 54(b) certification is recognized as an exception rather than the norm." Id. "The burden is on the party endeavoring to obtain Rule 54(b) certification to demonstrate that the case warrants certification." Id.

In evaluating a Rule 54(b) motion, the district court must first determine whether the judgment is final "'in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claim action.'" Id. (quoting Curtis-Wright Corp. v. General Electric

Co., 446 U.S. 1, 7 (1980)). Second, the court must determine whether there is "no just reason

for delay" in the entry of final judgment. Fed. R. Civ. P. 54(b); see Braswell Shipyards, Inc., 2

F.3d at 1335 (citing Curtis-Wright Corp., 446 U.S. at 8). Here, there is no doubt that the court's

grant of summary judgment as to plaintiffs' compelled speech claim constitutes an ultimate

disposition of that claim. See Washington v. Baltimore Police Dep't, No. SAG-19-2473, 2023

WL 3504202, at *2 (D. Md. May 16, 2023) ("[T]he Court's grant of summary judgment

constitutes a final judgment."). Thus, the only question in this case is whether there is no just

reason for delay.

In evaluating the "no just reason for delay" component of the Rule 54(b) analysis,

courts in this circuit consider the following five factors:

> (1) the relationship between the adjudicated and
> unadjudicated claims;
> (2) the possibility that the need for review might or might
> not be mooted by future developments in the district
> court;
> (3) the possibility that the reviewing court might be
> obliged to consider the same issue a second time;
> (4) the presence or absence of a claim or counterclaim
> which could result in a set-off against the judgment sought
> to be made final;
> (5) miscellaneous factors such as delay, economic and
> solvency considerations, shortening the time of trial,
> frivolity of competing claims, expense, and the like.

Braswell Shipyards, Inc., 2 F.3d at 1335-36. "If, in consequence of this examination, the

district court concludes that entry of judgment under Rule 54(b) is appropriate, it should

ordinarily make specific findings setting forth the reasons for its order." Spiegel v. Trs. of

Tufts Coll., 843 F.2d 38, 43 (1st Cir. 1988); see also Braswell Shipyards, Inc., 2 F.3d at 1336.

## II.

Here, the first and fifth factors are decisive. The court will begin by explaining how the

first factor, which sometimes overlaps with the third, cuts both ways in this case because while

the evidentiary and legal issues bearing on the unadjudicated claims are distinct from those

already resolved on the adjudicated compelled speech claim, the close relationship between

the relief sought from the sole defendant on all claims counsels against entry of final judgment

on the compelled speech claim at this time. The court will then analyze how the nature of the

relief sought further militates against entry of final judgment under efficiency, fairness, and

certainty considerations germane to the fifth factor. The court will conclude by briefly

addressing the second and fourth factors, which are outweighed in this case by the first and

fifth.

As to the first and third factors, "Where the adjudicated and unadjudicated claims share

significant similarities, such as involving the same parties, the same legal issues, or the same

evidence, Rule 54(b) certification is disfavored." Ortho-McNeil Pharm., Inc. v. Kali Labs, Inc.,

No. 02-5707, 2007 WL 1814080, at *3 (D.N.J. June 20, 2007). Here, on the one hand, the

issues to be considered under the Equal Protection, Title VI, and Equal Educational

Opportunities Act claims will not retroactively affect the compelled speech claim. While the

Equal Protection, Title VI, and Equal Educational Opportunities Act claims overlap

significantly with one another in that they turn on similar questions, such as whether the

School Board acted with discriminatory intent and whether the School Board's reinstatement

of the challenged school names has objectively had a discriminatory impact on Black students,

deciding plaintiffs' compelled speech claim did not require any finding of discriminatory intent

5

or any inquiry into how the challenged school names affect different groups. Moreover, the discovery schedule in this case makes it clear that the adjudicated and unadjudicated claims involve distinct evidence. Pursuant to the schedule entered by the court and agreed upon by the parties, which sought to expedite discovery on plaintiffs' compelled speech claim while providing more time for discovery on the fact-intensive intent and discriminatory impact questions pertinent to plaintiffs' Equal Protection, Title VI, and Equal Educational Opportunities Act claims, discovery on the compelled speech claim is now complete, even as discovery on the remaining claims remains ongoing. See Scheduling Order, ECF No. 97; Parties' Joint Scheduling Letter, ECF No. 84. Additional evidence uncovered in relation to the remaining claims will not disturb the court's findings on the First Amendment claim. These distinctions between the adjudicated and unadjudicated claims render it unlikely that the reviewing court would be required to consider the same factual and legal issues twice and weigh in favor of entry of final judgment.

However, on the other hand, the parties and remedies in this case are entangled. The School Board is the sole defendant as to both the adjudicated and unadjudicated claims. Plaintiffs' complaint articulates a singular request for injunctive relief removing both the names "Stonewall Jackson High School" and "Ashby Lee Elementary School" pursuant to both the adjudicated and unadjudicated claims, though the declaratory relief plaintiffs seek differs by claim. Compl., ECF No. 1 at Relief Requested. As to the plaintiffs, the adjudicated compelled speech claim involves only plaintiffs who are students at Stonewall Jackson High School (namely, D.D., A.J., and members of the Virginia State Conference NAACP who participate in extracurricular activities at Stonewall Jackson High School); therefore, the

6

compelled speech claim can establish grounds for relief only as to the name "Stonewall Jackson High School." By contrast, the unadjudicated Equal Protection, Title VI, and Equal Educational Opportunities Act claims involve some, but not all, of the plaintiffs involved in the compelled speech claim (namely, D.D. and members of the Virginia State Conference NAACP), as well as additional plaintiffs who are students at other Shenandoah County high schools but attend the Governor's School at Stonewall Jackson High School (namely, B.B. and A.C.) and additional plaintiffs who are students at the elementary school (namely, J.D.); therefore, the Equal Protection, Title VI, and Equal Educational Opportunities Act claims stand to establish grounds for relief as to both the names "Stonewall Jackson High School" and "Ashby Lee Elementary School." See Mem. Opp. Mot. Dismiss, ECF No. 61 at 8 n.4. This partial but not complete overlap between the parties and remedies leads the court to conclude that entry of final judgment on the compelled speech claim at this time would only complicate matters going forward.

Specifically, the court is concerned by the prospect of unnecessarily complicating the injunctive relief plaintiffs seek. Removal of the name "Stonewall Jackson High School," which could follow from final judgment on plaintiffs' compelled speech claim, could theoretically be regarded as a separate remedy from removal of the name "Ashby Lee Elementary School," which can only follow from resolution of the remaining claims in plaintiffs' favor. However, practically, both remedies can flow only from the sole defendant in this case, the School Board, which is the sole entity with authority over the challenged names. 3rd Joint Statement of Stipulated Facts, ECF No. 104, ¶ 81. Moreover, the School Board has previously treated these names as rising and falling together, as the School Board voted to remove the names jointly in

2020 and then to reinstate the names jointly in 2024. 1st Joint Statement of Stipulated Facts, ECF No. 85, ¶¶ 19, 42. Accordingly, the court believes it best to treat the relief plaintiffs seek from both names as calling for a singular act of redress by the School Board—one name change process, rather than two. Entering final judgment on plaintiffs' compelled speech claim now would risk requiring the School Board to engage in two name change processes, should plaintiffs prevail on their remaining claims challenging the name "Ashby Lee Elementary School." Because entering final judgment now risks effectively doubling the redress efforts in which the sole defendant in this case must engage, the relationship between the parties and remedies involved in the adjudicated and unadjudicated claims in this case strongly supports denying plaintiffs' Rule 54(b) motion.

### III.

The nature of the remedy at issue in this case is also relevant under the fifth Rule 54(b) factor, which invites consideration of efficiency and other miscellaneous considerations. See Braswell Shipyards, Inc., 2 F.3d at 1335-36. Plainly, requiring the School Board to undertake two name change processes would be inefficient. Inviting two name change processes would also be unfair to the School Board, as two name change processes would mean doubling the amount of time and effort required to remedy the constitutional violations that have thus far been proven and may yet be proven in this case. Additionally, as explained in the court's memorandum opinion granting plaintiffs' motion for summary judgment, while the Constitution constrains the School Board by prohibiting it from selecting a school name that compels plaintiffs to speak, the Constitution otherwise leaves the School Board flexibility in its selection of school names and in the means by which it does so. For the court to cause two

8

name change processes to be needed where the School Board likely would prefer to engage in only one process would be for the court to intrude on the School Board's agenda more than is required to remedy constitutional violations. Moreover, as the court also observed in its memorandum opinion granting plaintiffs' motion for summary judgment, the School Board's prior name removal and replacement proceedings have drawn significant community controversy. The fifth Rule 54(b) factor permits the court to consider the desirability of minimizing—rather than doubling the risk of—future controversy by declining to enter final judgment at this time and instead ensuring that any name change called for by plaintiffs' remaining claims can be addressed simultaneously with the relief already called for pursuant to the court's grant of summary judgment as to plaintiffs' compelled speech claim.

Under the fifth Rule 54(b) factor, the court further observes that entering final judgment on plaintiffs' compelled speech claim now would risk requiring both the parties and this court to engage in two separate processes to conduct the requisite analysis of the appropriateness and the proper scope of injunctive relief in this case. Doing so would be inefficient and unwise, especially where the full scope of the constitutional violations to be remedied, and whether they apply to two schools or just one, has not yet been established. Plaintiffs' complaint seeks an injunction "requiring Defendant to remove the Confederate names and mascots, and to prevent any future naming involving Confederate leaders or references to the Confederacy." Compl., ECF No. 1 at Relief Requested. However, when entering final judgment, the court does not simply enter an injunction in the form requested in plaintiffs' pleadings. Fed. R. Civ. P. 54(c) (explaining that although final judgment upon a default judgment is constrained to that "demanded in the pleadings," "[e]very other final

9

judgment should grant the relief to which each party is entitled, even if the party has not

demanded that relief in its pleadings"). Injunctive relief in particular calls for careful evaluation

because injunctions are equitable remedies not to be "granted as a matter of course." Salazar

v. Buono, 559 U.S. 700, 714 (2010). As the court's grant of plaintiffs' summary judgment

motion indicates, plaintiffs have succeeded on the merits of their compelled speech claim.

However, success on the merits is just one component plaintiffs must satisfy in securing an

injunction. See Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 689 F. Supp.

3d 203, 211 (E.D. Va. 2023) (noting that "[a] permanent injunction is available only if the party

seeking it demonstrates actual success on the merits of the claim upon which suit was brought"

and that plaintiffs had satisfied the "actual success" requirement by securing "a decision

awarding them summary judgment"). In order to show that an injunction is an appropriate

remedy, plaintiffs must also demonstrate "(1) that [they have] suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate

for that injury; (3) that, considering the balance of hardships between the plaintiff[s] and

defendant, a remedy in equity is warranted; and (4) that the public interest would not be

disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391

(2006). Plaintiffs are yet to attempt to satisfy these factors. Although some of the analysis

called for in this case is simplified by the nature of the compelled speech claim at issue, as "it

is well-established that '[t]he loss of First Amendment freedoms, for even minimal periods of

time, unquestionably constitutes irreparable injury,'" Legend Night Club v. Miller, 637 F.3d

291, 302 (4th Cir. 2011) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)), the need to

carefully evaluate the scope and appropriateness of the injunctive relief sought justifies deferring such analysis until all claims have been resolved.

The court and parties would also benefit from having a full picture of all claims in this case before fashioning the appropriate injunction. District courts have wide discretion in fashioning appropriate injunctive relief. See eBay Inc., 547 U.S. at 391; see also Lemon v. Kurtzman, 411 U.S. 192, 200 (1973) ("Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable."). However, "'[o]nce a constitutional violation is found,'" district courts are "'required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation.'" Ostergren v. Cuccinelli, 615 F.3d 263, 288-89 (4th Cir. 2010) (quoting Dayton Bd. of Educ. v. Brinkman, 433 U.S. 406, 420 (1977)). Injunctive relief must be broad enough to adequately remedy the constitutional violation at issue, but it must also be "'narrowly tailored'" to that end. Id. at 289-90 (quoting United States v. Paradise, 480 U.S. 149, 185 (1987)) (concluding that a district court had entered injunctive relief that failed to adequately remedy a First Amendment violation where the district court went too far in seeking to "find minimally disruptive equitable relief"). The parties have not yet briefed the appropriate scope of injunctive relief in this case. The importance of crafting injunctive relief of appropriate scope further justifies delaying entry of final judgment on plaintiffs' compelled speech claim until it is clear whether the outcome of plaintiffs' remaining claims will require relief pertaining to the name "Ashby Lee Elementary School" as well as to the name "Stonewall Jackson High School." The court and the parties ought to only consider these issues once and with a full picture of the constitutional wrongs to be righted.

11

Thus, miscellaneous practical considerations under the fifth Rule 54(b) factor provide ample "just reason for delay" as to the entry of final judgment. Fed. R. Civ. P. 54(b). These considerations outweigh the fact, also pertinent under the fifth Rule 54(b) factor, that the court has recognized that the rights of D.D., A.J., and other members of the Virginia State Conference NAACP are violated by being compelled to voice the expressive message associated with the name "Stonewall Jackson High School" during extracurricular activities. While the court recognizes that the compelled speech violations these plaintiffs are enduring must be remedied as soon as possible, the court does not believe entry of final judgment will hasten that result due to the likelihood of an appeal and the possibility of a stay pending appeal. "The chief purpose of a Rule 54(b) certification is to prevent piecemeal appeals when multiple claims are resolved in the course of a single lawsuit." Braswell Shipyards, Inc., 2 F.3d at 1335. Here, piecemeal appeals will only deprive both the School Board and plaintiffs of certainty, which is particularly undesirable where the relief sought involves an injunction that may direct the School Board to reevaluate the names of two of its schools for the third time in approximately five years.

## IV.

The other Rule 54(b) factors do not alter the court's decision to deny plaintiffs' Rule 54(b) motion. As to the second factor, which considers whether future developments in the district court might moot the need for appellate review, in damages cases where claims against some defendants have been resolved leaving other unadjudicated claims against other defendants, courts decline to enter final judgment where "the entire recovery the plaintiff originally sought still [can be] awarded under the remaining count[s]." Gerardi v. Pelullo, 16

12

F. 3d 1363, 1372 (3d Cir. 1994); see also Cyril v. Pereira, No. 2016-0017, 2023 WL 2742069, at *3 (D.V.I. Mar. 31, 2023) ("Plaintiffs have the potential to recover fully from the defendants who remain in the case, which would moot the need to appeal the judgment as to [defendants against whom claims had been dismissed]."). Thus, it is worth noting that the injunction plaintiffs seek under their compelled speech claim requiring the School Board to remove the name "Stonewall Jackson High School" could also issue as a result of favorable resolution of any one of plaintiffs' remaining claims. However, this case is distinguishable because it does not involve damages and instead involves declaratory relief as well as injunctive relief. Although a declaratory judgment declaring that plaintiffs' constitutional rights have been violated because they have been compelled to speak will have a similar practical effect to a declaratory judgment declaring that plaintiffs' constitutional rights have been violated because they have been discriminated against based on race, such relief is not fungible in the same way that damages based on different claims against different defendants are fungible. As to the fourth prong, there is no counterclaim at issue, and the relief sought is declaratory and injunctive, not monetary, so there is no possibility of a set-off against the judgment. However, these factors do not outweigh the inefficiency and uncertainty that would follow from entering final judgment at this time. This is particularly true as the remaining claims are set for trial in just a few months, in December 2025.

## V.

Although the court has granted summary judgment in plaintiffs' favor on plaintiffs' compelled speech claim, the court cannot enter final judgment on that claim at this time. Entry of final judgment before all claims have been resolved at the district court level is an exception

to the norm against permitting piecemeal appeals. Braswell Shipyards, Inc., 2 F.3d at 1335. Far

from there being "no just reason for delay" in the entry of final judgment in this case, Fed. R.

Civ. P. 54(b), the nature of the relief sought and the relationship between the adjudicated and

unadjudicated claims in this case calls for delaying final judgment until appropriate relief can

be fashioned by the court with input from the parties and implemented by the School Board

with the benefit of greater certainty and a more complete picture of the extent of the

constitutional violations in this case. Thus, plaintiffs have not met the burden of showing that

final judgment prior to the resolution of all claims is warranted, Braswell Shipyards, Inc., 2

F.3d at 1335, and plaintiffs' Rule 54(b) motion must be **DENIED,** ECF No. 138.

An appropriate order will be entered.

Entered: September 8, 2025

Michael F. Urbanski
Senior United States District Judge

14