UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| VIRGINIA STATE CONFERENCE NAACP, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY SCHOOL BOARD OF SHENANDOAH COUNTY,<br>    Defendant. | Case No. 5:24-cv-00040 |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE**

Plaintiffs Virginia State Conference NAACP, et al., ("Plaintiffs") respectfully oppose Defendant's Motion in Limine to exclude the introduction of certain evidence and testimony and Defendant's objections to Plaintiffs' arguments.

**1. 2020 School Board Resolutions and Statements Are Admissible Evidence of Harm and Discriminatory Intent**

In 2020, the Defendant adopted a "Resolution condemning racism and affirming the division's commitment to an inclusive school environment for all" and its members made statements on the public record indicating that their reason for retiring the Confederate school names was because they were racially discriminatory and harmful to Black students. *See, e.g.*, Joint Statement of Stipulated Facts, ECF No. 85, at 3–4; Third Joint Statement of Stipulated Facts, ECF No. 104, at 2–3. Plaintiffs intend to use the Shenandoah County School Board's statements during the July 9, 2020 School Board meeting (1) as evidence of harm caused by the Confederate school names and (2) to demonstrate that the School Board's later reinstatement of the Confederate school names was done with discriminatory intent. The statements are admissible as such pursuant to Federal Rule of Evidence 401. *See Vill. of*

*Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977) (stating that the "historical background of the decision" is relevant when establishing intent); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 819 (4th Cir. 1995) (stating that the *Arlington Heights* factors include "any history of discrimination by the decisionmaking body or the jurisdiction it represents"). In fact, the School Board's vote to restore the Confederate school names in 2024 is exactly the kind of "strange-about face" that serves as evidence of discriminatory intent under the *Arlington Heights* factors. Memorandum Opinion, ECF No. 60, at 31 (citing *Mi Familia Vota v. Hobbs*, 608 F. Supp. 3d 827, 867 (D. Ariz. 2022)).

Defendant's assertions that Plaintiffs are not permitted to offer the School Board's statements in 2020 for purposes of impeachment as prior inconsistent statements under Federal Rule of Evidence 613, *see* Def. Mot. In Limine, ECF No. 200, at 1–2, are inapposite, as Plaintiffs do not intend to offer these statements to impeach. Defendant further argues that the statements the School Board made in 2020 cannot be imputed to the current School Board because the Board's composition has changed. Def. Mot. in Limine at 2. But that, too, is irrelevant as Plaintiffs are not intending to argue that the 2024 School Board had the same intent as the 2020 School Board; rather, they will argue that the prior statements and legislative history support Plaintiffs' argument that Defendants acted with discriminatory intent. As the Court outlined in its Memorandum Opinion denying Defendant's Motion to Dismiss, "the historical allegations here are exceptional not only because of the particular historical facts indicating that Shenandoah County Public Schools initially chose Confederate school names because of their discriminatory effect, but also because the very School Board that reinstated the names in 2024 had, less than four years earlier, acknowledged this historical record and its enduring legacy." Memorandum Opinion at 30. "This is a rare case where the allegations bind the past and present." *Id.* The Court should therefore deny Defendant's Motion in Limine as to the admissibility of the School Board's 2020 statements.

### 2. Brig. Gen. Ty Seidule's Testimony

With respect to the testimony of Brig. Gen. Ty Seidule, Def. Mot. in Limine at 2–3, the parties have agreed to resolve this issue with Plaintiffs' agreement that they will not ask the witness to offer an opinion at trial "that restoring the original school was 'cruel' to Black students." *Id.* at 2.

### 3. Dr. Brian Daugherity's Testimony

Defendant does not dispute Dr. Brian Daugherity's qualifications to serve as an expert historian, but challenges the admissibility of his opinion regarding the current racial implications of the Confederate school names in Shenandoah County. Plaintiffs will not offer Dr. Daugherity's opinion as direct evidence of the 2024 School Board's intent. However, Plaintiffs contest Defendant's restrictive interpretation concerning the extent of Dr. Daugherity's expertise and the factual basis required for forming his opinions.

While the primary focus of Dr. Daugherity's scholarly expertise may be the school desegregation process in Virginia, his "knowledge, skill, experience, training, [and] education" is in historical analysis spanning from the Civil War to the present. Fed. R. Evid. 702; *see e.g.*, Daugherity Report, ECF No. 200.3, at 1–2; Daugherity Deposition, ECF No. 200.4, at 12:11–22, 126:9–12, 127:8–19.[1] Dr. Daugherity's examination of the School Board's meeting minutes and newspaper articles, while criticized by Defendant, reflects a common methodological practice in historical research.[2] Therefore, Dr. Daugherity's opinions analyzing the historical record in the context of the

---

[1] *See also, e.g.*, *United States v. Hammoud*, 381 F.3d 316, 337 (4th Cir. 2004), *rev'd on other grounds*, 543 U.S. 1097 (2005) (noting that social science experts are bound by the standards and techniques of "basic academic intellectual research," such as data collection, rigorous comparative analysis, and "tremendous peer review"); *see also Waterhouse v. R.J. Reynolds*, 368 F. Supp. 2d 432, 436 (D. Md. 2005), *aff'd*, 162 F. App'x 231 (4th Cir. 2006) (finding an American History professor "appli[ed] reliable professional methods used in conducting historical research in general" by examining "a wide array of historical scholarship and primary sources of public knowledge about the effects of tobacco use…").

[2] *See Waterhouse*, 368 F. Supp. 2d at 436 (recognizing that reliable professional methods for conducting historical research include synthesizing voluminous amounts of "popular magazines, government documents, manuscript collections, scholarly histories, state and federal laws regarding [the issue], curriculum guides and school textbooks approved for use

(continued…)

present are within his scope of expertise, are based on sufficient facts and data, and should not be precluded at trial.

### 4. Dr. Spinks-Franklin's Opinion is Highly Probative and Not Prejudicial

Defendant's attempt to exclude Dr. Spinks-Franklin's opinion under Federal Rule of Evidence 403 misconstrues the rule and the nature of her opinion. Defendant does not challenge Dr. Spinks-Franklin's qualifications, methodology, or reliability as an expert. Rather, Defendant challenges the admissibility of Dr. Spinks-Franklin's opinion that Plaintiffs are experiencing a form of cultural racism and may be experiencing internalized racism due to the reinstatement of the Confederate school names. *See* Spinks-Franklin Report, ECF No. 200.5, at 7. Rule 403 permits exclusion only where the risk of unfair prejudice substantially outweighs the evidence's probative value. Fed. R. Evid. 403. None of Defendant's criticisms meet that threshold.

Dr. Spinks-Franklin's opinion is highly probative: relying on her experience as a developmental-behavioral pediatrician, her academic research, and her analysis of peer-reviewed articles, she provides the medical context for the psychological and physiological harms associated with repeated exposure to racist symbols, such as Confederate symbols. Then, based on her review of Plaintiffs' statements, including deposition testimony, news articles and school board meeting minutes, Dr. Spinks-Franklin provides a bridge between the scientific studies and the experiences of

---

in various states…religious publications, polling and survey data, movies, television programs, and other forms of popular culture."); *Hammoud*, 381 F.3d at 337 (holding an expert's review and analysis of information—whether in the form of studies, raw data, or historical documents like committee reports—is an accepted approach in the social science field); *Pierce v. N. Carolina State Bd. of Elections*, No. 4:23-CV-193-D, 2025 WL 2841008, at *45 (E.D.N.C. Sept. 30, 2025) ("[Expert] relied on a newspaper survey, which historians commonly use in conducting historical research and is a standard methodology in political research."); *Nat'l Ass'n for Advancement of Colored People, Inc. v. City of Myrtle Beach*, 504 F. Supp. 3d 513, 518 (D.S.C. 2020) (expert's opinion was based on a methodology that "involved consideration of quantitative data like census data, demographic data, and secondary sources as well as qualitative data like depositions, comprehensive plans, and minutes of meetings regarding the decisions. He purported to use all data at his disposal to build a series of sources to which he could apply the challenged decisions and show context. This social science methodology is considered scientifically valid according to Fourth Circuit precedent.")

the student Plaintiffs, identifying similarities between their experiences with repeated exposure to cultural racism and the experience of other Black children exposed to the same. *See* Spinks-Franklin Deposition, ECF No. 200.6, at 30:16–34:17. This scientific and specialized knowledge will help "the trier of fact to understand the evidence." Fed. R. Evid. 702; *see* Memorandum Opinion at 27 ("Dignitary, educational, and development harms alleged form an adequate basis for plaintiffs' Equal Protection claim that Black students disproportionally suffer these harms due to Confederate school names".)

Moreover, Defendant has not demonstrated that Dr. Spinks-Franklin's opinion is unfairly prejudicial. Defendant's main argument boils down to a disagreement with Dr. Spinks-Franklin's methodology. But Dr. Spinks-Franklin clearly explains that she employs different evaluative methods in different professional roles: clinical examination as a treating pediatrician, structured questionnaires in research, and record-based evaluation when serving as a medical expert. *See* Spinks-Franklin Deposition at 89:04-90:24. Here, Dr. Spinks-Franklin reached her opinion "through reviewing the school board minutes, the media interviews, the depositions, and then reviewing the literature [] that's germane to this particular case." *Id.* at 90:14–24. Defendant does not articulate how this methodological choice will unfairly prejudice it, nor demonstrate why or how this choice is invalid.

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion in Limine to exclude the introduction of certain evidence and testimony and overrule Defendant's objections.

Dated: November 21, 2025                               Respectfully submitted,

                                                      */s/ Ashley Joyner Chavous*
                                                      Ashley Joyner Chavous (VSB #84028)

        Jason C. Raofield (DC Bar #463877)*
Kevin Collins (DC Bar #445305)*
Elizabeth Upton (DC Bar #1031985)*
Li Reed (DC Bar #90018796)*
Samuel Greeley (DC Bar #1656254)*
Tyler Smith (DC Bar #1735958)*
Stephanie Nnadi (DC Bar #90007365)*
Amber Lowery (DC Bar #1780982)*
Lauren Smith (DC Bar #90029733)*
Analese Bridges (DC Bar #90029992)*
Alyssa Greenstein (DC Bar #90029046)*
Covington & Burling LLP
850 10th Street, NW
Washington, DC 20001
(202) 662-6000
achavous@cov.com
*Counsel for Plaintiffs*

/s/ Kaitlin Banner
Kaitlin Banner (DC Bar #1000436)*
Marja K. Plater (DC Bar #90002586)*
Ryan Downer (DC Bar #1013470)*
Melissa Colon (DC Bar #90006144)*
Washington Lawyers' Committee
for Civil Rights and Urban Affairs
700 14th Street, NW, Suite 400
Washington, DC 20005
kaitlin_banner@washlaw.org
*Counsel for Plaintiffs*

*\* Admitted pro hac vice*

## CERTIFICATE OF SERVICE

       I hereby certify that on November 21, 2025, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to:

Jim H. Guynn, Jr (VSB #22299)
Christopher S. Dadak (VSB #83789)
John R. Fitzgerald (VSB #989221)
GUYNN WADDELL, P.C.
415 S. College Ave.
Salem, Virginia 24153
Phone: (540) 387-2320
Fax: (540) 389-2350
Email:  jimg@guynnwaddell.com
        chrisd@guynnwaddell.com
        johnf@guynnwaddell.com
*Counsel for Defendant*

                                         */s/ Ashley Joyner Chavous*
                                         Ashley Joyner Chavous
                                         VA Bar #84028