IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISON

| | |
|---|---|
| VIRGINIA STATE CONFERENCE NAACP, *et al.*, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 5:24-cv-00040 |
| COUNTY SCHOOL BOARD OF SHENANDOAH COUNTY, ) ) ) ) | |
| Defendant. ) | |

### DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1

Defendant Shenandoah County School Board (the "School Board"), by counsel, responds in opposition to the Plaintiffs' Motion in Limine No. 1 [ECF 195] as follows:

Plaintiffs' motion seeks to preclude *all evidence* concerning the 2024 "School Board members' motives or factors considered when voting, as well as their prior public statements regarding that subject" from being offered by the School Board at trial. MIL #1 at 6. As justification for this extraordinarily broad exclusion of evidence essential to the School Board's defense against discriminatory intent in this case, Plaintiffs allege that the School Board "elected to utilize the assertion of the privilege to prevent discovery" into these matters. *Id.* at 1.

This, despite the Court's memorandum opinion [ECF 169] detailing five exclusions from the legislative privilege to which the School Board members were otherwise entitled. The Court (1) ordered the production of documents and communications created, and permitted inquiry into the 2024 School Board members' actions, statements, and opinions, *after the May 2024 vote*, including inquiry into their present opinions; (2) ordered the production of documents and communications produced by current School Board members, and permitted inquiry into opinions

1

current School Board members held and statements they made, *before they were elected to the School Board*; (3) ordered the production of documents or communications shared with, or received from, *individuals and organizations other than the School Board members*, and permitted inquiry into the School Board members' *dealings with outside individuals or organizations*; (4) ordered the production of evidence of purely factual information *available to the School Board at the time it voted to restore the names*; and (5) permitted discovery concerning documents or communications involving one or more School Board members regarding, and permitted inquiry into, School Board members' statements and opinions regarding, whether *race or awareness of the impact of the school names on Black students or the differential impact of the school names on children of different racial backgrounds* was considered by them prior to the May 2024 vote. Mem. Op. Leg. Priv. at 14-17. These broad exclusions enabled Plaintiffs to obtain and inquire into more than enough evidence of the factual information available to the School Board and factual bases for the vote to restore the school names in 2024.

      The allegation that the School Board somehow utilized its members' independent, voluntary assertions of legislative privilege as a "shield" to prevent discovery into these topics is incorrect, as proven by the School Board members' and employees' deposition transcripts as well as the School Board's discovery responses. Not to mention the fact that the privilege is not the School Board's to wield, as Plaintiffs have repeatedly argued throughout discovery. And as defense counsel represented to the Court in the recent status conference on November 12, 2025, they do not intend to have the School Board members testify to reasons or motivations behind their individual votes. Therefore, there should be no concern about the School Board using the privilege as a "sword" at trial.

2

However, the School Board does intend (and has never indicated otherwise) to introduce evidence, which was either produced to Plaintiffs during discovery or publicly available and obtained by Plaintiffs, of factual information supporting a legitimate, non-discriminatory basis for voting to restore the names. This evidence includes, for example: emails between 2020 School Board members leading up to the 2020 vote to retire the school names and to which the 2024 members gained access by way of a community member's FOIA request; a July 2020 community petition containing thousands of signatures opposing the 2020 name change; testimony from School Board members regarding their opinions and election campaigns regarding the 2020 name change prior to joining the School Board;[1] election results from the 2021 and 2023 School Board elections; and the results of the survey regarding the school names conducted by the Coalition for Better Schools. This evidence, all of which Plaintiffs obtained through discovery, provides both parties the ability to argue regarding the bases for the 2024 School Board vote to restore the school names. Plaintiffs had ample opportunity to inquire into such evidence. The legislative privilege has not been used as a sword and shield by the School Board.

Nevertheless, Plaintiffs allege that the School Board and its members and designee "broadly invoked legislative privilege." MIL #1 at 3. In support, they cite to portions of the transcripts of their depositions as well as answers to various interrogatories and requests for admission. *Id.* at 3, 9-10. The School Board will address each in turn.

---

[1] As the Court will see in the deposition transcripts, Plaintiffs were given ample opportunity to inquire into these opinions, and did so exhaustively.

3

## Depositions

### Brandi Rutz Deposition

- 107:22 – 109:11

— Asked why the name change issue was placed on the agenda in 2022, while Ms. Rutz was a School Board member. Her testimony would have revealed "pre-decisional evidence of subjective deliberations during the legislative process," *Doe v. Nebraska*, 788 F. Supp. 2d 975, 985 (D. Neb. 2011), and therefore is privileged. Such evidence was not excluded from the privilege by the Court.

### Dennis Barlow Deposition

- 114:2 – 116:18

— Asked about his awareness of community petitions related to the school names while he was on the School Board. His testimony could have revealed his consideration of factors other than race or the differential impact of the school names on Black students while he was a School Board member and preceding his vote to restore the school names.

- 124:23 – 125:25

— Asked about his concerns over division within Shenandoah County, expense associated with the name change, and so on, in 2024. Again, his testimony could have revealed his consideration of factors other than race or differential impact on Black students while he was a Board member and preceding his vote.

- 144:15 – 149:13

— Asked whether he understood a particular policy to apply in 2022 while he was on the School Board, and how that policy was followed. This is a moot point, however, because upon rephrasing by Plaintiff's counsel, Mr. Barlow ultimately answered the question.

4

- 174:15 – 177:2

— Asked whether he had seen the letter from the Coalition containing the survey results. Also a moot point, because he ultimately answered the question.

- 298:3 – 16

— There is no question here. Mr. Barlow merely affirmed his invocation and intent not to waive his legislative privilege.

**Gloria Carlineo Deposition**

- 34:16 – 35:25

— Asked whether she knows a reason why a topic would be submitted by a board member for placement on the agenda but not be placed on the agenda. This question goes to subjective deliberations during the legislative process.

**Kyle Gutshall Deposition**

- 56:12 – 60:4

— Asked whether he was leading discussions about whether to conduct a survey in 2022. His answer would have revealed subjective deliberations during the legislative process.

— Also asked about what the School Board considered with regard to the survey recipients. Same issue as above.

- 75:13 – 76:12

— Asked (twice) whether he brought the name change up for vote again after 2022. His answer would have revealed subjective deliberations during the legislative process.

- 93:5 – 95:20

— Asked why Brandi Rutz only sent the Coalition letter to him, Barlow, and Sheppard.

— Also asked whether he added the letter to the April 11 agenda.

5

Both of these questions sought to reveal the subjective deliberations during the legislative process and do not relate to one of the Court's excepted categories.

- 100:16 – 101:8

— Asked why a particular letter from a community member was not added to the agenda. Legislative process.

- 106:13 – 107:17

— Asked why the School Board did not conduct a survey in 2024 regarding the names. Legislative process.

- 111:8 – 116:23

— Asked why he pointed out in his public statement that none of the surveys had been conducted by the School Board. Goes to his reasoning and/or motivations behind his public statement and is not related to race or differential impact.

— Also asked whether he relied on the results of the survey conducted by the Coalition for Better Schools in determining whether to restore the names. Surveys are not one of the factors excepted by the Court's opinion.

- 128:21 – 130:23

— Asked broadly what are the factors he considered when deciding whether to restore the names. The Court's opinion only permitted inquiry to one factor: race/differential impact. Mr. Gutshall did answer questions regarding that factor.

- 135:13 – 137:17

— Asked broadly why he changed from voting to restore the names in 2022 to voting not to restore them in 2024. This is merely another way of asking broadly what factors he considered when deciding whether to restore the names.

6

**Thomas Streett Deposition, Part 1[2]**

- 185:15 – 192:4

— Asked whether a particular policy he voted for, which had nothing to do with school names, was "more fair than" the opposing policy. Goes to his motivations for a particular vote, and not even the vote at issue in the case.

- 236:2 – 241:20

— Asked what he meant when he said he did not believe in racism. Defendant acknowledges that this objection did not accord with the Court's subsequent opinion; however, Plaintiffs had the opportunity to re-ask this question in Part 2 and did not. Defense counsel would not have objected on legislative privilege grounds.

- 242:22 – 244:15

— Asked him to explain a public statement from the May 9, 2024 meeting regarding taking down a Confederate flag. Moot point, because upon rephrasing, he ultimately answered the question.

- 250:11 – 251:1

— Asked him to explain another public statement from the May 9, 2024 meeting regarding racism being a problem "if you make it one." Also a moot point, because upon rephrasing, he ultimately answered the question.

- 255:24 – 258:8

---

[2] All of Plaintiffs' citations are from Part 1 of Mr. Streett's deposition, which took place prior to the Court's entry of its memorandum opinion on legislative privilege. Accordingly, some of Mr. Streett's invocations of the privilege are admittedly not in accordance with the opinion. Plaintiffs finished his deposition about a month later, after the Court's opinion was entered. Mr. Streett was asked about, and answered, whether he considered race and disproportionate impact on Black students and *did not* invoke his privilege at all during the latter portion of his deposition.

⎯ Asked if the only way to address his concerns regarding the 2020 vote was to restore the school names. Defense counsel retracted the objection upon clarification that Plaintiffs' counsel was merely asking about his thoughts prior to becoming a School Board member.

- 272:2 – 272:24

⎯ Asked if he could think of any way, other than restoring the names, to fix the broken process in 2020. Defense counsel objected here because the question is essentially asking whether the broken process in 2020 was a motivating factor for his vote to restore the names in 2024. Regardless of whether that objection accorded with the Court's subsequent opinion, it is a moot point because Mr. Streett made it clear elsewhere in his testimony his opinion of the broken process in 2020 and how best to address it.

- 279:7 – 281:9

⎯ Asked if he recalled any communications with Black students opposing the name restoration before the May 9, 2024 vote. Moot point, because in Part 2 of Mr. Streett's deposition, he is asked this again and answers without objection. Streett Dep. Part 2, 340:6 – 347:18.

- 281:22 – 288:24

⎯ Asked if he believed the Black students who said the names would hurt their learning environment. Plaintiffs did not re-ask the question in Part 2 of Mr. Streett's deposition, but if they had, defense counsel would not have objected on legislative privilege grounds.

⎯ Also asked if he remembers whether Black people were opposed to restoring the names. Mr. Streett was re-asked and answered this question in Part 2. Streett Dep. Part 2, 340:6 – 347:18.

- 289:25 – 290:21

8

— Asked why he brought the motion to restore the school names at the May 9, 2024 meeting. Goes to his motivations for his vote, which are privileged except for race and differential impact on Black students.

— Also asked whether anyone prompted him to bring the motion forward. This goes to the subjective deliberations during the legislative process as well as his motivations for voting to restore the names.

**Melody Sheppard Deposition**

- 149:12 – 150:22

— Asked why a particular letter from a community member was not added to the agenda. Dr. Sheppard is an "immediate aide" of the School Board and thus the privilege applies to her subjective deliberations during the legislative process as well. *See Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 343 (E.D. Va. 2015) (explaining that legislative privilege also applies, and is indeed "strongest as applied to conversations . . . between legislators and their immediate aides"). As Dr. Sheppard testified, she is immediately involved in the discussions with the School Board chair and vice-chair about what items are added to the agenda.

**Brandon Butler, Defendant's 30(b)(6) Deposition**

- 119:19 – 121:22

— Asked what information the School Board had regarding the school names in connection with racism or disparate impact at the time of the 2020 vote. Defense counsel objected to the question as outside the scope of the notice, but did not object or instruct the witness not to answer on legislative privilege grounds. Mr. Butler ultimately answered the question, so this is a moot point.

9

- 125:5 – 128:3

— There is no question here, just clarification from defense counsel that the School Board was not asserting privilege; rather, defense counsel was objecting to the question being outside the scope of the notice and reminding Plaintiffs' counsel that the previous question could not be addressed by the witness because the 2020 School Board members either asserted their privilege or refused to talk to Mr. Butler, which he had already explained earlier in his deposition.

- 136:16 – 137:2

— There is no objection based on legislative privilege here. Mr. Butler merely testified that he did not talk to School Board members about what factors they actually considered, because his understanding was that they had all invoked their legislative privilege; rather, he focused on the materials the members had available to them to consider.

**Interrogatories**

- Pls.' Ex. 1 to MIL #1: Def.'s 2d Suppl. Answers to Pls.' Interrogs. No. 16

— Asked to identify which School Board members relied, entirely or in part, on the survey by the Coalition for Better Schools, and for each member identified, to explain their understanding of the survey's contents and methodology. The School Board indicated its understanding that the relevant School Board members had invoked their legislative privilege and that such information was indeed privileged. The survey was not one of the factors excepted from the privilege by the Court's opinion.

— Also asked broadly to identify "all factors considered" by the School Board and its individual members when voting to retire the school names in 2020 and restore the school names in 2024. The School Board indicated its understanding that the relevant School

10

Board members had either invoked their legislative privilege or were unavailable to comment, and that such information, with the exception of race and differential impact, was indeed privileged. In its answer, the School Board acknowledged that it considered race and the differential impact of the school names on Black students, considering that was expressly excluded from legislative privilege in the Court's memorandum opinion.

- Pls.' Ex. 2 to MIL #1: Def's Answers to Pls.' 1st Set of Reqs. for Admis. No. 1-6

— Asked to admit that each of the 2024 School Board members relied, entirely or in part, on the survey by the Coalition for Better Schools. The School Board indicated its understanding that the relevant School Board members had invoked their legislative privilege and that such information was indeed privileged. The survey was not one of the factors excepted from the privilege by the Court's opinion.

Many of the citations Plaintiffs rely upon are simply irrelevant and have no bearing on their arguments. Even so, the School Board and its members provided extensive testimony regarding factual bases for restoring the school names in response to questions concerning their views of the 2020 vote to retire the names prior to becoming School Board members and after the 2024 vote to restore the names.

## CONCLUSION

For the foregoing reasons, Defendant Shenandoah County School Board respectfully moves the Court to deny the Plaintiffs' Motion in Limine No. 1, and for such other relief as the Court deems appropriate.

    SHENANDOAH COUNTY SCHOOL
    BOARD

    By: /s/ John R. Fitzgerald
    Jim H. Guynn, Jr (VSB #22299)
    Christopher S. Dadak (VSB #83789)

11

        John R. Fitzgerald (VSB #98921)
        GUYNN WADDELL, P.C.
        415 S. College Ave.
        Salem, Virginia 24153
        Phone: (540) 387-2320
        Fax:   (540) 389-2350
        Email: jimg@guynnwaddell.com
               christopherd@guynnwaddell.com
               johnf@guynnwaddell.com
        *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify on the 21st day of November, 2025, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to:

Kaitlin Banner (DC Bar #1000436)
Marja K. Plater (DC Bar #90002586)
Ryan Downer (DC Bar #1013470)
Melissa Colon (DC Bar #90006144)
Washington Lawyers' Committee
for Civil Rights and Urban Affairs
700 14th Street, NW, Suite 400
Washington, DC 20005
kaitlin_banner@washlaw.org
*Counsel for Plaintiffs*

Ashley Joyner Chavous (VSB #84028)
Jason C. Raofield (DC Bar #463877)
Kevin Collins (DC Bar #445305)
Elizabeth Upton (DC Bar #1031985)
Li Reed (DC Bar #90018796)
Samuel Greeley (DC Bar #1656254)
Tyler Smith (DC Bar #1735958)
Stephanie Nnadi (DC Bar #90007365)
Lauren Smith (DC Bar #90029733)
Amber Lowery (DC Bar #1780982)
Analese Bridges (DC Bar #90029992)
Alyssa Greenstein (DC Bar #90029046)
Covington & Burling LLP
850 10th Street, NW
Washington, DC 20001
(202) 662-6000
achavous@cov.com
*Counsel for Plaintiffs*

/s/ John R. Fitzgerald
Jim H. Guynn, Jr (VSB #22299)
Christopher S. Dadak (VSB #83789)
John R. Fitzgerald (VSB #98921)
GUYNN WADDELL, P.C.
415 S. College Ave.
Salem, Virginia 24153
Phone: (540) 387-2320
Fax:    (540) 389-2350
Email: jimg@guynnwaddell.com
           christopherd@guynnwaddell.com
           johnf@guynnwaddell.com
*Counsel for Defendant*