IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISON

| | |
|---|---|
| VIRGINIA STATE CONFERENCE NAACP, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 5:24-cv-00040 |
| COUNTY SCHOOL BOARD OF SHENANDOAH COUNTY, | ) ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTIONS IN LIMINE NOS. 2 & 3**

Defendant Shenandoah County School Board (the "School Board"), by counsel, responds in opposition to the Plaintiffs' Motions in Limine Nos. 2 and 3 [ECF Nos. 193 and 197] as follows:

ARGUMENT

**I.    Plaintiffs' motions are untimely.**

On September 5, 2024, the Court circulated its Proposed Scheduling Order to the parties.[1] On October 21, the parties filed their Amended Rule 26(f) Report and Joint Discovery Plan (the "Rule 26(f) Report") [ECF 55], in which they "agree[d] that all discovery deadlines *shall be governed by the Court's Proposed Scheduling Order*" except where the initial expert disclosures were modified by the Rule 26(f) Report. That same day, the Courtroom Deputy, Ms. Ayersman, emailed the parties noting the Court's September 5th email and that apparently the parties had not responded and the Proposed Scheduling Order had not yet been filed, and asking whether the parties needed any changes to the deadlines before she filed the order.[2] Two days later on October

---

[1] The Court's email and Proposed Scheduling Order are attached hereto as Exhibit A and Exhibit B, respectively.
[2] Ms. Ayersman's email and Plaintiffs' counsel's response thereto is attached hereto as Exhibit C.

1

23, Plaintiffs' counsel responded to the email, noting that the parties agreed "that all discovery deadlines shall be governed by the Court's Proposed Scheduling Order," except for modifications to the initial expert disclosure deadlines, and referring Ms. Ayersman to the Rule 26(f) Report.

The Proposed Scheduling Order—which the parties expressly adopted in their Rule 26(f) Report—states in paragraph 17 that "[a]ny motion to exclude the testimony of an expert *must be filed* no later than the deadline for filing motions for summary judgment." The deadline to file dispositive motions, i.e. motions for summary judgment, was October 24, 2025, according to the Court's Order entered July 2, 2025 [ECF 143]. The Plaintiffs' *Daubert* motions *must have been filed* by October 24, 2025.[3] None of them were. Therefore, they are untimely and should be denied.

## II.  Dr. Wanjiru Njoya[4]

Plaintiffs' lengthy arguments for excluding the opinions of Dr. Njoya can be summarized as follows: (1) her opinions are irrelevant, (2) she is not qualified to opine about Confederate history or harm to Black students, and (3) her opinions are unreliable.

### a. Dr. Njoya's opinions are central to the factual issues of vestiges of segregation and disproportionate impact, or harm, to the Black students.

As an initial matter, Dr. Njoya is not a "rebuttal expert," despite how Plaintiffs attempt to reframe her opinions as such.  MIL #2 at 5. She neither was disclosed as a rebuttal expert nor identified herself as one. Accordingly, she was not asked to give opinions of a historical, medical,

---

[3] The School Board acknowledges that, because it had to reschedule Mr. Edgerton's deposition due to his health issues, it agreed to an extension of the deadline for motions in limine with respect to his testimony. Joint Motion for Extension, ECF 187, ¶ 6. Therefore the School Board does not object to the untimeliness of the *Daubert* motion with respect to Mr. Edgerton, which Plaintiffs filed yesterday [ECF 203]. The School Board will respond in opposition to that motion within 7 days.

[4] The School Board noted its objection regarding timeliness to Plaintiffs' indication of intent to file *Daubert* motions during the status conference on November 12, 2025. *See* Minute Entry Status Conference, ECF 192. The Court indicated that it would consider this objection but asked the School Board to nevertheless respond to the substance of the arguments, so it will do so. However, the School Board is not conceding that Plaintiffs' *Daubert* motions should be considered despite their untimeliness.

psychological, or sociological nature. Rather, she was asked to give her expert opinions regarding key factual issues of the remaining claims in this case: harm or disproportionate impact on Black students and the notion of Confederate monuments as so-called "vestiges of segregation."

In order to address these factual issues, Dr. Njoya, being an academic and legal scholar by training, analyzed the academic debate among historians over the primary purpose(s) of the Confederacy and the main cause(s) of the American Civil War. Acknowledging this debate among known historical experts does not require a historical expertise and speaks to the vestiges question. It questions the factual assumption that the only possible reason for naming the schools after Confederates originally was to maintain segregation or discourage Black students from attending.

Dr. Njoya then analyzes the question of harm alleged to be suffered by Black students as a result of the school names. She opines based on her academic and scholarly research that this alleged harm is a relatively recent invention by Marxist proponents of Critical Race Theory that is rendered legally cognizable by the Fourteenth Amendment. This is not a legal opinion but rather a scholarly philosophical opinion. Ultimately it speaks to an issue that is central to the Plaintiffs' Fourteenth Amendment and statutory claims: disparate impact.

### b. Dr. Njoya is qualified to give her actual opinions.

Dr. Njoya's many impressive credentials, as detailed in her CV, more than qualify her as both an academic and scholar who is well-read and widely-published on many topics that are relevant to her actual opinions, which are outlined above. No, she is not trained as a historian. Nor is she trained as a psychologist. However, Dr. Njoya does not purport to be an expert in the meaning of Confederate symbols, either today or during the time of school segregation in Shenandoah County. Nor does she purport to be an expert in the alleged psychological harm to

3

Black students from the school names. But these are not her opinions. Her opinions are strictly philosophical in nature, which a Doctor of Philosophy is most certainly qualified to give.

### c. Dr. Njoya's methodology is sound, and arguments of bias go to weight, not admissibility.

Plaintiffs criticize Dr. Njoya for not considering the testimony of the Plaintiffs or the written reports of their experts. They argue that her opinions are not supported by sufficient facts or data. But as discussed above, Dr. Njoya's opinions are substantially academic and philosophical in nature. She cites multiple scholarly sources and references several historical debates in support of her opinions. She does not make scientific arguments, which would indeed require data. Accordingly, Dr. Njoya's scholarly methodology suits the nature of her opinions.

With regard to the charge that she "is an activist masquerading as an expert," frankly that is an insult to someone of Dr. Njoya's academic credentials and stature within her field of study. Yes, Dr. Njoya harbors some strong opinions and, perhaps, controversial views, which she freely expresses on social media. However, Plaintiffs' views on her posts on X and her published articles are not relevant to the issue of admissibility of her opinions in this case. Dr. Njoya's written report, which provides her opinions in this case, is what matters; not Dr. Njoya's social media activity, or the Plaintiffs' perception regarding the value of her beliefs. If being an "activist" were a disqualifier for an expert witness, then Plaintiffs' expert, Dr. Spinks-Franklin, a self-proclaimed "social justice warrior," would also have to be disqualified.

### III.    Gibson Kerr

Plaintiffs' arguments for excluding Mr. Kerr's opinions are essentially that he is not qualified to be considered an expert on his subject matter and his opinions are unreliable.

4

### a. Mr. Kerr is a published author and frequent public speaker on the subject matter about which he opines.

It is true. Mr. Kerr does not have the stereotypical academic credentials in history. He has a Bachelor of Arts in History and a Masters in Business Administration, and he works in real estate. Because of that, Plaintiffs argue that "Mr. Kerr is not more a qualified expert historian than any other layperson with an interest in history." MIL # 3 at 3. However, a formal education is not the only path to expertise. Mr. Kerr is hardly a layperson with an interest in history, considering he has authored and published entire books on historical figures. Moreover, his expertise in history enabled him to hold forth on the subject under intense scrutiny during his 5-hours long deposition. The defense believes the Court upon reviewing Mr. Kerr's report and deposition transcript, which have been provided by Plaintiffs, will also conclude that he demonstrated sufficient knowledge and accomplishment in the field to qualify him as an expert on the historical subject at issue in this case and provided reliable, well-grounded opinions.

### b. Mr. Kerr's extensive historical research and logically consistent application of that knowledge is his methodology.

Plaintiffs argue that Mr. Kerr's opinions are not based on a reliable methodology because he relied heavily on material he previously gathered while authoring his book on Robert E. Lee and "has not tested his theories or conclusions through any reliable method or peer review." MIL #3 at 4. Mr. Kerr went on to publish that book on Robert E. Lee, titled "Un-Cancel Robert E. Lee," which has been read by thousands of people and has received hundreds of reviews. In the field of history, that is "peer review." His opinions are largely about the Confederacy and prominent figures within it such as Robert E. Lee, whom he extensively researched in order to author his book on the figure. As he testified, he has also spoken publicly regarding his book, and the reception has been overwhelmingly positive. All Mr. Kerr did was logically apply his significant

5

historical research to the facts of this case. What better methodology could he have utilized in forming his opinions?

Plaintiffs also argue that Mr. Kerr failed to ground his opinions in sufficient facts because he supported his conclusions "through cherry-picking quotes and passages *that support his preexisting position*", and because he relied on his "lived experience." *Id.* Plaintiffs' arguments are the subject of cross-examination rather than sufficient bases for exclusion. It is permissible for an expert to rely on his personal experience. Finally, Plaintiffs also criticize Mr. Kerr for not conducting a survey or study to support his opinions. Neither did Plaintiffs' experts.

## CONCLUSION

For the foregoing reasons, Defendant Shenandoah County School Board respectfully moves the Court to deny the Plaintiffs' Motions in Limine Nos. 2 and 3, and for such other relief as the Court deems appropriate.

SHENANDOAH COUNTY SCHOOL BOARD

By: /s/ John R. Fitzgerald
Jim H. Guynn, Jr (VSB #22299)
Christopher S. Dadak (VSB #83789)
John R. Fitzgerald (VSB #98921)
GUYNN WADDELL, P.C.
415 S. College Ave.
Salem, Virginia 24153
Phone: (540) 387-2320
Fax:    (540) 389-2350
Email: jimg@guynnwaddell.com
         christopherd@guynnwaddell.com
         johnf@guynnwaddell.com
*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify on the 21st day of November, 2025, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to:

Kaitlin Banner (DC Bar #1000436)
Marja K. Plater (DC Bar #90002586)
Ryan Downer (DC Bar #1013470)
Melissa Colon (DC Bar #90006144)
Washington Lawyers' Committee
for Civil Rights and Urban Affairs
700 14th Street, NW, Suite 400
Washington, DC 20005
kaitlin_banner@washlaw.org
*Counsel for Plaintiffs*

Ashley Joyner Chavous (VSB #84028)
Jason C. Raofield (DC Bar #463877)
Kevin Collins (DC Bar #445305)
Elizabeth Upton (DC Bar #1031985)
Li Reed (DC Bar #90018796)
Samuel Greeley (DC Bar #1656254)
Tyler Smith (DC Bar #1735958)
Stephanie Nnadi (DC Bar #90007365)
Lauren Smith (DC Bar #90029733)
Amber Lowery (DC Bar #1780982)
Analese Bridges (DC Bar #90029992)
Alyssa Greenstein (DC Bar #90029046)
Covington & Burling LLP
850 10th Street, NW
Washington, DC 20001
(202) 662-6000
achavous@cov.com
*Counsel for Plaintiffs*

/s/ John R. Fitzgerald
Jim H. Guynn, Jr (VSB #22299)
Christopher S. Dadak (VSB #83789)
John R. Fitzgerald (VSB #98921)
GUYNN WADDELL, P.C.
415 S. College Ave.
Salem, Virginia 24153
Phone: (540) 387-2320
Fax:    (540) 389-2350
Email: jimg@guynnwaddell.com
         christopherd@guynnwaddell.com
         johnf@guynnwaddell.com
*Counsel for Defendant*