**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

8/6/2026

LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

|  |  |  |
|---|---|---|
| **VIRGINIA STATE CONFERENCE NAACP, et al.,** | ) ) ) | |
| Plaintiffs, | ) ) | **Case No. 5:24-cv-00040** |
| v. | ) ) ) | **By: Michael F. Urbanski** **Senior United States District Judge** |
| **COUNTY SCHOOL BOARD OF SHENANDOAH COUNTY,** | ) ) ) | |
| Defendant. | ) | |

## ORDER

This case concerns defendant County School Board of Shenandoah County's ("School Board") decision to restore the names "Stonewall Jackson High School" and "Ashby-Lee Elementary School" in 2024, just four years after the School Board retired those names because they were racially discriminatory.

By memorandum opinion entered September 9, 2025, the court granted summary judgment in favor of plaintiffs on their First Amendment compelled speech claim. Mem. Op., ECF No. 171. Following a five-day bench trial and subsequent briefing and argument, in a memorandum opinion entered on August 6, 2026, the court held that restoration of the Confederate school names violated the Equal Protection Clause of the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964, and the Equal Educational Opportunities Act, 20 U.S.C. § 1703(b).

1

Consistent with those opinions, judgment is entered in favor of plaintiffs on their First Amendment, Fourteenth Amendment, Title VI, and Equal Educational Opportunities Act ("EEOA") claims.

This order considers the appropriate remedy for these violations. Plaintiffs seek injunctive relief requiring the School Board to remove the Confederate names and to prevent any future naming involving Confederate leaders or references to the Confederacy. Plaintiffs also seek injunctive relief requiring the School Board to remove all remaining vestiges of the dual school system previously operated in Shenandoah County. Further, plaintiffs ask for an award of reasonable attorneys' fees and costs of litigation, pursuant to 42 U.S.C. §§ 1920, 1988, and any other relief the Court deems appropriate in the interests of justice. See Complaint, ECF No. 1 at 61; see also Pre-Trial Memo, ECF No. 208, at 2.[1]

## I.

"'[O]nce a plaintiff has established the violation of a constitutional or statutory right in the civil rights area, . . . courts have broad and flexible equitable powers to fashion a remedy that will fully correct past wrongs.'" N.C. State Conf. of NAACP v. McCrory, 831 F.3d 204, 239 (4th Cir. 2016) (quoting Smith v. Town of Clarkton, 632 F.2d 1055, 1068 (4th Cir. 1982)); see Green v. Cnty. Sch. Bd. of New Kent Cnty., 391 U.S. 430, 437-39 (1968).

"In order to issue an injunction, a court must ascertain whether the plaintiff has shown: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

---

[1] As plaintiffs are the prevailing party, they may file a motion for "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). See Lackey v. Stinnie, 604 U.S. 192, 202 (2025) ("We have held that, for the purposes of § 1988(b), a plaintiff 'prevails' when a court grants enduring judicial relief that constitutes a 'material alteration of the legal relationship of the parties.'" (quoting Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989)).

damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest is not disserved by injunctive relief." Wudi Indus. (Shanghai) Co. v. Wong, 143 F.4th 250, 260 (4th Cir. 2025) (citing eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006)). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court," eBay, 547 U.S. at 391, and district courts are "required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." Ostergren v. Cuccinelli, 615 F.3d 263, 289 (4th Cir. 2010) (quoting Dayton Bd. of Educ. v. Brinkman, 433 U.S. 406, 420 (1977)); see also Milliken v. Bradley, 433 U.S. 267, 280 (1977) (finding that in the context of school desegregation cases, "the nature of the desegregation remedy is to be determined by the nature and scope of the constitutional violation," and the remedy must be both related to the condition that offends the Constitution and "remedial in nature").

Plaintiffs have suffered and will continue to suffer irreparable harm in the absence of a permanent injunction. "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." Doe v. Mast, 173 F.4th 524, 533 (4th Cir. 2026) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). See CBS, Inc. v. Davis, 510 U.S. 1315, 1318 (1994) ("[I]ndefinite delay of [asserted speech rights] will cause irreparable harm . . . that is intolerable under the First Amendment."); Johnson v. Bergland, 586 F.2d 993, 995 (4th Cir. 1978) ("Violations of first amendment rights constitute per se irreparable injury."); In re Murphy-Brown, LLC, 907 F.3d 788, 796 (4th Cir. 2018) (same); Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 689 F. Supp. 3d 203, 211 (E.D. Va. 2023) ("By

infringing upon the Plaintiffs' constitutional rights, the challenged statutory and regulatory provisions inflicted an irreparable injury on Plaintiffs."); Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury."); see also Heckler v. Matthews, 465 U.S. 728, 739-40 (1984) ("[D]iscrimination itself . . . can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group.").

A permanent injunction is warranted here because there is no adequate remedy at law for the injury caused by the School Board's actions. Monetary relief is inadequate to remedy the constitutional harm in this case. See Fraser, 689 F. Supp. 3d at 213 ("The only available remedy to stop the denial of the right is an order enjoining the enforcement of the legal regime that is affecting the deprivation."). There is no indication that the School Board would voluntarily remove the Confederate school names absent injunctive relief.

The balance of hardships weighs in favor of entering injunctive relief. The School Board argues that if the court orders removal of the Confederate names, "the Shenandoah County school system will be forced to withstand yet another costly and unpopular name-change debacle." Def.'s Br., ECF No. 265, at 28. The School Board further suggests that the court should allow the Confederate names to stay, given that "at worst Plaintiffs' feelings will be hurt." Id. While the costs and logistics associated with changing the name of the school will indeed fall to the School Board, the burden of the Constitutional harms associated with the restoration of the Confederate names falls on plaintiffs. Accordingly, the balance of hardships between the plaintiffs and defendant indicates that a remedy in equity is warranted.

4

See Ensley Branch, N.A.A.C.P. v. Seibels, 31 F.3d 1548, 1574 (11th Cir. 1994) ("[T]he Constitution does not put a price on constitutional rights, in terms either of time or money.").

Finally, it is well-established that upholding constitutional rights is in the public interest. See Fraser, 689 F. Supp. 3d at 215 ("[T]he public interest is never disserved by protecting individual rights conferred by the Constitution."); Leaders of a Beautiful Struggle v. Balt. Police Dep't, 2 F.4th 330, 346 (4th Cir. 2021); Legend Night Club v. Miller, 637 F.3d 291, 303 (4th Cir. 2011); Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd., 354 F.3d 249, 261 (4th Cir. 2003).

Injunctive relief is necessary to eliminate racial discrimination "root and branch." Green, 391 U.S. at 437-38. "[W]here, as here, a constitutional violation has been found, the remedy does not 'exceed' the violation if the remedy is tailored to cure the 'condition that offends the Constitution.'" Milliken, 433 U.S. at 282 (quoting Milliken v. Bradley, 418 U.S. 717, 738 (1974)). Requiring the School Board to remove and cease use of the Confederate school names is precisely tailored to cure the offending condition.

This relief is likewise essential to eliminate the vestiges of segregation embedded in Shenandoah County's public school system and to ensure that all students are afforded equal protection of the laws and equal educational opportunity. See 20 U.S.C. § 1712 ("In formulating a remedy for a denial of equal educational opportunity or a denial of the equal protection of the laws, a court . . . shall . . . impose only such remedies as are essential to correct particular denials of equal educational opportunity or equal protection of the laws."). The EEOA directs courts to make a specific finding of the type of remedy that is appropriate for a violation of its act. See 20 U.S.C. § 1713. Here, the appropriate remedy delineated by the

statute is the "implementation of any . . . plan which is educationally sound and administratively feasible . . . ." Id. § 1713(g). Requiring the School Board to remove and cease use of the Confederate school names is administratively feasible—it has already been done once before. Likewise, it is educationally sound to remove the Confederate names that symbolize racial division and infringe upon the rights of some of the County's students. In fashioning a remedy for the EEOA violation, the court is governed by the remedies sections of Subchapter I of that statute, §§ 1712–1718, and the admonition in § 1702(b) that "the provisions of this chapter are not intended to modify or diminish the authority of the courts of the United States to enforce fully the fifth and fourteenth amendments to the Constitution of the United States." 20 U.S.C. § 1702(b). See Hanover Cnty. Unit of the NAACP v. Hanover Cnty., 461 F. Supp. 3d 280, 300 (E.D. Va. 2020) ("Section 1713 does not preclude courts from imposing forms of equitable relief other than those specifically enumerated, such as an injunction requiring the schools' names to be changed." (citing Issa v. Sch. Dist. of Lancaster, 847 F.3d 121, 131 (3d Cir. 2017)); Brinkman v. Gilligan, 518 F.2d 853, 856 (6th Cir. 1975) (construing the EEOA "as not limiting either the nature or the scope of the remedy for constitutional violations").[2]

---

[2] Subchapter II, concerning "Assignment and Transportation of Students," contains a notice limitation on the court's remedial power to "enter . . . any order for enforcement of a plan of desegregation or modification of a court-approved plan." 20 U.S.C. § 1758. Shenandoah County Public Schools was not subject to a court-ordered desegregation plan, and this order does not enforce or modify a desegregation plan. Nor does this case concern the subject of Subchapter II, Assignment and Transportation of Students. As such, the notice limitation in § 1758 does not apply here. In any event, and out of an abundance of caution, the court considers the remedy imposed herein to be coextensive with the notice provisions of § 1758 as it provides notice of the details of the violation to the School Board and a reasonable opportunity to develop a voluntary remedial plan with community participation.

## II.

Accordingly, as permanent injunctive relief, the court **ORDERS** the School Board to remedy the constitutional and statutory violations by removing the names "Stonewall Jackson" and "Ashby-Lee" and adopting new school names "on a racially nondiscriminatory basis with all deliberate speed." Brown v. Bd. of Educ., 349 U.S. 294, 301 (1955).

In this ongoing legal battle, the parties have expended substantial time and resources, and the community remains emotionally torn. The court continues to believe that this dispute would be best resolved by a community-driven consensus, rather than a protracted, expensive legal battle. To that end, the court referred this matter to mediation, which was not successful. In the court's view, options remain which the parties should explore to bind up these wounds in the best interests of the Shenandoah County community as a whole. The court is hopeful that the parties will renew consideration of a mutually agreeable solution by further attempts at mediation, whether by means of a Circuit Mediation Conference pursuant to Fourth Circuit Court of Appeals Local Rule 33 or otherwise.

It is so **ORDERED.**

Entered: August 6, 2026

Michael F. Urbanski
U.S. District Judge
2026.08.06 16:13:36
-04'00'

Michael F. Urbanski
Senior United States District Judge