UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| VIRGINIA STATE CONFERENCE NAACP, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY SCHOOL BOARD OF SHENANDOAH COUNTY,<br><br>Defendant. | Case No. 5:24-cv-00040 |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

INTRODUCTION .......... 1

FEE REQUEST .......... 3

ARGUMENT .......... 4

I. The Governing Fee-Shifting Statute Authorizes an Award of Reasonable Attorneys' Fees and Costs to Plaintiffs as the Prevailing Party. .......... 4

II. Plaintiffs' Requested Fee Award Is Based on the Lodestar Method and Is Reasonable. .......... 5

A. The Hours Claimed Were Reasonably Expended to Achieve Plaintiffs' Success .......... 7

1. The Scope, Complexity, and Pace of This Litigation Required Significant Attorney Time (Factors 1, 2, and 7). .......... 7

2. Plaintiffs' Fee Request Already Reflects Substantial Voluntary Reductions .......... 12

B. Plaintiffs Are Entitled to Recover Attorneys' Fees Based on the Prevailing Market Rates in Washington, D.C. for Complex Federal Litigation .......... 13

1. The Complexity and Specialized Nature of Plaintiffs' Claims Justified Retaining Experienced D.C. Counsel (Factors 2, 3, 9, and 11) .......... 13

2. The Opportunity Cost and Political Sensitivity of This Case Further Supported Plaintiffs' Choice of Out-of-District Counsel (Factors 4 and 10) .......... 16

3. The LSI Laffey Matrix Provides a Reasonable and Conservative Measure of Prevailing D.C. Market Rates (Factor 5) .......... 18

4. Should the Court Deny Plaintiffs' Request for D.C. Rates, the Court Should Apply Rates at the Upper End of the Local Market. .......... 19

III. Plaintiffs Are Entitled to Recover Their Litigation Costs .......... 20

IV. Plaintiffs' Requested Award Promotes the Goals of Civil Rights Statutes .......... 22

CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anselme v. Griffin*,
No. 3:20CV00005, 2023 WL 3534490 (W.D. Va. May 18, 2023) ..... 12, 21

*Barber v. Kimbrell's, Inc.*,
577 F.2d 216 (4th Cir. 1978) ..... 6, 20

*Blum v. Stenson*,
465 U.S. 886 (1984) ..... 13

*Brandon v. Guilford Cnty. Bd. of Elections*,
921 F.3d 194 (4th Cir. 2019) ..... 22

*Christiansburg Garment Co. v. E.E.O.C.*,
434 U.S. 412 (1978) ..... 22

*City of Riverside v. Rivera*,
477 U.S. 561 (1986) ..... 22

*Commonwealth v. Orndoff*,
No. CL19-955, 2020 Va. Cir. LEXIS 64 (Va. Cir. Jan. 3, 2020) ..... 19

*Daly v. Hill*,
790 F.2d 1071 (4th Cir. 1986) ..... 21

*DL v. District of Columbia,*
924 F.3d 585 (D.C. Cir. 2019) ..... 18

*Goodlaxson v. Mayor of Baltimore*,
776 F. Supp. 3d 311 (D. Md. 2025) ..... 21

*Hargrove v. Ryla Teleservs., Inc.*,
No. 2:11cv344, 2013 WL 1897027 (E.D. Va. Apr. 12, 2013) ..... 21

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ..... 5, 7

*Hunt v. Cromartie*,
526 U.S. 541 (1999) ..... 14

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ..... 6

*Lefemine v. Wideman*,
758 F.3d 551 (4th Cir. 2014)....................22

*McAfee v. Boczar*,
738 F.3d 81 (4th Cir. 2013)....................6, 12, 19

*Mercer v. Duke Univ.*,
401 F.3d 199 (4th Cir. 2005)....................1

*Nat'l Lab. Rels. Bd. v. Cobalt Coal Ltd.*,
No. 1:17MC00018, 2018 WL 5292052 (W.D. Va. Oct. 25, 2018)....................13

*Protect the Pub.'s Tr. v. Internal Revenue Serv.*,
No. 23-cv-340, 2024 WL 663427 (D.D.C. Feb. 16, 2024)....................18

*Rum Creek Coal Sales, Inc. v. Caperton*,
31 F.3d 169 (4th Cir. 1994)....................13, 16

*Rust v. Elec. Workers Local No. 26 Pension Trust Fund*,
No. 3:10CV00029, 2012 U.S. Dist. LEXIS 82044 (W.D. Va. June 14, 2012)....................6, 11, 14, 19

*Salazar ex rel. Salazar v. District of Columbia*,
809 F.3d 58 (D.C. Cir. 2015)....................18

*Scott v. Clarke*,
No. 3:12-CV-00036, 2014 U.S. Dist. LEXIS 51602 (W.D. Va. April 15, 2014)....................19, 20

*Sines v. Kessler*,
No. 3:17-cv-00072, 2023 U.S. Dist. LEXIS 40218 (W.D. Va. Mar. 7, 2023)....................19, 20

*Thomas v. Moreland*,
No. 18-cv-800, 2022 WL 2168109 (D.D.C. June 16, 2022)....................18

*Torres v. Collins*,
No. 2:20-CV-00026, 2026 U.S. Dist. LEXIS 37638 (E.D. Tenn. Feb. 24, 2026)....................16

*Trimper v. City of Norfolk*,
58 F.3d 68 (4th Cir. 1995)....................1

*Wyatt v. Owens*,
No. 7:14-CV-492, 2018 WL 10613184 (W.D. Va. Jan. 23, 2018)....................21

**Statutes**

20 U.S.C. § 1703(b)....................5

28 U.S.C. § 1920....................2, 21

42 U.S.C. § 1983....................5

42 U.S.C. § 1988 ........ 2, 5, 13, 21, 22

42 U.S.C. § 2000d et seq. ........ 5

**Rules**

Fed. R. Civ. P. 54(d) ........ 21

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | LSI *Laffey* Matrix |
| 2 | Declaration of Kaitlin Banner, August 27, 2026 |
| 3 | Washington Lawyers' Committee for Civil Rights and Urban Affairs Time Records |
| 4 | Washington Lawyers' Committee for Civil Rights and Urban Affairs Summary of Expenses |
| 5 | Washington Lawyers' Committee for Civil Rights and Urban Affairs Expense Receipts/Invoices |
| 6 | Declaration of Jason C. Raofield, August 27, 2026 |
| 7 | Covington & Burling LLP Time Records |
| 8 | Covington & Burling LLP Standard Billing Rates, 2024-2026 |
| 9 | Covington & Burling LLP Summary of Expenses |
| 10 | Covington & Burling LLP Expense Receipts/Invoices |
| 11 | Plaintiffs' Settlement Offer, September 18, 2025 |
| 12 | Email from Defendant's Counsel, November 17, 2025 |
| 13 | Plaintiffs' Letter to Defendant's Counsel, August 10, 2026 |
| 14 | Declaration of Reverend Cozy Bailey, August 26, 2026 |
| 15 | Declaration of Mary Johnson, August 26, 2026 |
| 16 | Declaration of Sarah A. Adams, August 26, 2026 |
| 17 | Declaration of Tara K. Ramchandani, August 25, 2026 |
| 18 | Declaration of Joseph M. Sellers, August 27, 2026 |
| 19 | Declaration of Eden B. Heilman, August 26, 2026 |
| 20 | Declaration of Angela Ciolfi, August 27, 2026 |

## INTRODUCTION

Plaintiffs request attorneys' fees and litigation costs for the period from May 16, 2024, through August 21, 2026, for work related to this lawsuit. This fee petition comes after more than two years of complex litigation concerning novel and difficult questions of law and fact. This matter required an extraordinary commitment of time and resources by highly skilled, specialized counsel in a politically charged environment, without any guarantee of payment or even reimbursement for hundreds of thousands of dollars in out-of-pocket costs. Supported by counsel's efforts, Plaintiffs have now prevailed fully on all of their claims and obtained the relief they sought at the outset of this case. Accordingly, Plaintiffs respectfully submit that the requested fee award is reasonable and should be approved by the Court.[1]

## BACKGROUND

On May 10, 2024, Defendant Shenandoah County School Board restored the original Confederate school names "Stonewall Jackson High School" and "Ashby Lee Elementary School" after having removed them just four years prior. One month later, on June 11, Plaintiffs filed this lawsuit, alleging that the School Board's action endorsed a discriminatory and harmful message of Black inferiority and subjugation in violation of Plaintiffs' rights under the First Amendment, Fourteenth Amendment, Title VI of the Civil Rights Act of 1964, and the Equal Educational Opportunities Act. Plaintiffs requested declaratory and injunctive relief and the award of reasonable

[1] Plaintiffs' fee petition includes only the fees accrued through August 21, 2026, but Plaintiffs note that they will accrue additional fees in advancing their Motion for Fees and Costs. *See Mercer v. Duke Univ.*, 401 F.3d 199, 202 n.3 (4th Cir. 2005) (permitting an award of "'fees on fees' - that is, an award of fees incurred in litigating the question of fees"); *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995) ("It is well settled that the time spent defending entitlement to attorney's fees is properly compensable under § 1988…"). Plaintiffs will submit a supplemental motion for fees on fees with Plaintiffs' reply brief.

attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of litigation pursuant to § 1988 and 28 U.S.C. § 1920. ECF No. 1, at 61; ECF No. 208, at 2.

From day one, Defendant has aggressively defended its position that the names, and the process by which they were restored, are legally valid. Along with the Complaint, Plaintiffs filed their Motion to File Pseudonymously (ECF No. 2), in order to protect Plaintiffs' identities in the midst of the highly charged atmosphere surrounding the issues in this case. Defendant opposed this Motion, forcing Plaintiffs to submit further briefing in support; Plaintiffs ultimately prevailed. ECF Nos. 63–64. Defendant also filed a Motion to Dismiss for Failure to State a Claim (ECF No. 29), challenging all four of Plaintiffs' asserted claims. Plaintiffs successfully opposed the Motion.

After this Court denied Defendant's Motion to Dismiss on January 22, 2025 (ECF No. 61), the Court ordered the Parties to proceed to mediation. ECF No. 65. The Court scheduled a settlement conference for April 21, 2025, for the Parties and their counsel to engage in good-faith discussions towards a compromise resolution of this case. ECF No. 75. On April 21, 2025, the Parties and their counsel participated in a mediation led by the Court to discuss potential resolution; however, the case did not settle. ECF No. 102. As detailed further below, the parties then engaged in intensive fact and expert discovery and motion practice.

Following targeted discovery on Plaintiffs' First Amendment claims, the Parties filed dueling motions for summary judgment, and, on September 9, 2025, the Court denied Defendant's and granted Plaintiffs' Motion for Summary Judgment with regard to the First Amendment claims, ECF Nos. 171–172, but deferred entry of final judgment on those claims. ECF No. 173. After summary judgment was decided in their favor, and after substantial discovery on all claims was close to completion, Plaintiffs offered—and not for the first time—to resolve this case *with a complete waiver of their attorneys' fees* if Defendant would just remove the Confederate names. Ex. 11, Plaintiffs' Settlement

Offer, Sept. 18, 2025.[2] Defendant refused. Accordingly, the three remaining claims proceeded to a five-day trial, commencing on December 11, 2025, and concluding on December 17, 2025. ECF Nos. 233–234, 237, 240–241. On March 31, 2026, this Court heard closing arguments from the Parties after a period of post-trial briefing. ECF No. 266.

On August 6, 2026, this Court issued its final Judgment resolving the remaining claims in Plaintiffs' favor. ECF Nos. 285–286. The Court held that Defendant's restoration of the Confederate school names violated the Equal Protection Clause of the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964, and the Equal Educational Opportunities Act, and ordered, as permanent injunctive relief, Defendant "to remedy the constitutional and statutory violations by removing the names 'Stonewall Jackson' and 'Ashby-Lee' and adopting new school names 'on a racially nondiscriminatory basis with all deliberate speed.'" ECF No. 286, at 7.

**FEE REQUEST**

Plaintiffs' attorneys' fees and costs for the work described in the attached Exhibits, after billing judgment reductions, are listed below:

[2] Throughout this litigation, Plaintiffs' counsel repeatedly sought to resolve this matter without imposing attorneys' fees or other litigation costs on Defendant School Board. Prior to filing suit, Plaintiffs' counsel sent a letter advising the School Board of Plaintiffs' claims, expressly identifying Plaintiffs' entitlement to recover attorneys' fees under federal civil rights statutes if successful, and offering an opportunity to avoid litigation. ECF No. 242-131. After suit was filed, Plaintiffs' counsel continued to engage in settlement discussions and, in September 2025, offered to resolve the case without any payment obligation by the School Board, an offer that remained open until October 10, 2025, several weeks before trial. Ex. 11, Plaintiffs' Settlement Offer, Sept. 18, 2025. Defendant declined those opportunities and instead chose to continue litigating through trial and judgment. Even following entry of judgment, Plaintiffs' counsel sought to minimize the School Board's potential fee exposure by offering to reduce their request for attorneys' fees and costs if Defendant would participate in mediation aimed at securing timely implementation of the Court's final judgment. Ex. 13, Plaintiffs' Letter to Defendant's Counsel, Aug. 10, 2026. That offer went unanswered.

| Counsel | Hours | Attorneys' Fees | Expenses | Total Requested |
|---|---|---|---|---|
| Covington & Burling LLP | 11,802.87 | $8,465,363.91 | $468,245.32 | $8,933,609.23 |
| Washington Lawyers' Committee | 1,991.3 | $2,062,906.90 | $7,506.85 | $2,070,413.75 |
| **Total Requested:** | 13,794.17 | $10,528,270.81 | $475,752.17 | $11,004,022.98 |

As outlined in the Declarations of Kaitlin Banner and Jason Raofield, Plaintiffs seek fees and costs for hours devoted to successfully litigating their constitutional and statutory claims, including:

| Litigation Phase[3] | Date Range | Hours | Attorneys' Fees | Expenses |
|---|---|---|---|---|
| Investigation & Complaint | May 16–June 11, 2024 | 533.08 | $481,501.55 | $0.00 |
| Pseudonym & Dismissal Motions | June 12–December 1, 2024 | 1,037.17 | $880,475.06 | $4,638.09 |
| Discovery & Summary Judgment | December 2, 2024–October 29, 2025 | 7,364.17 | $5,240,076.85 | $215,641.46 |
| Trial Preparation & Trial | October 30, 2025–March 31, 2026 | 4,547.53 | $3,662,131.14 | $251,465.19 |
| Post-Trial Briefing | April 1, 2026–ongoing | 312.22 | $264,086.21 | $4,007.43 |

## ARGUMENT

### I. The Governing Fee-Shifting Statute Authorizes an Award of Reasonable Attorneys' Fees and Costs to Plaintiffs as the Prevailing Party.

Plaintiffs entirely prevailed in the above-captioned action and were directed to file a motion for attorneys' fees as the prevailing party. ECF No. 286, at n.1. Under the Civil Rights Attorney's

[3] While Plaintiffs have assigned fees to various phases of the litigation, there is necessarily overlap between the different phases. For example, discovery work began during the "Pseudonym & Dismissal" Motions phase and continued into the "Trial Preparation & Trial" phase.

Fees Awards Act of 1976, a prevailing party in a civil rights action is entitled to recover a reasonable attorney's fee award. *See* 42 U.S.C. § 1988(b).[4] The purpose of the Civil Rights Attorney's Fees Awards Act of 1976 is to ensure meaningful access to the courts for persons with civil rights grievances; accordingly, a successful plaintiff is ordinarily entitled to recover an attorney's fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). This case is no exception. Plaintiffs asserted four causes of action in this lawsuit, three of which are fee-shifting claims, including those arising under the First Amendment (pursuant to 42 U.S.C. § 1983), Fourteenth Amendment (pursuant to 42 U.S.C. § 1983), and Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*).[5] These causes of action are explicitly enumerated in the fee-shifting statute and, thus, Plaintiffs are entitled to reasonable litigation costs and attorney fees as the prevailing party. *See* ECF No. 286, at n.1.

## II. Plaintiffs' Requested Fee Award Is Based on the Lodestar Method and Is Reasonable.

Plaintiffs are seeking an award of $10,528,270.81 in reasonable attorneys' fees. In the Fourth Circuit, courts use a three-step framework to determine a reasonable fee award. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014). First, the court calculates the lodestar figure by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.

---

[4] 42 U.S.C. § 1988(b) states: "In any action or proceeding to enforce a provision of sections . . . 1983 . . . of this title, . . . [or] title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction."

[5] Plaintiffs also asserted a cause of action under the Equal Educational Opportunities Act, 20 U.S.C. § 1703(b), which is not recognized as a recoverable action under 42 U.S.C. § 1988(b). Plaintiffs' fee and costs request does not factor for time spent litigating this claim, however, as courts frequently recognize that "[m]uch of counsel's time [is] devoted generally to the litigation as a whole," especially where claims "involve a common core of facts" or are "based on related legal theories." *Hensley*, 461 U.S. at 435. Here, Plaintiffs' constitutional and statutory claims are intertwined. Accordingly, the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," rather than attempting to "divide the hours expended on a claim-by-claim basis." *Id.*

*Id.* In evaluating the reasonableness of the requested hours and rates, courts consider the twelve factors promulgated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). *See also McAfee*, 738 F.3d at 88. These factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Id.* at 88 n.5. After calculating the lodestar figure, the court must then subtract fees for time spent on any unsuccessful claims unrelated to successful claims (the second step). *Id.* at 88. Finally, at the third step, the court awards a percentage of the remaining amount based on the prevailing party's "degree of success" on its claims. *Id.* (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009)).

Here, the inquiry begins and ends with the first step, as the second and third are uncontroversial. The Court need not subtract time spent on any claim—Plaintiffs brought two constitutional claims and two statutory claims; they prevailed on all four. Plaintiffs also achieved a complete "degree of success" in this case, as the Court has now ordered the precise relief sought at the outset of this case—that the Confederate names be removed. ECF No. 286, at 7; *see Hensley*, 461 U.S. at 434–35 (explaining that where a plaintiff achieves excellent results, counsel "should recover a

fully compensatory fee" and even an enhancement); *see also Rust v. Elec. Workers Local No. 26 Pension Trust Fund*, No. 3:10CV00029, 2012 U.S. Dist. LEXIS 82044, at *4 (W.D. Va. June 14, 2012) (noting in support of plaintiff's motion for fees that "the presiding District Judge, for want of a better description, took the defendants to the woodshed on each of plaintiff's claims.").

As demonstrated below and in the supporting exhibits, the lodestar amount for counsel's work is reasonable under the *Johnson* factors and should be awarded in full.

### A. The Hours Claimed Were Reasonably Expended to Achieve Plaintiffs' Success.

#### 1. The Scope, Complexity, and Pace of This Litigation Required Significant Attorney Time (Factors 1, 2, and 7).

Plaintiffs' counsel made extraordinary efforts to effectively litigate this case, expending thousands of hours to address difficult issues.[6] In light of the circumstances, this expenditure of time and resources was reasonable. Ex. 2, Decl. of Kaitlin Banner; Ex. 6, Decl. of Jason Raofield. Plaintiffs also litigated this case on a condensed timetable that required sustained, coordinated effort across multiple attorneys and two organizations. Ex. 2, Decl. of Kaitlin Banner; Ex. 6, Decl. of Jason Raofield. To ameliorate the immediate harm posed by Defendant's actions, Plaintiffs filed this case a mere 32 days after Defendant's vote to change the school names. ECF No. 1. Recognizing that

[6] To support this fee application, Plaintiffs submit counsel's contemporaneous time records of their work related to this litigation. Ex. 3, Washington Lawyers' Committee for Civil Rights and Urban Affairs Time Records; Ex. 7, Covington & Burling LLP Time Records. The periods of records cover work associated with Plaintiffs' initial investigation and Complaint; Defendant's Motion to Dismiss; discovery, including Plaintiffs' Motion to Compel and extensive expert discovery; Motions for Summary Judgment on Plaintiffs' First Amendment claims (both filing an affirmative motion and defending against Defendant's motion); pretrial disclosures and motions; bench trial; and post-trial briefings. Ex. 2, Decl. of Kaitlin Banner; Ex. 6, Decl. of Jason Raofield. Certain entries in these billing records have been redacted pursuant to the Stipulated Protective Order entered by the Court, ECF No. 110, and/or because they reflect communications protected by the attorney-client privilege or materials protected by the work-product doctrine. The redactions are narrowly tailored to preserve those applicable privileges and protections, and the unredacted portions of each entry provide sufficient detail for the Court and opposing counsel to assess the reasonableness of the fees requested. Counsel is prepared to submit unredacted billing records for in camera review should the Court so direct.

immediacy, the Court set an expedited, dual-track discovery schedule, and this case proceeded to trial approximately 18 months after it was filed. ECF No. 97.

In the investigation phase, Plaintiffs were required to gather information from witnesses, obtain and review myriad documents, conduct outreach to the School Board, and draft a complaint raising complex constitutional questions all within a matter of weeks. Ex. 2, Decl. of Kaitlin Banner; Ex. 6, Decl. of Jason Raofield. At the outset of the litigation, Plaintiffs successfully litigated contested motions on their request to proceed by pseudonym and to dismiss the case (ECF Nos. 62, 64). The latter required Plaintiffs to prepare for and appear at an extended oral argument (ECF No. 50). As discovery began in earnest, Plaintiffs were forced to invest time in opposing Defendant's Demand for Jury Trial (ECF Nos. 86, 87, 101), while simultaneously building the factual record necessary to prove Plaintiffs' claims. Defendant's Demand was plainly contrary to law—as Plaintiffs had only sought declaratory and injunctive relief—but Plaintiffs nevertheless had to expend attorney time thoroughly researching the legal issues and drafting a response, after which the Court struck Defendant's Demand. ECF No. 125.

In March 2025, the Court put this case on an expedited, bifurcated schedule. ECF No. 97. The schedule required discovery for the First Amendment claims to be completed by May 23, 2025, and summary judgment motions on those claims to be filed by June 4, 2025, with oral argument occurring the week of June 30. *Id.* Discovery for the remaining claims was to be conducted simultaneously with the First Amendment proceedings, with the end of discovery set for August 22, 2025. *Id.* The compressed schedule required multiple attorneys to work in parallel—often on overlapping workstreams (dispositive and other briefing, document production, expert coordination, discovery meet-and-confers, and deposition preparation)—to meet Court-ordered deadlines that were necessary to secure swift relief for student Plaintiffs facing discriminatory school environments on a daily basis. Ex. 2, Decl. of Kaitlin Banner; Ex. 6, Decl. of Jason Raofield. Plaintiffs ultimately moved

for summary judgment on the First Amendment claim while also opposing Defendant's motion; this culminated in a lengthy oral argument. ECF Nos. 115–121, 135, 137. Plaintiffs prevailed on their motion and defeated Defendant's.

Even without the unique features of the Court's expedited schedule, fact discovery in this case was complex and voluminous. Ex. 2, Decl. of Kaitlin Banner; Ex. 6, Decl. of Jason Raofield. The parties exchanged 39 sets of written discovery that needed to be propounded or answered. Discovery involved nineteen depositions in total. Plaintiffs took eleven depositions, including eight fact witnesses and three experts, featuring more than 200 exhibits, and defended eight more depositions, including five fact witnesses and three experts. Ex. 6, Decl. of Jason Raofield. In addition, Defendant's discovery delays and deficiencies repeatedly required additional attorney time to secure basic materials and to address discrepancies. For example, as reflected in Plaintiffs' Oppositions to Defendant's Motions to Amend the Schedule (ECF Nos. 106, 146) and Plaintiffs' Motion to Compel (ECF No. 133), Defendant frequently failed to meet document production requirements and repeatedly requested extensions without appropriate notice to Plaintiffs. Since the schedule for completing fact and expert discovery, coordinating third-party subpoenas, and preparing dispositive briefing left little margin for slippage, when Defendant did not provide timely clarity regarding production, Plaintiffs necessarily expended additional time meeting and conferring, tracking commitments against the case schedule, and preparing to seek court intervention. Ex. 2, Decl. of Kaitlin Banner; Ex. 6, Decl. of Jason Raofield.

Further, Defendant's invocation of legislative privilege created a significant discovery dispute that required unanticipated legal research, focused motions practice, and briefing to the Court. Plaintiffs sought communications bearing on Board members' motivations and the decision-making process—core evidence for the Equal Protection and statutory claims—but Defendant asserted legislative privilege to withhold or limit discovery into those issues. Plaintiffs were therefore required

to research and brief the scope and application of the privilege, to analyze Defendant's privilege log and related discovery objections, and to present the dispute to the Court. ECF Nos. 155, 157, 163, 167, 168. Plaintiffs prevailed on this issue, but only after extended briefing and oral argument at a status conference. ECF Nos. 164, 169.

The case also presented additional legal and procedural complexity relating to Plaintiffs' need to proceed pseudonymously and to protect identifying information. Those considerations did not end with discovery or the initial pleadings; they carried through merits proceedings and required careful handling of document production and sealing and redactions (including with this very fee petition). For example, after trial, Plaintiffs undertook a detailed review of the trial transcripts to identify and propose redactions of information that could reveal the identities of pseudonymous Plaintiffs, and then coordinated review and approval with Defendant's counsel before submission to the Court. ECF No. 276. That work required attorney review at a granular level across multiple transcript days and witnesses, and it also required ongoing attention to ensure that references in subsequent filings did not inadvertently disclose protected information. Ex. 6, Decl. of Jason Raofield.

Ultimately, the discrimination claims in this case were heard in a five-day trial, featuring 16 witnesses and approximately 221 trial exhibits. ECF No. 242. In addition to the trial itself, Plaintiffs did extensive work to address evidentiary issues in advance, though that did not obviate the need for mid-trial briefing on the legislative privilege issue and late-night conferences with Defendant's counsel. ECF No. 239. Notably, Plaintiffs were required to move to exclude all three of Defendant's poorly-chosen experts. This required thorough review of the relevant law, deposition transcripts, reports, and other materials, as well as the drafting of three separate briefs. ECF Nos. 194, 198, 203. By order of the Court, two of Defendant's proffered experts were fully excluded, while the third was partially

excluded. ECF No. 227.[7] Per the Court's instruction, Plaintiffs submitted 179 pages of Findings of Fact and Conclusions of Law after the trial, while responding to Defendant's submissions as well. ECF Nos. 259–260, 264. They then presented closing arguments to the Court. ECF No. 266.

Altogether, the matters encountered by Plaintiffs throughout this case—the novel legal issues, compressed timeline, discovery impediments, legislative privilege disputes, and pseudonymity considerations—underscore both the complexity of this litigation and the attorney skill demonstrated throughout. Plaintiffs' claims, challenging a local school board's restoration of Confederate school names, required developing and presenting evidence of compulsion, student harm, discriminatory impact, and discriminatory intent under multiple constitutional and statutory frameworks. And, as demonstrated above, "defendants' conduct made things much more difficult and complex." *Rust*, 2012 U.S. Dist. LEXIS 82044, at *37. Litigating these claims through summary judgment and a multi-day trial, while simultaneously navigating privilege disputes and confidentiality protections, required significant attorney staffing, time, and expertise to prosecute the case effectively and to secure meaningful relief for Plaintiffs.

Finally, it bears repeating that all of this could have been avoided. Plaintiffs made multiple pre-trial offers of settlement that would have involved Plaintiffs' *complete waiver of all attorneys' fees*. Plaintiffs sent a letter prior to filing the Complaint making this offer, ECF No. 242-131; attended pre- and post-trial mediations, ECF Nos. 102, 273–275; and offered mere weeks before the trial date—and after they had already prevailed at summary judgment on the First Amendment claim—to waive all fees to date in exchange for the requested injunctive relief, Ex. 11, Plaintiffs' Settlement Offer,

---

[7] One of Defendant's experts, H.K. Edgerton, was so obviously inadequate that Plaintiffs' counsel reached out to Defendant to inquire whether a motion to exclude was truly necessary given the facial deficiencies in his report and qualifications. Counsel specifically noted that "any time we need to spend on this motion will be compensable when we file our attorneys' fees motion." Defendant, however, refused to remove Mr. Edgerton from its witness list, necessitating motion practice that was easily avoided. Ex. 12, Email from Defendant's Counsel, Nov. 17, 2025.

Sept. 18, 2025. *See also* Ex. 6, Decl. of Jason Raofield. Each of these offers was rebuffed. That fact, too, justifies a full award of Plaintiffs' fees and costs. *See McAfee*, 738 F.3d at 90 ("[F]ailure to contemplate a settlement strategy 'makes for expensive litigation,' and the defendant must bear the consequences.").

### 2. Plaintiffs' Fee Request Already Reflects Substantial Voluntary Reductions.

Moreover, Plaintiffs' counsel has eliminated significant time from their request in the exercise of billing judgment. This billing judgment led to significant reductions in excess of $5 million in this request. *See Anselme v. Griffin*, No. 3:20CV00005, 2023 WL 3534490, at *2 (W.D. Va. May 18, 2023) ("[C]ounsel 'should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'").

As demonstrated in the attached Declarations, counsel exercised appropriate billing judgment and the time for which they seek compensation was reasonably expended in the successful litigation of this action. Ex. 2, Decl. of Kaitlin Banner; Ex. 6, Decl. of Jason Raofield. After reviewing the time recorded for this litigation, counsel removed significant categories of otherwise recoverable time to ensure that the request presented to the Court is reasonable. Counsel excluded attorneys who billed under 100 (Covington) and 50 (Washington Lawyers' Committee) hours; reduced hours for matter events staffed by multiple attorneys; reduced hours for travel (Washington Lawyers' Committee); and reduced the total hours requested by 10 percent to account for block billing (Covington). These voluntary reductions substantially discount the hours actually devoted to the case and confirm that Plaintiffs' request reflects careful billing judgment rather than a wholesale submission of all time recorded.

### B. Plaintiffs Are Entitled to Recover Attorneys' Fees Based on the Prevailing Market Rates in Washington, D.C. for Complex Federal Litigation.

In determining a reasonable hourly rate under § 1988, courts look to the prevailing market rates in the relevant community for complex federal litigation, regardless of whether the plaintiff is represented by private counsel on a pro bono basis or a nonprofit public interest law firm. *See Blum v. Stenson*, 465 U.S. 886, 893–95 (1984). While the relevant community is ordinarily "the community in which the court where the action is prosecuted sits," the court "may consider rates charged by attorneys in other communities when 'the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally, and the party choosing the attorney from elsewhere acted reasonably in making the choice.'" *Nat'l Lab. Rels. Bd. v. Cobalt Coal Ltd.*, No. 1:17MC00018, 2018 WL 5292052, at *2 (W.D. Va. Oct. 25, 2018) (citing *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988)); *accord Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175, 179 (4th Cir. 1994). Here, Plaintiffs' counsel are entitled to fees based on prevailing market rates for complex federal litigation in Washington, D.C. as determined by the LSI *Laffey* Matrix. Ex. 1, LSI *Laffey* Matrix. *See also* Ex. 2, Decl. of Kaitlin Banner; Ex. 6, Decl. of Jason Raofield; Ex. 16, Decl. of Sarah Adams; Ex. 17, Decl. of Tara Ramchandani; Ex. 18, Decl. of Joe Sellers.

#### 1. The Complexity and Specialized Nature of Plaintiffs' Claims Justified Retaining Experienced D.C. Counsel (Factors 2, 3, 9, and 11).

The novelty and difficulty of the issues, as well as the level of attorney skill needed, justify the use of out-of-market counsel and the application of the D.C. rates. This case involved a complex constitutional challenge to compelled speech and racial discrimination in public education; required extensive factual development, legal briefing, and trial preparation; and culminated in Plaintiffs prevailing on all of their claims and obtaining the relief they sought. The novel issues in this case required specialized expertise and knowledge of how to effectively litigate compelled speech claims and equal protection claims under the "inherently complex" *Arlington Heights* framework, *Hunt v.*

*Cromartie*, 526 U.S. 541, 546 (1999). From the outset, the Court itself recognized the "unique" and "idiosyncratic" factual circumstances presented by this case. ECF No. 61, at 2. The Court characterized Plaintiffs' First Amendment compelled speech claim as "an issue of first impression," stating from the bench that this case was "so different than any other case in the country." ECF No. 147, at 18, 24. The Court has described this case as "rare," ECF No. 61, at 30; "extraordinary," *id.* at 33; and "unique," ECF No. 285, at 2, 137. The five-day bench trial produced a voluminous evidentiary record that the Court described as "a massive undertaking" requiring resolution of "a lot of work" involving shifting burdens of proof and complex evidentiary questions. ECF No. 281, at 219. The Court afforded the parties sixty days for post-trial briefing precisely because of the case's difficulty, noting that distilling the evidence presented in this case was "a big job" for counsel along with the Court. *Id.* at 226.

"[W]here legal services of like quality are not available in the locality the services are rendered and the party choosing an attorney from elsewhere acted reasonably in making that choice, the court can look beyond even the geographic reach of the court to assess reasonable hourly rates." *Rust*, 2012 U.S. Dist. LEXIS 82044, at *37 (citing *Nat'l Wildlife Fed'n*, 859 F.2d at 318). Here, Plaintiffs reasonably retained counsel with demonstrated skill in navigating complex civil rights litigation and litigation related to their specific claims. Ex. 14, Decl. of Rev. Cozy Bailey; Ex. 15, Decl. of Mary Johnson. As detailed in the Declarations of Ms. Banner and Mr. Raofield, the Washington Lawyers' Committee for Civil Rights and Urban Affairs ("Washington Lawyers' Committee" or "Committee") is a leading civil rights organization that has provided high-quality legal representation in civil rights matters for more than five decades. Founded in 1968 in the wake of the Civil Rights Movement, the Committee has substantial experience pursuing systemic civil rights litigation—regularly advocating for educational equity, representing students who have been denied access to education, and challenging discriminatory practices affecting students of color. Ex. 2, Decl. of Kaitlin Banner. Covington &

Burling LLP ("Covington") is an international law firm with extensive experience handling novel, complex, and high-stakes litigation. Through its nationally recognized pro bono practice, Covington regularly represents marginalized individuals and communities in significant civil rights matters, drawing on deep trial experience and a longstanding commitment to advancing equal justice under the law. Ex. 6, Decl. of Jason Raofield.

The Washington Lawyers' Committee and Covington have a longstanding relationship with the Virginia NAACP State Conference that developed through their joint representation in a similar challenge to Confederate school names in Hanover County, Virginia. Ex. 2, Decl. of Kaitlin Banner; Ex. 6, Decl. of Jason Raofield; Ex. 14, Decl. of Rev. Cozy Bailey. Given the speed at which Defendant began implementing its reversion of the Confederate school names, *see* ECF No. 1 at 38–40, it was reasonable for Plaintiffs to select counsel who were already familiar with the issues. The experience, skill, and expertise to successfully navigate these claims, combined with the ability to take the case on a pro bono basis, was simply not available to Plaintiffs in the local market. Ex. 14, Decl. of Rev. Cozy Bailey; Ex. 15, Decl. of Mary Johnson.

Plaintiffs retained counsel with demonstrated expertise in litigating against a Virginia public school board for the imposition of Confederate school names because no meaningful alternative existed, and because that expertise materially mattered to the outcome achieved. Ex. 14, Decl. of Rev. Cozy Bailey; Ex. 15, Decl. of Mary Johnson. Moreover, the declarations of the ACLU of Virginia and Legal Aid Justice Center, noted Virginia-based authorities on civil rights litigation, attest to the lack of local counsel with the capacity and experience needed to effectively litigate this matter. Ex. 19, Decl. of Eden Heilman; Ex. 20, Decl. of Angela Ciolfi.

### 2. The Opportunity Cost and Political Sensitivity of This Case Further Supported Plaintiffs' Choice of Out-of-District Counsel (Factors 4 and 10).

Because of the novel nature of these claims, this was a matter where the "time commitment and uncertainty of payment" would "discourage economically rational private attorneys from becoming involved." *Torres v. Collins*, No. 2:20-CV-00026, 2026 U.S. Dist. LEXIS 37638, at *13 (E.D. Tenn. Feb. 24, 2026) (citing *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)). Plainly, no profit-motivated local firm would have made the investment in this case needed to win. The Washington Lawyers' Committee—by virtue of its status as a non-profit that is not bound by the typical rules of economic rationality, not to mention its expertise on matters of civil rights law—was particularly well-situated to take on this kind of case. Given the demands of the case, however, the Committee could not have done so without Covington's extensive pro bono resources and willingness to invest massive amounts of attorney time (over 14,000 hours) and hard costs despite a substantial risk that none of it would ever be compensated or reimbursed. Ex. 6, Decl. of Jason Raofield; Ex. 15, Decl. of Mary Johnson. No local firm could realistically have undertaken litigation of this scale and duration on a pro bono basis. Ex. 14, Decl. of Rev. Cozy Bailey; Ex. 15, Decl. of Mary Johnson; Ex. 19, Decl. of Eden Heilman; Ex. 20, Decl. of Angela Ciolfi. Plaintiffs learned this first-hand when they sought counsel to take this case. Ex. 15, Decl. of Mary Johnson.

Moreover, no local firm could have taken on this matter without risking substantial professional and reputational consequences in the local community, making this case undesirable in the legal community in which it arose. *See Rum Creek Coal Sales*, 31 F.3d at 179 ("Taking on the governor and the police of the state where the trial court is located, in the middle of a well-publicized coal miners' strike, could be a politically sensitive activity for a local West Virginia firm."). The Court itself recognized that this dispute is "ensnarled in controversy," ECF No. 171, at 33, with "historical, cultural, and political overtones that continue to divide the Shenandoah County community." ECF

No. 285, at 140. *See also* Ex. 14, Decl. of Rev. Cozy Bailey; Ex. 15, Decl. of Mary Johnson; Ex. 19, Decl. of Eden Heilman; Ex. 20, Decl. of Angela Ciolfi.

The political sensitivity of this case was so acute that the Court granted Plaintiffs' motion to proceed pseudonymously, finding concrete risks of retaliation for those who opposed the Confederate school names. *See* ECF No. 63, at 2, 5 (noting "the recognition by multiple members of Defendant School Board of 'threat[s]' and 'fear of repercussions' that have previously been experienced by members of the community"). Those fears proved well-founded: after Plaintiffs spoke publicly against the name restoration, they were followed, photographed, harassed, and subjected to an intimidation campaign involving Confederate flags hung on their property line. ECF No. 285, at 63–64. If the Plaintiffs themselves could not safely litigate under their own names in this community, it strains credulity to suggest that a local attorney could have done so without professional consequence.

Defendant's own conduct further demonstrates the political perils facing anyone—including counsel—perceived as opposing the Confederate name restoration. The Court found it "extraordinarily troubling" that Defendant School Board fired its own attorney, whom Board members perceived as "espousing liberal positions" that included the school name change. ECF No. 285, at 111–12. Against this backdrop—where even the Defendant's own attorney was terminated for perceived ideological disloyalty on this very issue—no reasonable local practitioner could have been expected to take on this representation without facing substantial risk to their client relationships, professional standing, and livelihood in the community. *See* Ex. 14, Decl. of Rev. Cozy Bailey; Ex. 15, Decl. of Mary Johnson; Ex. 19, Decl. of Eden Heilman; Ex. 20, Decl. of Angela Ciolfi.

In these circumstances, the requested rates are not only reasonable; they are the natural and foreseeable consequence of litigating a complicated civil rights case that could only be brought, and sustained to judgment, by counsel with the experience, resources, and independence to do so.

### 3. The LSI Laffey Matrix Provides a Reasonable and Conservative Measure of Prevailing D.C. Market Rates (Factor 5).

As is standard for the D.C. market, Plaintiffs rely on the LSI *Laffey* Matrix to determine their lodestar figure. Ex. 2, Decl. of Kaitlin Banner; Ex. 6, Decl. of Jason Raofield; Ex. 16, Decl. of Sarah Adams; Ex. 17, Decl. of Tara Ramchandani; Ex. 18, Decl. of Joe Sellers. For decades, courts in the D.C. Circuit have relied on some version of a schedule of hourly rates keyed to years of attorney experience—commonly known as the *Laffey* Matrix. *DL v. District of Columbia*, 924 F.3d 585, 587 (D.C. Cir. 2019). Despite the age of the LSI *Laffey* Matrix, the D.C. Circuit has held it presumptively applicable in complex federal litigation and acknowledged that it "is probably a conservative estimate of the actual cost of legal services" in Washington, D.C. *Id.* at 591; *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 65 (D.C. Cir. 2015) (cleaned up). Accordingly, courts continue to rely on versions of the *Laffey* Matrix as evidence of prevailing market rates for complex federal litigation in the District of Columbia. *See Protect the Pub.'s Tr. v. Internal Revenue Serv.*, No. 23-cv-340, 2024 WL 663427, at *13 n.13 (D.D.C. Feb. 16, 2024) (citing *DL* and finding *Laffey* rates reasonable because the matrix has been "endorsed" by the D.C. Circuit and remains in use).

To further support this request, Plaintiffs' counsel at Covington have provided additional evidence in their declaration, attesting to the reasonableness of the LSI *Laffey* Matrix rates and explaining that those rates are conservative relative to their standard rates for comparable work. Ex. 6, Decl. of Jason Raofield; *cf. Thomas v. Moreland*, No. 18-cv-800, 2022 WL 2168109, at *4–7 (D.D.C. June 16, 2022) (awarding LSI *Laffey* rates for discovery sanctions where a declaration showed counsel's usual billing rate was higher). For attorneys at the Washington Lawyers' Committee, which does not have standard rates, Plaintiffs' counsel explains why the LSI *Laffey* Matrix is an appropriate comparator. Ex. 2, Decl. of Kaitlin Banner. This is further supported by affiants representing leading civil rights plaintiffs'-side firms in the District of Columbia. Ex. 16, Decl. of Sarah Adams; Ex. 17, Decl. of Tara Ramchandani; Ex. 18, Decl. of Joe Sellers. Thus, Plaintiffs are entitled to compensation

at the LSI *Laffey* rates for the hours reasonably expended. *See McAfee*, 738 F.3d at 91 (noting that affidavits from other local lawyers are competent evidence of the appropriate rates).

#### 4. Should the Court Deny Plaintiffs' Request for D.C. Rates, the Court Should Apply Rates at the Upper End of the Local Market.

The unique circumstances of this case—not to mention the extraordinary results obtained by counsel—justify the application of rates typical of the D.C. market. However, should this Court deny Plaintiffs' request and instead apply rates prevailing in the local Western District of Virginia market, the benchmark is the highest end of that local market, or some compromise position between the highest end of the local market and *Laffey* rates.

As explained above, this case involved complex, novel claims on politically sensitive topics. Courts in this jurisdiction have awarded rates of at least $450 for partners and $350 for attorneys. *See Sines v. Kessler*, No. 3:17-cv-00072, 2023 U.S. Dist. LEXIS 40218, at *72-73 (W.D. Va. Mar. 7, 2023) (finding that three years ago, partners billing $450 or $400 per hour was "objectively, 'consistent with those [hourly rates] generally charged for similar services,' and with the prevailing market rates" for complex civil rights litigation) (internal citation omitted); *see also Commonwealth v. Orndoff*, No. CL19-955, 2020 Va. Cir. LEXIS 64, at *6 (Va. Cir. Jan. 3, 2020) (finding that six years ago, $350 per hour for attorneys and $200 per hour for paralegals were rates "generally charged for similar services [by] lawyers and paralegals" with comparable experience in Shenandoah County); *Rust,* 2012 U.S. Dist. LEXIS 82044, at *20 n.7 (approving rates charged by plaintiff's attorneys at $585, $500, $425, and $365 per hour respectively for complex ERISA litigation); *Scott v. Clarke*, No. 3:12-CV-00036, 2014 U.S. Dist. LEXIS 51602, at *18-19 (W.D. Va. April 15, 2014) (finding that twelve years ago, "District of Columbia attorneys with similar high-caliber qualifications have been awarded fees generally around a top end of $350.00" but "even in a more remote division of [the Western District of Virginia], the rate of $400.00 per hour has been awarded for an experienced attorney's services"). The *Sines* and

*Scott* courts alike approved rates at the highest end of the local market for counsel based at firms in Washington, D.C. and New York, because the rates fell within the upper range of what experienced attorneys charge for comparable work in this jurisdiction. *Sines*, 2023 U.S. Dist. LEXIS 40218, at *72–73; *Scott*, 2014 U.S. Dist. LEXIS 51602, at *18–19.

To be clear, Plaintiffs maintain that D.C. rates—not local rates—are the appropriate measure of reasonable fees in this case. But should the Court nevertheless apply local rates, Plaintiffs submit that the aforementioned "high-caliber qualifications" of counsel and the unique demands of this litigation warrant rates at the highest end of the local market.

***

In sum, the factors on which courts in the Fourth Circuit rely overwhelmingly support Plaintiffs' requested fee award in this case. *Barber*, 577 F.2d at 226 n.28. Plaintiffs' counsel are highly experienced and skilled attorneys with specialized knowledge that enabled them to successfully litigate novel and complex claims. Counsel spent thousands of hours engaging in all stages of complex civil litigation, from investigation and filing of the complaint through trial in 18 months–and did so without charge to their clients. Plaintiffs' counsel have a history working with the Virginia NAACP in a similar case, and, because of the highly sensitive nature of the claims, Plaintiffs were unable to secure local counsel with the same experience and willingness to take the case pro bono. Plaintiffs have demonstrated that the LSI *Laffey* Matrix sets the appropriate rates for the D.C. market for complex civil litigation, and that they are entitled to those rates here. Finally, per the eighth *Johnson* factor, because Plaintiffs achieved complete success on their claims, the requested fee award should be granted in full.

## III. Plaintiffs Are Entitled to Recover Their Litigation Costs.

In addition to their reasonable attorneys' fees, Plaintiffs are seeking an award of $475,752.17 in costs, including: (1) $148,280.84 in taxable costs under 28 U.S. Code § 1920 and Federal Rule of

Civil Procedure 54(d)(1), *see* ECF No. 288, and (2) $327,471.33 in other costs under 42 U.S. Code § 1988 and Federal Rule of Civil Procedure 54(d)(2)(A). The Fourth Circuit has held that a "prevailing plaintiff is entitled to compensation for reasonable litigation expenses under § 1988." *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986). "An expense award, like an attorney's fee, must adequately compensate counsel without resulting in a windfall." *Id.* at 1084 n.18.

As the prevailing party, Plaintiffs are entitled to a presumption in favor of an award of costs. Fed. R. Civ. P. 54(d). Plaintiffs' Bill of Costs summarizes those taxable costs. ECF No. 288. Under § 1988, Plaintiffs' counsel are also entitled to recover their other litigation costs, including reasonable out-of-pocket costs customarily charged to fee-paying clients. *Wyatt v. Owens*, No. 7:14-CV-492, 2018 WL 10613184, at *13 (W.D. Va. Jan. 23, 2018) (quoting *Spell v. McDaniel*, 852 F.2d 762 (4th Cir. 1988)). Plaintiffs' Exhibits 4–5 and 9–10 summarize those expenses, which are also described in Ms. Banner's and Mr. Raofield's declarations. Ex. 2, Decl. of Kaitlin Banner; Ex. 6, Decl. of Jason Raofield. The total amount of costs incurred in litigating this case was $475,752.17.

Plaintiffs' costs—including courier services, discovery and document production, expert witness fees, trial equipment and supplies, and travel and lodging expenses—are the types of expenses ordinarily billed to paying clients or deemed recoverable under fee-shifting statutes. Ex. 2, Decl. of Kaitlin Banner; Ex. 6, Decl. of Jason Raofield. *See, e.g., Goodlaxson v. Mayor of Baltimore*, 776 F. Supp. 3d 311, 326 (D. Md. 2025) (expert witness fees); *Anselme*, 2023 WL 3534490, at *6 ("Hotel costs may be recoverable when 'an overnight stay is reasonably necessary to the presentation of the case[].'") (internal citation omitted); *Hargrove v. Ryla Teleservs., Inc.*, No. 2:11cv344, 2013 WL 1897027, at *7 (E.D. Va. Apr. 12, 2013), *adopted by*, No. 2:11CV344, 2013 WL 1897110 (E.D. Va. May 3, 2013) (recommending award of attorney's fees and reimbursement for expenses "related to attorneys' travel, such as flights, rental cars, hotel rooms, parking, and meals"). Because these costs were incurred in

connection with work directly related to this lawsuit, they were reasonable and necessary and should be awarded.

**IV. Plaintiffs' Requested Award Promotes the Goals of Civil Rights Statutes.**

Congress enacted fee-shifting provisions to ensure that qualified counsel can bring civil rights cases to vindicate the rights protected by the Constitution and federal statutes. As the Supreme Court has explained, a fee award should be calculated to "encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (citation omitted); *see also Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978) (fee-shifting provisions "promote the vigorous enforcement" of civil rights law); *Brandon v. Guilford Cnty. Bd. of Elections*, 921 F.3d 194, 200 (4th Cir. 2019) (fee shifting "enable[s] potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights" (citation and quotation marks omitted)); *Lefemine v. Wideman*, 758 F.3d 551, 555 (4th Cir. 2014) (noting Congress's recognition that "awarding counsel fees to prevailing plaintiffs in such litigation is particularly important and necessary if [f]ederal civil and constitutional rights are to be adequately protected") (citation and quotation marks omitted).

Here, a fee award not only fulfills the legislative purpose of § 1988, but also serves a core deterrent function. After the nationwide effort to remove Confederate symbols from public institutions in 2020, some government actors have sought to reverse course and restore Confederate symbology after those symbols had been removed for discriminatory reasons.[8] Even since Plaintiffs' filing of their Complaint, public reporting has described efforts by other school systems to restore

[8] *See e*.g., Jennifer Vanasco*, Confederate statue toppled during Black Lives Matter protests will be reinstall*ed, NPR (Aug. 5, 2025), https://www.npr.org/2025/08/05/nx-s1-5493106/confederate-statue-albert-pike-reinstall; Ellen Mitchell*, Pentagon to restore names of 7 more Army bases that honored Confederate genera*ls, THE HILL (June 10, 2025), https://thehill.com/policy/defense/5343098-trump-restores-old-base-names.

Confederate names to schools whose names were changed in recognition of the harm those names caused.[9]

An award in this case sends an important message that reaches beyond Shenandoah County. Without an award of reasonable attorneys' fees and costs, public actors may be incentivized to roll back remedial government acts, engage in discriminatory practices, and then force affected parties to bear the full cost of litigation necessary to vindicate their constitutional rights. A full fee award is necessary not only to ensure individuals similarly situated to Plaintiffs have meaningful access to the courts, but also to deter Defendant and other governmental actors from engaging in future discriminatory actions that predictably harm students and force costly litigation to stop it.

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court award Plaintiffs attorneys' fees and litigation costs in the amount of $11,004,022.98 for work performed through August 21, 2026, and permit Plaintiffs to supplement this request in their reply brief to include the additional fees and costs incurred in preparing this motion.

Dated: August 27, 2026

Respectfully submitted,

/s/ *Li Reed*
Li Reed (DC Bar #90018796)*
Jason C. Raofield (DC Bar #463877)*
Kevin B. Collins (DC Bar #445305)*
Elizabeth Upton Duncan (DC Bar #1031985)*
Samuel Greeley (DC Bar #1656254)*
Tyler Smith (DC Bar #1735958)*

[9] Brooke Schultz, *Another District Restores a Confederate Name to Its Schools*, EDUC. WEEK (Aug. 13, 2025), https://www.edweek.org/leadership/another-district-restores-a-confederate-name-to-its-schools/2025/08.

Stephanie Nnadi (DC Bar #90007365)*
Lauren Smith (DC Bar #90029733)*
Analese Bridges (DC Bar #90029992)*
Covington & Burling LLP
850 10th Street, NW
Washington, DC 20001
(202) 662-6000
lreed@cov.com
*Counsel for Plaintiffs*

/s/*Kaitlin Banner*
Kaitlin Banner (DC Bar #1000436)*
Marja K. Plater (DC Bar #90002586)*
Ryan Downer (DC Bar #1013470)*
Washington Lawyers' Committee
for Civil Rights and Urban Affairs
700 14th Street, NW, Suite 400
Washington, DC 20005
kaitlin_banner@washlaw.org
*Counsel for Plaintiffs*

/s/*Ashley Joyner Chavous*
Ashley Joyner Chavous (VSB #84028)
Holland & Knight LLP
800 17th Street, NW, Suite 1100
Washington, DC 20006
(202) 469-5543
ashley.chavous@hklaw.com
*Counsel for Plaintiffs*

* *Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2026, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to:

Jim H. Guynn, Jr. (VSB #22299)
Christopher S. Dadak (VSB #83789)
John R. Fitzgerald (VSB #98921)
GUYNN WADDELL, P.C.
415 S. College Ave.
Salem, Virginia 24153
Phone: (540) 387-2320
Fax: (540) 389-2350
Email: jimg@guynnwaddell.com
chrisd@guynnwaddell.com
johnf@guynnwaddell.com
*Counsel for Defendant*

/s/ *Li Reed*
Li Reed
DC Bar #90018796*